Exhibit 2

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

Michael Robertson
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3835
Michael.Robertson@usdoj.gov

*Attorneys for the United States*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DC Preservation League, *et al.*, | No. 1:26-cv-00477 |
| Plaintiffs, | |
| v. | |
| U.S. Department of the Interior, *et al.*, | |
| Defendants. | |

**DECLARATION OF JESSICA BOWRON, COMPTROLLER OF
THE NATIONAL PARK SERVICE, EXCERCISING THE DELEGATED
AUTHORITY OF THE DIRECTOR OF THE NATIONAL PARK SERVICE**

I, Jessica Bowron, declare as follows:

1. I am the Comptroller for the National Park Service ("NPS") and am exercising the delegated authority of the Director of the NPS pursuant to a January 20, 2025, delegation of that authority from the Acting Secretary of the Interior, and subsequent extensions of that authority by the Secretary of the Interior. I have been employed by NPS since 2007 and served as NPS Comptroller since 2017.

2. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. In my current position as Comptroller, Exercising the Delegated Authority of the Director of the NPS, I oversee the management and operation of all units within the National Park System nationwide, as well as all NPS programs, NPS directorates, and regional offices. The White House and President's Park, the National Mall and Memorial Parks, East Potomac Park, which includes the East Potomac Park Golf Course, Rock Creek Park, which includes the Rock Creek Golf Course, and National Capital Parks-East, which includes the Langston Golf Course, are administrative units within the National Park System in the NPS National Capital Region.

4. Under the NPS Organic Act of 1916, the NPS's mission is to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101. This authority extends to historic preservation and construction activities at individual park units in furtherance of the purpose of the park unit at issue.

5. The NPS is authorized to lease park facilities under 54 U.S.C. § 102102 and 54 U.S.C. § 306121. The NPS implements both of those statutory authorities under 36 CFR Part 18 and must comply with those regulations when it leases such facilities. These regulations require, among other things, that all such leases issued by NPS have as short a term as possible, taking into account the financial obligations of the lessee and other relevant

factors. *See* 36 C.F.R. §18.10. NPS leases with terms greater than 10 years require approval of the Director but may be justified when the terms of the proposed lease obligate the lessee to take on substantial financial obligations to improve the premises.

6. On September 30, 2020, the NPS National Capital Region executed a lease with the National Links Trust ("NLT") covering the East Potomac Golf Course, the Rock Creek Golf Course, and the Langston Golf Course for the period between October 5, 2020, and September 30, 2070, NPS Lease # NCR-3060-19-001 ("Lease"). A true copy of the Lease is attached as Exhibit A.

7. In order to obtain this 50-year Lease, NLT agreed to make substantial "initial improvements" at all three golf courses that would include "the construction, modifications, rehabilitation, reconstruction and/or restoration of the Premises." Lease, Sections 1.18 and 8 ("If otherwise granted approval by the Lessor under the terms of this Lease, Lessee hereby agrees to commence and engage diligently in the construction of the Initial Improvements described in Exhibit D (Initial Improvements by Lessee) in accordance with the schedule set forth therein and the Construction Documents approved by Lessor.").

8. As set forth in Exhibit D to the Lease, the "initial improvements" NLT agreed to undertake at the Rock Creek Park Golf Course included, among other things, redeveloping the historic club house, constructing a new practice area, rebuilding a maintenance facility, constructing two 9-hole golf courses, constructing an 18-hole putting course, and developing public hiking trails. These redevelopment projects were to be initiated in January 2021 and completed by June 2022. As of the termination of the Lease, NLT had not completed construction of any of these redevelopment projects. For Langston Golf

Course, the "initial improvements" included, among other things, renovation of the existing 18-hole golf course, construction of an 18-hole putting course, renovation of the practice areas and driving range, and construction of a new miniature golf course and public hiking trails, all of which were to be completed by June 2024.  NLT had not commenced or completed any of these projects prior to the termination of the Lease. For East Potomac Golf Course, NLT agreed to redesign and rebuild the White Course, redesign and rebuild the Red Course, construct a new driving range, rebuild the maintenance area, and preserve and restore the original clubhouse, among other things. The Lease provided that these projects were to commence by October 2024 and be completed by October 2027. NLT had not commenced or completed any of these projects prior to the Lease termination.

9. In September 2025, I became aware of a conceptual proposal called the "Washington National Golf Project" and/or the "America 250 Golf Project" that contemplated the President and the Secretary of the Interior, as the Ex-Officio Director of the National Park Foundation,  raising as much as $150 million in charitable contributions and collaborating with NLT to renovate the Rock Creek, Langston, and East Potomac Park golf courses and facilities in celebration of America's 250th anniversary.  The proposal contemplated that these NPS golf courses would remain affordable and accessible consistent with the terms set forth in NLT's Lease.  The proposal further contemplated NPS assisting with the compliance and design-approval process for these major renovation projects.  This compliance process had not commenced by late October 2025, when I was informed by Department of the Interior ("DOI") officials that negotiations with NLT regarding the proposed "Washington National Golf Project" and/or "America 250 golf project" were not progressing towards a formal agreement.

10. On October 29, 2025, DOI and NPS (collectively "Department"), sent notice of default to the president of NLT, citing NLT's "failure to make the Initial Investments described in Exhibit D . . . in accordance with the schedules set forth therein." The letter concluded that the Department "look[s] forward to continuing our discussions on this matter and [] sincerely hope we can find a mutually agreeable path forward in the days ahead." A true copy of the default letter is attached as Exhibit B.

11. During the ensuing 45-day default cure period, Department officials made extensive efforts to meet and confer with NLT regarding the pending default notice, including in-person meetings, teleconferences, and written proposals. Upon further review during the cure period, Department officials discovered that NLT had failed to pay millions of dollars in rent. NLT generated over $55 million in gross revenues over the course of the lease, yet never once paid percentage rent pursuant Section 5.4 of the Lease. Department officials are continuing to investigate the precise amount of rent owed, but has determined that, at a minimum, NLT owes NPS nearly $6 million in unpaid rent for revenues generated prior to NLT submitting its first rent offset request in 2024.

12. On December 30, 2025, the Department sent a Notice of Termination to the president of NLT terminating the Lease due to NLT's failure to "make substantial (tens of millions of dollars) initial capital improvements in each of the three NPS National Capital Region golf courses," and because NLT's submissions during the cure period did not provide NPS with "reasonable assurances" that NLT had the "necessary funding, ability or plan in place to fulfill its capital-investment obligations under the Master Lease." A true copy of the termination letter is attached as Exhibit C.

13. Although the Lease was terminated "effective immediately," NPS has allowed NLT, through its management company Troon Golf, LLC, to operate all three golf courses on a temporary "holdover" basis, while Department leadership considers future plans for the management the three golf courses, including the East Potomac Park Golf Course.

14. I am aware that Department officials are actively considering plans to renovate the three NPS-owned golf courses, including East Potomac Golf Course, but I have been informed that all such proposals are still in the conceptual phase and that no proposed plans have been finalized. Once any conceptual plan or proposal is finalized, NPS would undertake a variety of legal and compliance steps before authorizing a major renovation of the golf courses and related facilities at East Potomac, Langston or Rock Creek.

15. If the plan under consideration ultimately involves NPS entering into a new long-term lease for the East Potomac Park Golf Course, or for all three NPS golf courses in the District, the NPS would first need to identify a potential qualifying lessee, negotiate agreed-to lease terms with the potential lessee, and determine that the terms of the lease and proposed activities under the lease meet all the applicable requirements of 36 C.F.R. part 18, including the criteria in 36 CFR §§ 18.4, 18.5, and 18.10 (e.g., that the lease will not result in degradation of the purposes and values of the park area, that the lease is for rent at least equal to the fair market value rent of the leased property, that the term of the lease is justified after taking into consideration the capital investment obligations of the lessee, etc.).

16. If NPS, a new lessee, or an authorized third party were to propose a project to renovate the East Potomac Golf Courses and related facilities, the NPS would require full compliance with the National Environmental Policy Act ("NEPA"), Section 106 National Historic

Preservation Act ("NHPA"), Section 7 of the Endangered Species Act ("ESA"), the NPS Organic Act of 1916 ("Organic Act"), and any other applicable laws and regulations, prior to undertaking the project. Depending on the nature and scope of any such proposal, the requisite compliance process could also include review and approval by the National Capital Planning Commission ("NCPC"), and the U.S. Commission on Fine Arts ("CFA").

17. Even before initiating the compliance process for such a project, the NPS, new lessee, or authorized third party would first need to contract for architecture and design services. The NPS needs sufficient detail to be able to analyze potential impacts of a proposed action and determine the pathways for compliance with NEPA, section 106 of the NHPA and any other applicable laws.

18. Compliance with NEPA requires agencies to analyze environmental consequences before authorizing any proposed project that constitutes a "major Federal action significantly affecting the quality of the human environment." Although landscaping projects may qualify for a categorical NEPA exclusion ("CE"), any substantial renovation project proposed for one or more of the NPS-administered golf courses in the District would likely constitute a "major Federal action," requiring the NPS to prepare an environmental assessment ("EA"), or, if impacts were found to be significant, an environmental impact statement ("EIS").

19. The NHPA requires agencies to consider impacts to historic properties prior to commencing a federal undertaking. Renovation of the golf courses and related facilities in East Potomac Park would likely constitute a federal undertaking. As such, in order to comply with the requirements of the NHPA, the NPS would need to identify any historic properties that could be affected, identify relevant stakeholders, and consult with those

stakeholders to identify and address any adverse impacts to the historic properties, among other requirements. East Potomac Park Golf Course and the East Potomac Field House, among other historic structures in the park, are listed on the National Register of Historic Place as contributing sites to the East and West Potomac Parks Historic District. Accordingly, any proposal to renovate the East Potomac Park Golf Course would likely trigger the NHPA Section 106 consultation process.

20. A proposal to renovate the East Potomac Park Golf Course and related facilities would also require compliance with the ESA, and I understand that there are protected species in the national capital region that may be present in the vicinity of the East Potomac Park Golf Course. Identification of any such species, and compliance with the ESA, would be accomplished through Section 7 consultation with the U.S. Fish and Wildlife Service and, as appropriate, the National Marine Fisheries Service.

21. In order to renovate the East Potomac Park Golf Course and facilities, the NPS would also be required to demonstrate compliance with the NPS Organic Act of 1916 by preparing a non-impairment determination for the selected action. A non-impairment determination states in writing that, in the professional judgment of the NPS decision-maker, the action selected in a finding of no significant impact ("FONSI"), or record of decision ("ROD"), will not result in impairment to park resources or values. The non-impairment determination is prepared for the selected action only, must be completed prior to the signing of a FONSI or ROD by the NPS decision-maker, and is generally attached to the FONSI or ROD. If the environmental analysis in an EA or an EIS indicates that the action would cause impairment, NPS may not select that action. NPS policy does not generally

require the preparation of a non-impairment determination for actions that fit within a CE for the purpose of NEPA compliance.

22. Depending on its scope and nature, a proposal to renovate the East Potomac Park Golf Course and related facilities may also require NCPC review and approval. If necessary, NCPC would conduct a three-tiered review process consisting of concept, preliminary, and final review. During concept review, NCPC evaluates and provides input on alternatives and general consistency with NCPC policies. During preliminary review, it evaluates the general design approach, site planning, massing, and programmatic relationships to ensure the proposal is conceptually sound and consistent with relevant policies and plans. During final review, it assesses detailed architectural, landscape, and engineering elements to ensure full compliance with its planning standards.

23. Depending on the scope and nature of the proposed project, a renovation of East Potomac Park Golf Course and related facilities could also require CFA review and approval. If necessary, the CFA conducts a two-tiered review process, consisting of concept review and final review. The process begins when an agency submits a project for concept review. Once the concept is endorsed, the project advances to final review, where the Commission examines detailed architectural drawings, materials, landscape plans, and other refined design elements. Projects may return for multiple reviews at either stage to address comments or revisions.

24. In the event that NPS, a future lessee, or an authorized third party proposes to initiate a project to renovate or redesign the golf course and facilities in East Potomac Park, NPS will follow the requisite compliance process discussed above and adhere to all applicable laws.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 4, 2026.

JESSICA BOWRON

Digitally signed by JESSICA BOWRON
Date: 2026.03.06 18:19:23 -05'00'

Jessica Bowron