IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DC Preservation League, et al., | ) Civil Action No. 26-cv-477 |
| Plaintiffs, | ) STATUS CONFERENCE BY ZOOM |
| vs. | ) |
| Douglas Burgum, et al., | ) Washington, DC April 9, 2026 Time: 4:00 p.m. |
| Defendants. | ) |

---

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE ANA C. REYES
UNITED STATES DISTRICT JUDGE

---

A P P E A R A N C E S

For Plaintiffs: Will Bardwell
Mark Samburg
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 773-0490
Email: Wbardwell@democracyforward.org
Email: Msamburg@democracyforward.org

John P. Bolen
LOWELL AND ASSOCIATES, PLLC
1250 H St NW
2nd Floor
Washington, DC 20005
(301) 651-5610
Email: Jbolen@lowellandassociates.com

For Defendants: Michael Robertson
DOJ-ENRD
150 M Street, NE
Washington, DC 20002
202-598-3835
Email: Michael.robertson@usdoj.gov

Court Reporter: Janice E. Dickman, RMR, CRR, CRC
Official Court Reporter
United States Courthouse, Room 6523
333 Constitution Avenue, NW
Washington, DC 20001
202-354-3267

* * *

* * * * * * *P R O C E E D I N G S* * * * * * *

THE COURTROOM DEPUTY: Your Honor, this is civil action 26-477, DC Preservation League, et al. versus Department of Interior, et al.

Will the parties please identify themselves for the record, beginning with plaintiffs' counsel.

MR. BARDWELL: Your Honor, good afternoon. My name is Will Bardwell, on behalf of the plaintiffs. I am joined by my colleagues Mark Samburg and Jack Bolen. And I don't believe plaintiffs have anyone else on the call.

THE COURT: Okay.

MR. ROBERTSON: Good afternoon, Your Honor. Michael Robertson on behalf of defendants.

THE COURT: Hi, Mr. Robertson. Nice to see everyone again. I apologize for the short notice. I have a trial starting on Monday that's going to take a while, so it was either now or four weeks from now. So I had a feeling plaintiffs would be upset if I took four weeks. So thank you for getting on in short order. I don't think this has to take very long.

So first of all, Mr. Robertson, I'm a little bit concerned about, sort of, this additional information in the joint status report about whether or not we're further along with the decision than I thought we were. So can you just give me an update?

MR. ROBERTSON: Sure. Of course, Your Honor. And first off, thank you for accommodating counsel's request for timing of the status conference.

THE COURT: Yeah, of course.

MR. ROBERTSON: In terms of where we are, just in terms of discussions with counsel, I think we have had some success. We were able to agree to a motion to dismiss schedule, one that pushes this forward and advances it faster than I think would be typical in a case like this. So I think there is some progress. And then we also agree on the back end, too. I think, actually, that wherever we end up, there's probably going to be -- if there's a -- if this survives motion to dismiss and we get to summary judgment, we agree there's going to be a joint status report, it's just in the middle we're having trouble.

THE COURT: I still have a PI? I didn't deny it, did I? I see the PI pending.

MR. ROBERTSON: Yes, that's our understanding, Your Honor.

THE COURT: Okay. All right. Go ahead. My question is -- but before we get to the briefing and where we are with all the discovery and whatnot, I saw from the plaintiff's joint status report that I guess there's been either more meetings with the President, or the Executive Office, you know, wants the Interior to go forward, there's been more plans that have

been shown. Do you know anything about all of that? The last we spoke I got this idea that this was just a sparkle in somebody's eyes, but now it looks like there's a little bit more than that.

MR. ROBERTSON: Your Honor, I think our -- well, let me break this up into two things. I think our position is consistent in that there is still just ongoing active consideration of any kind of proposed renovation plan to the golf course.

THE COURT: Okay.

MR. ROBERTSON: And then part two of that is the stockpiling of the fill material.

THE COURT: Let's stick with the plan and then we can move to the stockpiling.

MR. ROBERTSON: Sure.

THE COURT: So, I mean, plaintiffs, you guys, do you guys want to say anything? I mean, you're the ones who, I guess, have heard that there's sort of additional issues with ongoing plans.

MR. BARDWELL: Yes, ma'am. The most recent moves that we've heard is about the March 23rd meeting between EOP and the agency defendant officials. We believe that that is connected to the plan to present to the National Capital Planning Commission at its May meeting. Obviously, you can't present a glimmer-in-your-eye at those commission meetings. We

think that further underscores how far down the road we are.

THE COURT: Is the commission -- I thought at some point the plans were going to be open for public comment. Would that be before or after the commission sees them? I thought someone told me last time if there were going to be plans, they would be open for public comment.

MR. ROBERTSON: I think, Your Honor, what you might be envisioning is that if this got to some point where there was full-blown NEPA analysis, then, yes, that would be that type of public involvement. But, one, we're not there, we don't know if we'll ever get there, that's what maybe --

THE COURT: Is there a May commission meeting and is the commission, whatever this kind of commission is, East Potomac Park Hains Point Commission -- what's the name of the commission, plaintiffs?

MR. BARDWELL: It's the National Capital Historic -- no, that's not right. It's the National Capital Planning Commission.

THE COURT: Okay. Mr. Robertson, is the planning commission meeting in May and are they being given plans?

MR. ROBERTSON: Your Honor, I have no idea what meetings the Capital Planning Commission is having. All of that information, though, is post-decisional, after the decisions here that plaintiffs have challenged. Plaintiffs have challenged that there's already been final agency action

and what they're talking about comes, even if it happens, way, way after the alleged decisions in this case. All of that is irrelevant now.

THE COURT: Hold on. Hold on, Mr. Robertson. Hold on. I just want to -- I just want to make sure I understand what's going on. I understand that the last time you were here your claim was that there's been no decision yet, right?

MR. ROBERTSON: That is true, Your Honor.

THE COURT: If something is being presented to a national planning commission, is that a decision or does that -- is the decision after the commission does whatever the commission does?

MR. ROBERTSON: Our position is there's still no decision, there's still no final authorization here of approval of any plan involving --

THE COURT: Mr. Robertson, I understand. What role does the National Planning Commission Play in any plan? Let me ask it that way.

MR. ROBERTSON: So my -- I'm getting into hypotheticals here. I'm not super familiar with the commission itself. My understanding, they review proposals for consistency with architectural and historic features.

THE COURT: But it remains a proposal after the commission looks at it?

MR. ROBERTSON: Yes, Your Honor. It's ultimately up

to them to make that decision whether to implement something.

THE COURT: In the government's view, when would a decision be final, such that, with respect to the golf course, it could be challenged?

MR. ROBERTSON: So, I think it would be after that series of steps that we laid out in our opposition brief, Your Honor. So there needs to be a couple different things that would have to happen first. We would have to get a lessee, we would actually have to come up with a plan, we would have to do our environmental compliance, we have to do our HBA compliance. We have to, potentially, propose this to the commission, if it qualifies under certain elements. And then after that, then we would approve it or not approve it at that point.

THE COURT: Who would approve it?

MR. ROBERTSON: But all of that --

THE COURT: Who would approve it or not approve it?

MR. ROBERTSON: Official in the agency with authority, Your Honor. I'm not sure who that individual is per se.

THE COURT: All right. And, plaintiffs, where along this spectrum do you think that we are?

MR. BARDWELL: Your Honor, we have no doubt that the plan is in motion. Certainly it was in motion no later than the point at which NLT was terminated because that was always a necessary part of the plan. So certainly no later than

December 30 of last year.

THE COURT: All right.

MR. BARDWELL: Truthfully --

THE COURT: Go ahead.

MR. BARDWELL: I'm sorry.

THE COURT: No, go ahead. Truthfully --

MR. BARDWELL: We almost certainly have to go back to the August 1 meeting between Secretary Burgum, Mr. Doffermyre, and the President at which this plan was first proposed.

THE COURT: But this is the argument that we had last time that we were here. There's been no sort of other agency action, other than more meetings that have sort of moved the ball forward in the sense of there being a final, quote, unquote, decision, other than what you think has already happened?

MR. BARDWELL: Well, two things on that. First of all, it seems to me to be inconsistent to say on the one hand there has been no final decision, while at the same time saying that all these documents in the universe of possible production are post-decisional.

THE COURT: Yeah, that did catch my eye. I'm going to ask Mr. Robertson about that.

MR. BARDWELL: It's got to be one or the other. It's got to be one or the other.

THE COURT: The second thing?

MR. BARDWELL: The second thing being that clearly by now, if we're talking about proposing something to the planning commission, you know, even if we accept the idea that the August 1 meeting was just a spitball meeting, that's -- that can't be what the defendants are planning to take to the planning commission. They have to be farther along with that.

We also know there is a visual rendering that has been shown to interested parties. So, again, clearly we are beyond the point where this is just a hypothetical possibility. The train has begun moving down the tracks, and we believe it's quite far down the tracks.

THE COURT: Mr. Robertson, what was this about the plaintiffs saying that you said that something was post-decisional?

MR. ROBERTSON: So, first, I'll respond to Mr. Bardwell. Something beginning to move down the tracks is just simply not final agency action, first and foremost.

THE COURT: No, I understand. I get it.

MR. ROBERTSON: What I'm getting at is what plaintiffs have done, they filed their complaint, is that they challenged two hypothetical agency decisions and now what they're trying to present in front of you is that, well, there are other facts that have now happened, after we said a decision already occurred. Now, we don't believe that any decision has occurred yet.

THE COURT: So then you have no -- so if no decision has occurred, none of your objections are that something is post-decisional?

MR. ROBERTSON: It's under their theory. Even under their theory, if there had been a decision, what they're asking for now would be post-decisional.

THE COURT: You can't have it both ways, Mr. Robertson. It's either not post-decisional or it's post-decisional. Maybe you have a different objection, but you can't say under their theory it's post-decisional, if your claim is there's no decision. I'm all for metaphorical discussion with you about it, you know, maybe over drinks, not right now.

MR. ROBERTSON: I'll submit no decision, Your Honor, and end there. What I think we are trying to do, is present the process for this to play out. I understand that plaintiffs want additional information. Whether or not they're entitled to that is an open question and they are --

THE COURT: Okay. Let's close the question, Mr. Robertson. They have a preliminary injunction motion in front of me. All right? And what I do know is that I can't decide a preliminary injunction on an APA claim without administrative record, even if there's a challenge to jurisdiction. So I also know that with a motion to dismiss, I can request an administrative record. And I understand your

viewpoint that it has to be tied somehow to the actual motion to dismiss, but I think that we are -- based on everything I said last time and everything I still believe, that I need to see an administrative record and I think the plaintiffs need to see an administrative record. So I'm going to order an administrative record. You know I had hoped that we would be able to do this, sort of, the easy way. But I'm sure that you did what you could. But here we are.

MR. ROBERTSON: Your Honor, may I first -- one, I do want to apologize if our submission on the joint status report came across the wrong way.

THE COURT: No, no, it didn't. I told you, Mr. Robertson, I thought nothing but very highly of your work, and I still do. I'm just saying -- I don't think that you were or your client was trying to be dismissive of what we tried to do last time. If I said it that way, I misspoke. But wherever we are, here's where I am right now, which is I want an administrative record.

MR. ROBERTSON: Yes, Your Honor. Understood.

THE COURT: Okay.

MR. ROBERTSON: And in our -- later down, our section of the joint status report, we present a proposal for just this circumstance, where we can lay out the briefing schedule for our motion to dismiss. And we have a briefing schedule that is an early-on AR-involved schedule. And we would just request

that you follow that so as not to force either plaintiffs' counsel or defense counsel to be engaging in multiple briefing at the same time on these issues.

THE COURT: Well, you know, I had a case the other day, it was my *Talbott* case on the trans individuals in the military case, and the plaintiffs had said that they hadn't been able to do something because they were focused on the appeal. And I said to the government, can't you all walk and chew gum at the same time? And the government attorney was great, and he said, we can, Your Honor, we can also do back flips.

So my guess, Mr. Robertson, is that you can chew gum, walk, and do back flips at the same time, as your colleague can over at DoJ and DoD. So, I'm not going to make you -- I mean, I think you wanted until April 30th, I think, to do your administrative record?

MR. ROBERTSON: Yeah, the way we structured it was just so that, like, the timing would -- one thing would immediately follow another.

THE COURT: That's what I --

MR. ROBERTSON: So we would finish our brief, they would finish theirs, we would get the administrative record, they would have their brief, we would respond.

THE COURT: I want -- no, because I think they should have a chance for the administrative record before they file

the opposition to your motion to dismiss, right? I mean, I assume, plaintiffs, that's what you all want. Then I want the motion for extra record discovery to be teed up sooner than what you had in your response, Mr. Robertson. But, plaintiffs, you tell me what you want.

MR. BARDWELL: Your Honor, we proposed filing a motion for extra record discovery no later than seven days after the production of an administrative record.

THE COURT: I mean, that sounds -- Mr. Robertson, if you've got until -- your filing your motion to dismiss today, right?

MR. ROBERTSON: Yes, Your Honor.

THE COURT: Okay. If you need until tomorrow because you got stuck with me, that's totally fine. You know, if you need an extra day, that's fine. But, if you have until April 30th then to file your administrative record, if the plaintiffs at that point have seven days to file a motion for extra record discovery, you're not going to be filing a reply brief, I don't think, in that time period. So you should have time to do the opposition to the motion for extra record discovery, right?

MR. ROBERTSON: That -- I think that math works out, yes. I think that's right.

THE COURT: Okay. All right. And then I think that there was some -- okay, so that's for the administrative record, but then I think there was some testing. I had asked

for results to be given over with respect to the stuff that was dumped or is going to be dumped or is being dumped. Is that part of the administrative record, or no? Because that, at a minimum, I want the plaintiffs to have.

MR. ROBERTSON: No, Your Honor, that --

THE COURT: That's part of the key to their preliminary injunction motion, which is why I think this has to move quicker. My understanding was in the government's view there was no issue on the environmental impact. And if not, that's wonderful. But if there is, then that gives more oomph to their PI.

MR. ROBERTSON: Your Honor, we are willing to confer with plaintiffs on that issue, but we are not willing to just agree to hand over the test results. We think that should be the subject of any motion for extra discovery record.

THE COURT: I don't understand why. Whatever. You guys confer. Mr. Robertson, keep in mind that my strong inclination is that the plaintiffs are entitled to that information because they're claiming they need a PI because of environmental impact.

MR. BARDWELL: Your Honor, may I add one thing?

THE COURT: Sure.

MR. BARDWELL: We learned, very shortly after filing the joint status report earlier this week, that the government has filed, in the East Wing case, a declaration saying

affirmatively that the East Wing structure included asbestos and lead paint. So suffice it to say, our spider sense about the contaminated nature of this dumping is far more elevated now, even than it was when we filed the case.

THE COURT: Well, is that -- I'm sorry, is that declaration on the public docket?

MR. BARDWELL: Yes, ma'am, it is. I have about 8,000 tabs open on my screen right now. But, if Your Honor would like, I can pull that up. It's case number --

THE COURT: I don't really need it. Mr. Robertson, do you know what he's talking about?

MR. ROBERTSON: I do not, Your Honor. I'm sorry.

THE COURT: Why don't you guys -- Mr. Bardwell, you send it to Mr. Robertson, you tell him why your spidey sense -- whatever, doing your spidey sense thing. And, Mr. Robertson -- look, I think that you should have the kind of conversations that lawyers love to have with their client about we're going to have to do stuff that we don't want to have to do, because we can do it now the easy way, or we can do it longer if we do it later, after the judge is thoroughly annoyed. So you guys figure it out.

I understand you're not going to want to turn over ever single thing, but give them something of what they need so they get a sense of what's in the stock piles. Okay?

MR. ROBERTSON: Understood, Your Honor.

THE COURT: Okay. So, Mr. Bardwell, if you guys are okay with, you know, the schedule that Mr. Robertson set out, and it seems like you should be, then it seems like the schedule is -- hold on. Where was the schedule of Mr. Robertson? Page 10. So, Mr. Robertson, I thought somewhere I read that you wanted to have the AR due April 30th. Did I make that up?

MR. ROBERTSON: No, Your Honor, you did not make that up. That is on page 11. That -- again, that is not our position. That is simply if the Court disagrees with our position, which I understand the Court does, we just request this alternative schedule to --

THE COURT: Okay. I see. So what we're going to do is you guys work out a schedule from here, but I want the administrative record to be lodged on no later than April 30th -- I guess May 7th for the extra record motion. And then you guys figure out, you know, oppositions, whatnot from there. And then you guys figure out with Ms. White when you want to have hearings.

I mean, if you want to have one hearing on the extra record motion and then a different hearing on the motion to dismiss and another one on the PI, you know, that's fine. If you want to do it all at once, that's fine. I'll probably need about a week after each motion, after the reply briefing before I get a hearing, maybe a little bit more on the motion to

dismiss and PI, which I assume we can do together. But you guys figure out what you want and you work that out with Ms. White. Does that all make sense?

MR. ROBERTSON: Yes, Your Honor.

MR. BARDWELL: Your Honor, I have one question. I'm 90 percent sure I know the answer for this, but just to avoid any ambiguity, is it the Court's understanding that the AR will extend to both the dumping and the Washington National Plan as a whole?

THE COURT: Yeah.

MR. BARDWELL: Thank you. That was also my understanding. I just wanted to be absolutely sure.

THE COURT: I think that's right. But then, also, Mr. Robertson, the only thing I'm just a little bit concerned about this commission -- here's what I don't want to have happen, Mr. Robertson, is based on what I've seen so far, I'm willing, you know, to sort of give you this time that we're taking for the motion to dismiss while I keep the preliminary injunction motion somewhat, you know, on hold, as it were.

I don't want to get to a point where someone is telling me, from the government, that it's too late, too many things have happened and now we are, like, moving forward and we can't, you know, stop the trains. All right? So please make clear to your client that I am not going to entertain -- and I am going to be quite emphatically not entertaining any

argument that, oh, things are too far along, it's going to be too expensive to undo things or undo plans or any more of those kinds of things because if I get that, I'm going to refer to this and I'm going to say I told you I wasn't going to deal with that.

So if we get to a point where you're seeing the train is gaining speed and we're no longer on the Acela, but we're on the Japan fast train and we're in danger of quickly outpacing the litigation, I need you to be upfront with me so we can do things without expense and undoing plans and whatnot. Okay?

MR. ROBERTSON: Yes, Your Honor.

THE COURT: Okay. All right. Mr. Bardwell, if anything comes up where you think we've left the Acela and we're on the fast train in Japan, please reach out to Mr. Robertson. If you need to get me, you know you can get to me quickly. But you guys communicate with each other before you get to me.

MR. BARDWELL: Your Honor, I'm in Mississippi, we only have Amtrak down here. But if we start moving faster than that, I'll speak with Mr. Robertson.

THE COURT: If you guys need me, just let me know. I appreciated the joint status report, it was very helpful. But if something comes up and you guys need to get to me quicker than a status report, just feel free. Whenever you guys get a briefing schedule, just put it in -- do a joint briefing

schedule, I'll get the order entered, and then just coordinate with Ms. White on the hearings. Okay?

MR. BARDWELL: Yes, ma'am.

THE COURT: Thank you, everyone.

MR. ROBERTSON: Thank you.

* * *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 13th day of April, 2026

______________________________

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C. 20001