**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | Civil Action No. 1:26-cv-477-ACR |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR STATUS CONFERENCE**

The National Park Service (NPS) has not made a final decision about renovating or remodeling the East Potomac Golf Course.  NPS confirmed as much in a sworn declaration four days ago.  In that same sworn declaration, NPS again confirmed that it would follow the applicable compliance processes before issuing a formal decision to move forward with any renovation.  NPS said the same thing—in another sworn declaration—nearly two months ago.

In ordinary circumstances, this would have alleviated Plaintiffs' concerns.  Their counterfactual theory is that NPS already adopted a renovation plan without following the compliance processes. Despite NPS's sworn statements committing to future compliance, Plaintiffs won't take yes for an answer. In the latest iteration, they point to hearsay in news articles

that Plaintiffs say overcomes NPS's sworn statements.[1]  One article notes that "landscaping, deferred maintenance and tree-clearing" will begin on May 4 at East Potomac Park.  Another says that fundraising to support the future renovation of East Potomac Park is underway.  From this, Plaintiffs definitively claim that there "is a [renovation] decision that is final, and its implementation has begun." Pls.' Mem. 9, Dkt. No. 47-1.  That is wrong.[2]  Plaintiffs are effectively asking the Court to superintend a golf course and to hang on the media's every word when deciding how to operate it.  This is one reason Congress included the final-agency-action requirement in the Administrative Procedure Act's (APA) waiver of sovereign immunity.  While the APA allows courts to review final agency action, it does not allow courts to micromanage a deliberative process that may eventually culminate in final agency action.

Defendants do agree with Plaintiffs on one point: the Court should decide the pending preliminary injunction motion.  It should deny that motion for the reasons Defendants have explained. Defs.' Resp. in Opp. to Pls.' Mot. For Stay or, in the Alternative, Prelim. Inj., Dkt. No. 26.  If the Court accepts Plaintiffs' unauthorized supplemental argument in support of that motion, Defendants request a chance to respond in due course.  In the meantime, Defendants make a few quick points in accordance with the Court's May 3, 2026, Minute Order.

***The deferred maintenance activities.*** The NPS declaration filed on April 30 explained that "[p]rior to a proposed renovation of the East Potomac Golf Course, the NPS may take actions to

---

[1] Plaintiffs' counsel asked about one of the articles after business hours on May 1. We were actively investigating those questions over the weekend when, much to our surprise, Plaintiffs filed an emergency motion less than forty-eight hours after their initial outreach.

[2] This is not the first time Plaintiffs have rushed to rely on hearsay and gotten it wrong.  At the last status conference, Plaintiffs submitted that a "plan" would be "present[ed] to the National Planning Commission at its May meeting." Tr. 5:23-24. The National Planning Commission has posted its final agenda for its May meeting and no such "plan" is on the agenda. *See* https://www.ncpc.gov/review/agenda/.

address outstanding deferred maintenance and repair issues at the Golf Course." Bowron Decl. ¶ 14. NPS has decided to begin initial deferred maintenance and repair activities on May 4. Initial work will include basic housekeeping and repairs that do not require any environmental compliance documentation like fence cleaning and debris cleanup activities. Ex. 1, Decl. of Kevin Griess Decl. ¶ 19. NPS is still evaluating the scope of repairs and deferred maintenance issues, including critical safety issues, that the National Links Trust allowed to proliferate. *See id.* ¶¶ 21, 23. An initial assessment reported that the parking lot, retaining wall, signage, exterior of the Club House, interior of the Club House, flower beds, light poles, cart paths, maintenance compound, Driving Range Building, Driving Range, Golf Course Barn, Starter Building, and trees in the parking lot were all in poor or critical condition. *Id.* ¶ 13. NPS is continuing to assess the scope of necessary repair activities and to prioritize critical needs. *Id.* ¶ 21.[3] NPS has attested that no deferred maintenance would be undertaken without completing the appropriate environmental compliance. *Id.* ¶ 21.

The Court ordered Defendants to address what, if any, work has taken place at the golf course. As of the time of filing, our understanding is that none of this work has taken place. As we explained, initial deferred maintenance and repair will begin, at the earliest, on May 4.

***The deferred maintenance activities are separate from any renovation or redesign.*** The NPS declaration that we filed on April 30 also explained that the "[d]eferred maintenance and repair would not include major changes to the golf course." Bowron Decl. ¶ 14. NPS has again confirmed this in the declaration attached to this filing. *See* Griess Decl. ¶ 24 ("This deferred maintenance is separate and apart from any renovation or redesign of East Potomac Golf Course,

---

[3] At this time, no tree removal is anticipated other than to address dead or dying trees or limbs that pose a hazard to the public or to address invasive species that may be present on the golf course. *Id.* ¶ 22.

which is subject to further deliberation and several interim steps, and legal compliance must first be completed before any redesign can be approve and implemented.").

***Fundraising and renderings are not final agency action.*** As we have explained, Plaintiffs' attempt to challenge a future renovation of East Potomac Park necessarily fails because they have not challenged final agency action. *See* Mot. to Dismiss Dkt. No. 34 at 28–32. Plaintiffs point to fundraising efforts and renderings of a redesign proposal that they say "leaves no question that Defendants have made a decision to implement that plan." Pls.' Mot. 12. This emphatic claim is curious because Plaintiffs shed no light on how the alleged fundraising efforts and renderings map onto the definition of final agency action. *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (explaining that "[f]inal agency action" is action that (1) "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) creates legal "rights or obligations," with "direct and appreciable legal consequences" (citations omitted)).

Nothing about the alleged fundraising or renderings mark the consummation of the agency's decisionmaking process. Rather, as NPS explained in its April 30 sworn declaration, renovation plans are still "in the conceptual phase." Bowron Decl. ¶ 13. Plaintiffs' renderings themselves only refer to East Potomac Park at this stage as "[r]eimagined." Dkt. 47-2 at 3. Perhaps the agency will ultimately develop and pursue this imagined concept displayed in the renderings. Perhaps not. Until NPS makes a final decision, Plaintiffs cannot challenge a concept, and Defendants cannot be held liable for violating compliance obligations that do not yet apply.

***Test results.*** Plaintiffs point to purported problems with the testing of the fill that was placed at East Potomac Park. They say they may amend their complaint given these results. Pls.' Mem. 2, n.5. Defendants disagree with Plaintiffs' understanding of the test results. But the important point for now is that these concerns have not been tested through the adversarial process.

Plaintiffs have not yet amended their complaint. And they have not filed a renewed motion for a preliminary injunction. The Court should not grant emergency relief based on arguments that Defendants have not yet responded to, especially when there is no urgency. The fill has been on East Potomac Park for more than six months.

*     *     *

Despite Plaintiffs' disappointing (and baseless) suggestions of bad faith, *see* ECF No. 47-1 at 2 ("Defendants' assurances that lengthy decisionmaking and legal compliance lie ahead are a ruse."); *id.* ("Trust is no longer an option."); *id.* at 13 (urging the Court to "view the balance of the declarations with skepticism"), Defendants will continue to look for ways to work together in a productive manner and remain committed to conducting the necessary legal compliance. *See* Griess Decl. ¶ 24.

Respectfully submitted this 4th day of May 2026.

**ADAM R. F. GUSTAFSON**

Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

 */s/ Michael K. Robertson*

MICHAEL K. ROBERTSON
Trial Attorney (DC Bar No. 1017183)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002
Tel: (202)-305-9609
Email: Michael.Robertson@usdoj.gov

*Attorneys for Federal Defendants*