**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*, | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| *vs.* | : Case No. 1:26-cv-477 |
| | : |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | : |
| | : |
| *Defendants.* | : |

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

BACKGROUND AND PROCEDURAL HISTORY.................................................................. 2

LEGAL STANDARD.................................................................................................................. 4

ARGUMENT ............................................................................................................................... 5

    I.    Extra-record discovery is appropriate in this case ................................................. 6

    II.    Expedited discovery is reasonable ......................................................................... 7

        a. Plaintiffs' discovery requests are narrow...................................................... 8

        b. Plaintiffs seek discovery in furtherance of a permissible purpose.............................. 10

        c. Plaintiffs' requests will not be burdensome for Defendants........................................ 11

    III.    Third-party subpoenas are appropriate in this case to reach information outside
Defendants' control .......................................................................................................... 12

        a. The National Garden of American Heroes Foundation ................................................ 14

        b. O'Rourke Group ........................................................................................................ 15

        c. Fazio Design ............................................................................................................. 16

        d. National Links Trust .................................................................................................. 17

        e. Clark Construction and Jacobs Engineering ................................................................ 17

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Dep't of Lab.*,
  349 F.R.D. 243 (D.D.C. 2025)............................................................................ 4, 5, 6, 7, 8

*All. For Retired Ams. v. Bessent*,
  No. 25-0313, 2025 WL 1114350 (D.D.C. Mar. 20, 2025) ................................................ 5

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
  143 F. Supp. 2d 7 (D.D.C. 2001) ................................................................................. 13, 16

*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) .................................................................................. 10

*Cmty. For Creative Non-Violence v. Lujan*,
  908 F.2d 992 (D.C. Cir. 1990).......................................................................................... 5

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019).................................................................................................... 4, 13

*Florida v. United States*,
  3:21-cv-1066, 2022 WL 2431442 (N.D. Fla. June 6, 2022)................................................ 6

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) ................................................................................... 5, 8

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018)......................................................................................... 5, 6

*Landwehr v. F.D.I.C.*,
  282 F.R.D. 1 (D.D.C. 2010)............................................................................................ 11

*Marshall Cnty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993)........................................................................................ 5

*Menkes v. Dep't of Homeland Sec.*,
  637 F.3d 319 (D.C. Cir. 2011)........................................................................................... 4

*Nat'l Park & Conservation Ass'n v. Stanton*,
  54 F. Supp. 2d 7 (D.D.C. 1999)........................................................................................ 15

*Venetian Casino Resort, LLC v. EEOC*,
  409 F.3d 359 (D.C. Cir. 2005).................................................................................... 4, 6, 17

**Rules**

Fed. R. Civ. P. 45 ................................................................................................................ 12

**Other Authorities**

Nat'l Park Found., *Board of Directors & National Council*,
       https://www.nationalparks.org/about-foundation/national-council-and-
       board-of-directors ...................................................................................................... 16

Secretary Doug Burgum (@SecretaryBurgum), X (May 8, 2026, at 8:00 PM),
       https://perma.cc/5UZT-4HMF ..................................................................................... 3

Secretary Doug Burgum (@SecretaryBurgum), X (May 14, 2026, at 10:40 AM),
       https://perma.cc/LC2Y-NSFY ..................................................................................... 4

Defendants' opposition to Plaintiffs' pending motion for a § 705 stay or preliminary injunction rests almost entirely on assertions of fact that contradict both the allegations in the Complaint and the public record.  The administrative record is silent on the majority of those factual disputes.  On critical issues, such as whether Defendants have made a final decision to destroy East Potomac Golf Course and build a championship-style course, the administrative record says nothing.  That is precisely the situation in which courts have held that extra-record discovery is appropriate in Administrative Procedure Act cases.  The Court should authorize such discovery, both from Defendants and from third parties who appear to be participating in the implementation of a decision Defendants deny having made, to ensure that the Court can resolve the motion on a complete and accurate record.[1]

The parties' briefing on Plaintiffs' pending motion for a § 705 stay, or preliminary injunction, has revealed that the core of this case is a factual dispute.  Since this case began, Defendants' responses to Plaintiffs' claims and theories of injury have turned on disputing Plaintiffs' factual allegations.  With respect to Defendants' plan to turn East Potomac into a championship-style golf course, Defendants claim—contrary to the Complaint—that they have not decided whether to redevelop the Park and therefore that Plaintiffs lack standing, Plaintiffs' claims are unripe, there is no final agency action, and Plaintiffs face no irreparable harm.  With respect to Defendants' dumping of dirt and debris on the East Potomac Golf Course, Defendants assert—contrary to the Complaint—that the dirt is "clean fill" that was tested before dumping began and verified to be free of contaminants and therefore that Plaintiffs lack standing, are

---

[1] Defendants' motion to dismiss likewise rests on the same disputed assertions of fact, ECF No. 34.  Indeed, the Court previously cautioned Defendants that, given the nature of the dispute in this case, Defendants' standing arguments were "very wrapped up with the merits issues."  Status Conf. Tr. 67:3-4, Mar. 11, 2026.  Plaintiffs' requested extra-record discovery would therefore also assist the Court in resolving the arguments advanced in Defendants' motion to dismiss.

unlikely to succeed on the merits, and face no irreparable harm.  Unfortunately for Defendants, each subsequent public revelation concerning their activities—of which there have been several—has only confirmed Plaintiffs' factual allegations and called Defendants' version of events (and with it, their grounds for opposing preliminary relief) further into doubt.

Much of the information needed to resolve the battle of narratives could—and should— have been available to the Court and Plaintiffs by now.  But despite the Court's instruction that Defendants produce an administrative record addressing both their dumping of material on East Potomac Golf Course and their decision to move forward with the course's redesign,[2] Defendants instead provided an administrative record relevant only to the debris dumping—a deficient production which shows troubling gaps and contradicts their promises of no environmental harm.  *See* ECF No. 39.  Even as new public disclosures suggest that private third parties have been moving ahead with the redesign, Defendants continue to deny, and have resisted transparency and argued that all but the barest minimum be resolved in a motion for extra-record discovery.  *See, e.g.*, Status Conf. Tr. 12-15, Apr. 9, 2026.  This is that motion.

Defendants have left Plaintiffs and the Court with no agency record regarding their decision to remake East Potomac.  Plaintiffs therefore move this Court to grant extra-record discovery to allow for resolution of these factual questions and appropriate resolution of their pending motion for preliminary relief.[3]

## BACKGROUND AND PROCEDURAL HISTORY

The Court is familiar with the background of this case, so Plaintiffs provide only a brief overview.  In their Complaint, Plaintiffs alleged that Defendants dumped contaminated debris from the White House East Wing on East Potomac Golf Course, which Defendants had "decided

---

[2] Status Conf. Tr. 18:5-12, Apr. 9, 2026.
[3] Plaintiffs have attached a draft of their proposed discovery requests as Exhibit 1 to this motion.

to destroy" and replace with a "championship-style golf course suitable for professional tournaments." Compl. ¶ 9. Plaintiffs sought a § 705 stay or preliminary injunction to prevent Defendants from doing that and to stop Defendants from continuing to dump debris on the course. ECF No. 8. Defendants opposed that motion. ECF No. 26. Although Defendants advanced several arguments relating to jurisdictional and threshold issues, the merits, and irreparable harm, their arguments all rested on two key assertions: (1) that no decision had been made to redevelop East Potomac Park, and (2) that the debris being dumped at East Potomac was clean and safe. *Id.* That motion is pending.

In the interim, numerous factual developments have confirmed the allegations in Plaintiffs' Complaint and refuted Defendants' denials. First, the Washington Post published renderings of a renovated East Potomac, distributed as part of a "pledge agreement" seeking irrevocable donations to support the "comprehensive redevelopment" of East Potomac exactly as Plaintiffs described in their Complaint. *See* ECF No. 47-1. Further, Defendants' own test results show red flags indicating that the dirt dumped at East Potomac was, as Plaintiffs alleged, not clean and *had not even been tested before dumping began*, as Defendants contended. *Id*.

Then, on May 8—in a classic Friday night news dump—Defendant Secretary of the Interior Doug Burgum announced on X (formerly Twitter) that, as Plaintiffs alleged in their Complaint, "The National Park Service *will renovate* East Potomac Golf Links" to "offer a top-tier 18-hole championship golf course capable of hosting pre-eminent tournament golf" (emphasis added). *See* Secretary Doug Burgum (@SecretaryBurgum), X (May 8, 2026, at 8:00 PM), https://perma.cc/5UZT-4HMF; ECF No. 49-1. The announcement makes clear that, as the Complaint alleged, this renovation will destroy the historic golf courses and other historically significant, environmentally sensitive elements of East Potomac Park and will preserve only

3

"themes of the original Walter J. Travis design." *Id*. The announcement was made jointly with Fazio Design, the golf course design firm of Tom Fazio—the exact golf architect Plaintiffs alleged to be leading the overhaul of East Potomac. ECF No. 1 at ¶¶ 77-79. This announcement came four days after Defendants' most recent denial at the May 4 status conference that any decision had been made to renovate East Potomac.

And just this morning, May 14, Secretary Burgum once again took to X to "unveil *the design* for the East Potomac Golf Links renovation." *See* Secretary Doug Burgum (@SecretaryBurgum), X (May 14, 2026, at 10:40 AM), https://perma.cc/LC2Y-NSFY; ECF 50-1 (emphasis added). As Plaintiffs alleged in their complaint, the plan is a "championship-quality" course "from Fazio design." *Id*. The rendering Secretary Burgum included shows that the renovated "East Potomac *will*" occupy the full footprint of the existing three courses at East Potomac. *Id*. (emphasis added).

## LEGAL STANDARD

Judicial review in APA cases is typically "limited to evaluating . . . the existing administrative record." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). Nevertheless, extra-record discovery is appropriate "when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Menkes v. Dep't of Homeland Sec.*, 637 F.3d 319, 339 (D.C. Cir. 2011) (citation omitted). As another judge of this District has noted, that second category encompasses matters which are "not [] ordinary APA cases," and therefore "a key question . . . is 'whether the alleged [final agency action] in fact exists.'" *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 248 (D.D.C 2025) (Bates, J.) (quoting *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005)). In such cases, discovery is especially appropriate to "ascertain the contours of the precise policy

4

at issue," *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018), as well as the "scope of the harm to plaintiffs" from the alleged agency action, *AFL-CIO*, 349 F.R.D. at 248.

Anything less would "frustrate effective judicial review." *Cmty. For Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990). Discovery in such cases therefore "is not so much 'fact-finding' as it is 'filling in gaps . . . to determine what the agency actually did.'" *AFL-CIO*, 349 F.R.D. at 249 (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)).

When extra-record "discovery is otherwise permissible, courts in this District evaluate requests for *expedited* discovery under a multi-factor 'reasonableness' or 'good cause' test." *All. For Retired Ams. v. Bessent*, No. 25-0313, 2025 WL 1114350 at *2 (D.D.C. Mar. 20, 2025). Reasonableness is a discretionary inquiry, to be considered "in light of all of the surrounding circumstances." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (internal citations and quotations omitted). Five such circumstances are: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal citations and quotations omitted).

## ARGUMENT

Defendants have provided no administrative record regarding their decision to destroy East Potomac Golf Course and build in its place a championship "Washington National" course. They deny that such a decision has even been made, even in the face of a growing body of contrary evidence. Given this omission from the record, and given the serious gaps, contradictions, and red flags in the administrative record concerning the decision to dump East Wing debris on East Potomac Golf Course, the precise contours of the final agency action

Defendants have taken and the resulting harms to Plaintiffs remain contested.  Extra-record discovery is therefore necessary to resolve the pending motion.

## I.  Extra-record discovery is appropriate in this case

Plaintiffs' proposed discovery requests narrowly seek to provide a sufficient record for this Court's review of Plaintiffs' pending preliminary injunction motion.  Defendants have produced a threadbare administrative record which conflicts with public reporting and statements made by senior government officials.  In cases such as this, where the government denies that reviewable agency action exists, a district court may "exercise its discretion to permit . . . discovery" to determine the existence and contours (and therefore the effects) of the final agency action.  *Hisp. Affs. Project*, 901 F.3d at 388 (internal quotations and citations omitted); *see also Florida v. United States*, 3:21-cv-1066, 2022 WL 2431442 at *2 (N.D. Fla. June 6, 2022) ("because Defendants deny the existence of the challenged final agency action, [Plaintiffs] cannot be constrained by an administrative record as to that alleged policy").

This is precisely the sort of unusual case that justifies an exception from the generally applicable "record rule" in APA cases.  "The agency action challenged here is unlike the actions normally challenged in APA cases," *AFL-CIO*, 349 F.R.D. at 248, and that difference has allowed Defendants' "litigation positions [to] obscure[] the issues in this case." *Venetian Casino Resort*, 409 F.3d at 360.  In particular, with respect to the plan to raze East Potomac Park, Defendants' challenges to Plaintiffs' standing, ripeness, finality, and irreparable harm all turn on whether Defendants have decided to destroy the existing Park and its historical assets and replace them with a championship-style golf course—as Plaintiffs allege (and Defendant Secretary Burgum has now publicly confirmed)—or whether Defendants have no such plan, as they have maintained in this litigation.  Discovery targeted to Defendants' decision to overhaul East Potomac is the only way to conclusively determine what Defendants have decided to do, whether

that decision has been adopted and approved, whether Plaintiffs have standing to challenge it, and whether it constitutes final agency action.

The administrative record Defendants provided about the dumping, while at least extant, is no more informative.  Defendants have repeatedly characterized the tens of thousands of cubic feet of dirt they dumped at East Potomac as "clean," but their own testing results call that characterization into serious question.  Neither the administrative record nor the test results Defendants released indicate the basis for the background levels against which Defendants compared their samples.  Nor does the administrative record reflect what measures—if any— Defendants took to prevent toxins from leeching out of the dirt pile.  Defendants have indicated nothing about the storage and transport protocols for their samples, calling into question the accuracy of their already troubling test results.  Perhaps worst of all, Defendants' own published test results suggest that no one tested the dirt moved to East Potomac for the first eight days of dumping; because Defendants have also not provided information about the quantity of dirt transported on any given day, Plaintiffs can only speculate at the volume of untested dirt now sitting on East Potomac Golf Course.  Discovery is necessary to fill in these gaps for proper resolution of Plaintiffs' pending motion.

## II.   Expedited discovery is reasonable

The expedited discovery factors strongly favor granting the limited expedited discovery that Plaintiffs seek.  As a threshold matter, Plaintiffs' motion for a preliminary injunction (or § 705 stay) is pending, which resolves the first expedited discovery factor in Plaintiffs' favor.

Further, "this is not the standard civil case in which a motion to dismiss is filed before any legal or factual development."  *AFL-CIO*, 349 F.R.D. at 253.  Thus, the fact that Defendants have filed a motion to dismiss should not weigh against granting expedited discovery.  To the contrary, the briefing so far in this case has not only "revealed the parties' legal arguments," *id.*,

7

but "[D]efendants have thus far not relied solely on legal arguments, but also on facts they put in the record . . . [that go] to the very issues on which [P]laintiffs seek discovery." *Id.* n.6. In these circumstances, because Defendants' motion to dismiss "rest[s] on facts outside the pleadings, . . . discovery [is] both beneficial and necessary," despite, and in fact because of, the pending motion to dismiss. *Id.* The fifth expedited discovery factor is, therefore, at worst neutral for Plaintiffs, and more fairly can be said to favor discovery. The remaining factors all weigh heavily in favor of permitting Plaintiffs' requested discovery.

### a. Plaintiffs' discovery requests are narrow

Plaintiffs' proposed discovery requests are "narrowly tailored to reveal information related to the [pending] preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98. Defendants' entire opposition to Plaintiffs' preliminary relief motion can be divided into two arguments: (1) no reviewable agency decision has been made to overhaul East Potomac Golf Course and Park; and (2) the polluted dirt piled up in the middle of East Potomac Golf Course does not present any danger. Plaintiffs' proposed discovery will strike squarely at the heart of these two defenses.

First, Plaintiffs' proposed discovery regarding the Washington National Plan will allow the Court to resolve questions essential to the resolution of Plaintiffs' pending motion: whether Plaintiffs' injuries from the overhaul are too speculative to support standing, *see* Defs.' Opp'n to Mot. to Stay 16-22; whether those injuries are traceable to Defendants and redressable, *see id.* 24-27; whether Plaintiffs' claims against the overhaul are premature (whether unripe, unreviewable under the APA, or too early under NEPA and the NHPA), *see id.* 28-33; and whether Defendants have in fact triggered legal obligations under NEPA and NHPA, *id.* 33-39. In short, a demonstration that Defendants have decided to remake East Potomac—as Plaintiffs

have plausibly alleged and Defendants have denied in this litigation despite Secretary Burgum's acknowledgment—would conclusively resolve the motion for preliminary relief on what Defendants call the "proposal claims."

Plaintiffs' proposed discovery into this issue goes no further than necessary for the Court to ascertain whether Defendants have made a final decision to overhaul East Potomac consistent with the Washington National Plan alleged in Plaintiffs' Complaint and to determine the contours of that decision. *See* Compl. ¶ 67. Specifically, Plaintiffs seek information concerning Defendants' relationship with the National Garden of American Heroes Foundation ("the Foundation") to irrevocably fundraise in support of their planned overhaul; information about the decision Plaintiffs allege Defendants have made to overhaul East Potomac, including information directed at identifying when the decision was made and the contours of the decision; and information about the actions and arrangements Defendants have undertaken in preparing to implement that decision.

More specifically, Plaintiffs' first, second, and third proposed Requests for Admission and second and third proposed Requests for Production seek to determine whether Defendants were involved in the binding-commitment fundraising undertaken by the National Garden of Heroes Foundation. If they were, that involvement would tend to show that the Washington National Plan is final agency action, demonstrate the imminence and concreteness of Plaintiffs' injuries, and provide information concerning the contours of the Plan. Plaintiffs' second proposed Interrogatory and first, fourth, sixth, and fourteenth proposed Requests for Production seek information concerning Defendants' selection of and interaction with golf course designers and operators to redesign East Potomac. This too would show the finality of the Washington National Plan, demonstrate concrete and imminent injury, and provide information concerning

9

the contours of the Plan—including whether Defendants' decision triggered NEPA or NHPA obligations.  Plaintiffs' fifth, seventh, eighth, tenth, and thirteenth proposed Requests for Production seek information concerning steps taken in connection with the decision to proceed with the Washington National Plan, and would demonstrate finality, provide information regarding the contours of the Plan, and demonstrate concrete and imminent injury.  All of this information is probative as to whether a final decision was made to adopt and implement the Washington National Plan, and to understand the precise contours of that decision.  Plaintiffs' fourth proposed Request for Admission; first Interrogatory; ninth, eleventh, and twelfth Requests for Production; and Request for Entry on Land all seek information concerning the levels of contamination in the dirt and debris dumped at East Potomac, Defendants' knowledge of those levels, and the adequacy of the testing and mitigation undertaken to address that contamination.  All of this information is probative as to the injuries Plaintiffs have suffered as a result of the dirt being dumped at East Potomac and as to Defendants' compliance with NEPA and NHPA before dumping it.

### b.  Plaintiffs seek discovery in furtherance of a permissible purpose

The purpose inquiry "supports a motion for expedited discovery when the plaintiff seeks to gain evidence to get the court to preserve the status quo." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 164 (D.D.C. 2015).  On the other hand, this inquiry is undercut where movants have not acted with appropriate urgency to seek discovery.  Plaintiffs moved expeditiously for this discovery once the need for it became clear; based on this Court's instruction to Defendants, Plaintiffs reasonably assumed that the administrative record in the case could potentially be sufficient to allow for resolution of Plaintiffs' preliminary relief motion, and filed this motion within two weeks of learning of the administrative record's inadequacy.

10

And the purpose of Plaintiffs' proposed discovery is to develop the concrete, clear record to which they are entitled as to whether, when, and how Defendants committed to the Washington National Plan, which is the central question at issue in Plaintiffs' pending preliminary relief motion. In addition to providing the affirmative evidence necessary to resolve that question, the information Plaintiffs seek will allow the Court to assess the reliability of the declarations on which Defendants' opposition relies. *See* ECF No. 47-1 at 12 ("objective evidence now available undermines the two declarations offered by Defendants in opposition to Plaintiffs' motion.").

### c. Plaintiffs' requests will not be burdensome for Defendants

Courts have found expedited discovery requests to be overly burdensome when requests were not "narrowly tailored," or when the allegations at issue were "extraordinar[ily] vague[]". *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010). Expedited discovery has also been found too burdensome where movants sought "depositions of former high-level executives (with, presumably, very busy schedules) living in different parts of the country." *Id*.

Plaintiffs seek no depositions of government officials at this time and have narrowly tailored their document requests to be no more burdensome than a typical FOIA request.[4] Plaintiffs also propose only two interrogatories, well short of the limit in Rule 33. And Plaintiffs' request for entry on land requires only that Defendants allow experts with experience in drawing soil core samples to enter a stockpile of dirt to which Defendants have applied or will

---

[4] Plaintiffs reserve the right to seek depositions of relevant employees, including the existing declarants in this case, if warranted by Defendants' responses to the proposed discovery requests in this motion. However, any such depositions would be the subject of a separate motion and are not relevant to evaluating the burdens of this motion.

apply "permanent" seeding to prevent erosion, and draw such samples; Plaintiffs seek no assistance from Defendants for this process other than permission for entry.  ECF No. 26-1 ¶ 32.

### III.   Third-party subpoenas are appropriate in this case to reach information outside Defendants' control

The unusual procedural posture of this case requires discovery not just from the Defendant agencies, but also third-party discovery from private parties who appear to be involved in implementing the government's decisions.  Specifically, the planned "comprehensive redevelopment" of East Potomac has a funder (The Foundation) and a designer (Fazio), even though Defendants continue to maintain that no decision has been made to undertake renovations.

Because Defendants continue to deny having made a decision, further clarification of the plan for East Potomac Golf Course must come from the private parties who are forging ahead on implementing that decision.  Plaintiffs therefore respectfully request that the Court authorize Plaintiffs to issue and serve subpoenas (attached hereto as Exhibit 2) under Fed. R. Civ. P. 45 to the following third parties: (1) the National Garden of American Heroes Foundation; (2) the O'Rourke Group; (3) Fazio Design; (4) the National Links Trust; (5) Clark Construction; and (6) Jacobs Engineering.

As set forth in Sections I and II *supra*, the administrative record Defendants produced does not shed any light on the Washington National Plan, is contradicted by evidence now before this Court, and omits entirely the private commitments and third-party relationships which are central to the decision to transform East Potomac Golf Links.  On this record, beyond the appropriateness of extra-record discovery as a general matter, *see* Section I, *supra*, third-party discovery is particularly appropriate because Plaintiffs "provide good reason to believe that [such] discovery will uncover evidence relevant to the Court's decision to look beyond the

12

record." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). Specifically, the evidence of third-party involvement in the decision to adopt the Washington National Plan makes clear that targeted, additional records in the subpoena recipients' possession will be "indicative of bad faith or an incomplete record." *Id.*; *see also Dep't of Com.*, 588 U.S. at 782 (discovery authorized where documents show that stated reason for policy "played an insignificant role in the decisionmaking process"). Defendants have denied that any final decision has been made to implement the Washington National Plan. *See e.g.*, ECF No. 48 at 1. The administrative record contains no documentation about that plan. But the Foundation and the O'Rourke Group have circulated a Pledge Agreement soliciting binding financial commitments for that Plan and containing detailed renderings of a new course where East Potomac currently sits. ECF No. 47-2. Furthermore, Fazio Design has been identified as the Plan's designer, *id.* at 8; ECF No. 49-1 at 2, and has already provided a completed rendering to Defendants for public announcement. ECF No. 50-1. *See also* ECF No. 26 at 25 (arguing that for Plaintiffs' injury to be imminent, "the NPS or a new lessee would need to contract for architectural and design services"). Plaintiffs should not be limited to discovery from parties that claim the Plan does not exist when they can go straight to third parties who proclaim that they are helping to implement that Plan.

Like the proposed discovery requests to Defendants, the burden imposed on third-party recipients by the proposed subpoenas is no greater than is necessary to conduct ordinary oversight of the project that recipients plan to undertake on government property. Plaintiffs have carefully crafted the proposed third-party subpoenas to avoid unduly burdening the recipients. *See* Ex. 2. Each contains only a handful of requests for documents and communications concerning the Washington National Plan or other proposed renovations at East Potomac. *Id.*

13

Any remaining burdens the subpoenas impose are the natural result of the recipients' decision to undertake a substantial project on national parkland—and to do so, in Defendants' telling, without meaningfully involving the agencies that oversee that property. In such circumstances, the Court should subject the subpoena recipients to the same scrutiny that would apply if government agencies undertook the project themselves. Because extra-record discovery from Defendants is appropriate here, *see* Section I, *supra*, so too is extra-record discovery from appropriate third parties. Each of the six subpoena recipients possesses documents and communications that are likely to reveal the nature, scope, and timing of commitments that this Court can review under the APA, but that appear nowhere in the administrative record. Barring Plaintiffs from obtaining this information would effectively insulate those commitments from scrutiny. The government cannot evade ordinary scrutiny of a significant renovation to a historical site simply by denying government action and outsourcing the project to private parties.

Plaintiffs address each subpoena in more detail below.

### a.   The National Garden of American Heroes Foundation

Documentation of The Foundation's relevant activities and collaboration with Defendants is perhaps the most striking omission from the administrative record. By its own account—in the Pledge Agreement it has circulated to prospective donors—the Foundation is actively raising private funds for the comprehensive redevelopment of East Potomac Park and has described that redevelopment as one of its two founding projects. ECF No. 47-2 at 8. It has obtained a Tax ID number, opened a bank account, and is soliciting *binding* financial commitments from donors to fund the very project at issue in this litigation. *Id.* Yet no reference to the Foundation appears anywhere in the administrative record Defendants have produced.

That omission is legally significant for two reasons.  First, it affirmatively demonstrates that the administrative record as compiled does not reflect the full universe of actors and commitments involved in the Defendant agencies' decisions.  Second, the Foundation's role in the Washington National Plan is most naturally understood as that of a de facto agent or functional equivalent of the agency: it is implementing a federal project by raising private funds to support what is ultimately a decision about the use of National Park land.  But NPS "cannot delegate its non-delegable statutory management responsibilities to a private entity over which it retains no meaningful oversight."  *Nat'l Park & Conservation Ass'n v. Stanton*, 54 F. Supp. 2d 7, 18-20 (D.D.C. 1999).  If Defendants outsourced the implementation of the Plan, including its design and funding, to the Foundation, they have effectively integrated a private party into the decision-making process while excluding that party's involvement and input from the administrative record.  Where a non-party has provided input that the agency relied upon, that input is directly relevant to APA review.

The Foundation subpoena seeks documents relating to the Foundation's agreements relating to the renovation of East Potomac Park and all versions of the Pledge Agreement and accompanying fundraising materials.  Those documents are more likely than not to reveal the full scope of commitments the Foundation made to donors and to federal partners and the source and scope of the Foundation's authority to undertake its fundraising efforts and will bear directly on Defendants' representations to this Court that no final decision has been made to renovate East Potomac.

### b.  O'Rourke Group

The O'Rourke Group's centrality to the Washington National Plan is evidenced by the Pledge Agreement itself, which lists Ms. O'Rourke as the primary point of contact for donor

15

solicitation and directs prospective donors to wire binding financial commitments in support of a project that Defendants deny is underway. ECF No. 47-2 at 9. Ms. O'Rourke also sits on the board of the National Park Foundation, the primary fundraising partner of the National Park Service itself, where Secretary Burgum also serves as an ex officio member. Nat'l Park Found., *Board of Directors & National Council*, https://www.nationalparks.org/about-foundation/national-council-and-board-of-directors (last visited May 14, 2026). Ms. O'Rourke's dual role as the operational lead of a private fundraising effort for a federal project and as a board member of a separate fundraising foundation on which the relevant cabinet secretary sits raises obvious questions about whether she is exercising substantial influence over governmental decision-making. Evidence of such "influence" should have been included in the administrative record, and because it was not, may be sought through discovery. *Amfac Resorts*, 143 F. Supp. 2d at 12 ("all materials" that may have influenced an agency decision should be included in an administrative record, "not merely those on which the agency relied in its final decision."). Plaintiffs' evidence provides strong reasons to believe that the O'Rourke Group possesses documents concerning coordination between the private fundraising effort and the federal decision-making process that the administrative record currently lacks. The O'Rourke Group subpoena is the only means of obtaining that evidence.

### c. Fazio Design

The administrative record contains no documentation of Fazio or Fazio Design's involvement in the planning or design of the East Potomac renovation. Defendants have stated that whether Fazio "will be hired to design" a plan is "speculat[ive]." ECF No. 26 at 21. Secretary Burgum's May 8, 2026, announcement, however, confirmed that Fazio Design is a named partner in the renovation of East Potomac, ECF No. 49-1 at 2, and his May 14

16

announcement shares a course design prepared by Fazio Design for the site's renovation.  ECF

No. 50-1.  Because the existing record makes it "impossible to discern whether the alleged

[agency action] in fact exists," discovery is necessary "to ascertain the contours of the precise

policy at issue."  *Venetian Casino Resort*, 409 F.3d at 360.  And no entity is better positioned to

provide evidence of Fazio Design's role in the project than Fazio Design itself.  The proposed

subpoena seeks Fazio Design's communications about East Potomac and any design documents

it has prepared.  Such documents will show whether a plan exists, what commitments have been

made to and by Fazio Design concerning its involvement in the plan, and what environmental or

historic preservation review NEPA and Section 106 require for that plan.

### d.  National Links Trust

The National Links Trust ("NLT") operated East Potomac Golf Links under a 50-year

lease until that lease was abruptly terminated in December 2025.  ECF No. 1 ¶ 63; ECF No. 8-1

at 9.  As the on-site operator when the debris arrived, NLT has contemporaneous

communications about what was being deposited, why, and when.  The Cat Ex justified the

debris dumping on the premise that the material would be used for routine landscaping consistent

with the course's historic design.  The subpoena seeks communications with NLT that will bear

directly on the purpose of that debris dumping and whether the debris is in fact "clean fill," as

Defendants have maintained.  Further, because NLT is a named partner in the May 8

announcement of the overhaul of East Potomac, Plaintiffs seek documents regarding NLT's role

in formulating and reaching the decision to undertake the overhaul.

### e.  Clark Construction and Jacobs Engineering

The entire dispute about Defendants' Cat Ex comes down to one question: is the dirt

clean?  Defendants repeatedly have said that it is.  *See, e.g.*, ECF No. 26 at 35 ("Defendants

17

reasonably decided to temporarily store clean fill from the East Wing Modernization Project on the East Potomac Golf Course for later reuse and reasonably explained that decision."). Plaintiffs say that it isn't. *See, e.g.*, ECF No. 47-1 at 2 n.5 ("Plaintiffs' review of [test] results is incomplete, but their preliminary review suggests dangerous levels of lead, mercury, arsenic, and carcinogens.").

The test results prepared by Jacobs Engineering and released by Defendants on April 30, 2026, do not paint a pretty picture, including several findings of contaminant levels that exceed applicable risk thresholds. *Id.* Admittedly, though, that picture is incomplete. For one thing, the published test results contain no test results prior to October 28, even though the dumping began on October 20. For another, the published results and technical report do not say whether a barrier was placed underneath the pile to mitigate migration of pollutants into East Potomac's soil. Defendants maintain that test results show "that NPS has confirmed that the fill material is indeed being tested and that all results to date indicate that the levels of contaminants in the incoming fill material is [*sic*] very similar to the background levels in the existing soil at East Potomac Park." ECF No. 26 at 23. But their results don't show how those background levels were calculated. Plaintiffs' expert analysis suggests the background levels were calculated on the basis of samples collected only *after* dumping began. If that is correct, it raises several additional questions, including: what steps did Jacobs take to ensure that background samples weren't contaminated by the dumping? How did Jacobs determine where to draw their background samples? And what statistical methods did Jacobs use to determine the appropriate background threshold levels? Only discovery would answer those questions.

Of course, Jacobs's discovery of pollutants leaves another big question unanswered: how did polluted dirt get to East Potomac in the first place? Defendants told the Court early in this

18

case that "[b]efore soil leaves the White House site, Clark Construction conducts onsite testing to identify evidence of contamination." ECF No. 26 at 8. But the instruments mentioned in NPS National Capital Region Regional Director Jennifer Nersesian's first declaration are not capable of testing for many of the contaminants identified in the test results (such as metals, like lead and mercury). ECF No. 26-1 at ¶ 38. Did Clark Construction also use more appropriate instruments? If not, did Defendants know that Clark's testing would miss many dangerous (and predictably present) pollutants? Again, the administrative record does not say.

These are all critical questions that go to the heart of Plaintiffs' pending motion for preliminary relief and Defendants' competing factual narrative. On the weight of the administrative record alone, though, those questions are unanswered. Discovery, including from the third parties discussed above, is necessary to provide the answers.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' motion for expedited discovery and grant Plaintiffs leave to serve the attached proposed discovery requests upon Defendants and the attached proposed third-party subpoenas.

19

Dated: May 14, 2026

    Abbe David Lowell (Bar No. 358651)
Caleb Hayes-Deats (Bar No. 1643213)
Jack Bolen*
Angela Reilly*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
adlowell@lowellandassociates.com
chayes-deats@lowellandassociates.com
jbolen@lowellandassociates.com
areilly@lowellandassociates.com

Norman L. Eisen (Bar No. 435051)
Lindsay Zimliki (Bar No. 475890)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
lindsay@democracydefenders.org

*Application for admission pending, or
admitted *pro hac vice*

Respectfully Submitted,

*/s/Mark B. Samburg*
Will Bardwell (Bar No. 90006120)
Mark B. Samburg (Bar No. 1018533)
Catherine M.A. Carroll (Bar No. 497890)
Robin F. Thurston (Bar No. 7268942)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
wbardwell@democracyforward.org
msamburg@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*