**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 1:26-cv-477-ACR |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

    I.     Defendants' Threshold Standing and Finality Arguments Must First Be Resolved Before Plaintiffs' Motion for Expedited Discovery Can Be Considered ................................................................................................................. 9

    II.    Plaintiffs' Argument Rests on Inapplicable Case Law ........................................... 12

    III.   Discovery is Not Required for Effective Judicial Review of the Issues Raised ..................................................................................................................... 17

         A.     Standing ...................................................................................................... 17

         B.     Final Agency Action .................................................................................. 20

    IV.   Plaintiffs Fail to Justify Expedited Discovery ...................................................... 22

    V.    Even if the Court Concluded Additional Fact-Finding Were Warranted, the Court Should Rely on Less Intrusive Means than Plaintiffs' Proposed Discovery ............................................................................................................... 25

    VI.   The Court Can Resolve this Case Without Further Discovery ............................. 26

CONCLUSION .................................................................................................................. 26

## TABLE OF AUTHORITIES

**Other Authorities**

*Am. Fed'n of Labor & Congress of Indus. Orgs. v. Dep't of Labor*,
349 F.R.D. 243 (D.D.C. 2025) ............................................................................ 12, 14, 15, 24

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015) ...................................................................................... 23

*Barker v. Conroy*,
921 F.3d 1118 (D.C. Cir. 2019) ............................................................................................ 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................... 18

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................................................................ 6, 22

*Cape Hatteras Access Pres. All. v. U.S. Dep't of the Interior*,
667 F. Supp. 2d 111 (D.D.C. 2009) ....................................................................................... 8

*Cheney v. United States Dist. Court for D.C.*,
542 U.S. 367 (2004) ............................................................................................................... 25

*Comm. Drapery Contractors v. United States*,
133 F.3d 1 (D.C. Cir. 1998) ............................................................................................... 8, 17

*Committee of 100 on the Fed. City v. Fox*,
140 F. Supp. 3d 54 (D.D.C. 2015) ........................................................................................ 17

*Cross-Sound Ferry Servs., Inc. v. I.C.C.*,
934 F.2d 327 (D.C. Cir. 1991) .............................................................................................. 10

*Ctr. for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017) ........................................................................... 10, 16, 19

*Del. Valley Reg. Ctr., LLC v. U.S. Dep't of Homeland Sec.*,
106 F.4th 1195 (D.C. Cir. 2024) ..................................................................................... 10, 20

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ................................................................................................................. 7

*Ex parte McCardle*,
7 Wall. 506 (1868) .................................................................................................................. 10

*Fla. Power & Light v. Lorion*,
470 U.S. 729 (1985) .................................................................................................................. 8

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) .............................................................................................. 19

*Friends of the Earth v. U.S. Dep't of the Interior*,
236 F.R.D. 39 (D.D.C. 2006) ........................................................................................ 8, 11, 17

ii

*Fund for Animals, Inc. v. U.S. Bur. of Land Mgmt.*,
 460 F.3d 13 (D.C. Cir. 2006) ........................................................................ 10

*Gerber Prods. Co. v. Perdue*,
 254 F. Supp. 3d 74 (D.D.C. 2017) ................................................................. 17

*Guttenberg v. Emery*,
 26 F. Supp. 3d 88 (D.D.C. 2014) ............................................................. 22, 23

*Haase v. Sessions*,
 835 F.2d 902 (D.C. Cir. 1987) ...........................................................11, 17, 19

*Hispanic Affairs Project v. Acosta*,
 901 F.3d 378 (D.C. Cir. 2018) ........................................................... 12, 13, 14

*Hormel Foods Corp. v. U.S. Dep't of Agric.*,
 808 F. Supp. 2d 234 (D.D.C. 2011) .............................................................. 10

*IMS, P.C. v. Alvarez*,
 129 F.3d 618 (D.C. Cir. 1997) ........................................................................ 7

*In re Cheney*,
 544 F.3d 311 (D.C. Cir. 2008) ..................................................................... 25

*In re Fannie Mae Deriv. Litig.*,
 227 F.R.D. 142 (D.D.C. 2005) ..................................................................... 22

*In re Musk*,
 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ................................................. 11

*In re Papandreou*,
 139 F.3d 247 (D.C. Cir. 1998) ...................................................................... 11

*In re United States*,
 583 U.S. 29 (2017) ................................................................................2, 9, 11

*Kleppe v. Sierra Club*,
 427 U.S. 390 (1976) ..................................................................................... 20

*Loma Linda Univ. Kidney Ctr. v. Burwell*,
 185 F. Supp. 3d 196 (D.D.C. 2016) ................................................................ 8

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ..................................................................................... 18

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990) ....................................................................................... 6

*Maritel, Inc. v. Collins*,
 422 F. Supp. 2d 188 (D.D.C. 2006) ................................................................ 7

*Nevada v. Dep't of Energy*,
 457 F.3d 78 (D.C. Cir. 2006) ....................................................................... 21

iii

*Notaro v. Koch,*
    95 F.R.D. 403 (S.D.N.Y. 1982) .................................................................................... 22

*Nuclear Energy Institute v. EPA,*
    373 F.3d 1251 (D.C. Cir. 2004) ............................................................................. 13, 15

*Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.,*
    573 F. Supp. 3d 294 (D.D.C. 2021) .............................................................................. 7

*Pac. Shores Subdiv. v. U.S. Army Corps of Engr's,*
    448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................................. 7

*Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA,*
    740 F.2d 21 (D.C. Cir. 1984) ...................................................................................... 10

*Pub. Citizen v. Off. of U.S. Trade,*
    *Reps.*, 970 F.2d 916 (D.C. Cir. 1992)......................................................................... 20

*Rempfer v. Sharfstein,*
    583 F.3d 860 (D.C. Cir. 2009) ...................................................................................... 7

*Sara Lee Corp. v. Am. Bakers Ass'n,*
    252 F.R.D. 31 (D.D.C. 2008) ........................................................................................ 7

*Soriano v. United States,*
    352 U.S. 270 (1957)....................................................................................................... 8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 ................................................................................................................ 18

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)..................................................................................................... 9, 10

*Transport Robert (1973) LTEE v. U.S.I.N.S,*
    940 F. Supp. 338 (D.D.C. 1996) ................................................................................. 10

*Trudeau v. Fed. Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) .................................................................................... 10

*U.S. Doge Serv. v. Citizens for Resp. & Ethics in Wash.,*
    145 S. Ct. 1981 (June 6, 2025) .................................................................................... 25

*Venetian Casino Resort, LLC v. Equal Employment Opportunity Comm'n,*
    409 F.3d 359 (D.C. Cir. 2005) ............................................................................... 12, 13

**Statutes**

5 U.S.C. § 702................................................................................................................... 8

5 U.S.C. § 704................................................................................................................... 6

5 U.S.C. § 706................................................................................................................... 7

54 U.S.C. § 101111 ........................................................................................................... 6

**INTRODUCTION**

At each phase of this Administrative Procedure Act ("APA") case, Defendants have worked cooperatively and transparently, going well beyond their legal obligations to address Plaintiffs' concerns. Defendants have agreed to provide post-decision data and testing results, which Defendants are not required to produce as part of their administrative record. Plaintiffs identify no information that they contend Defendants possess but omitted from the administrative record. Defendants have notified Plaintiffs of anticipated maintenance activities and heavy equipment use, despite the lack of nexus between these activities and Plaintiffs' claims. Rather than tempering Plaintiffs' concerns, as one might expect, Defendants' efforts have only emboldened Plaintiffs' inquiries.

Defendants respectfully ask the Court to draw the line at Plaintiffs' sweeping discovery requests, which would be inappropriately broad in private civil litigation—much less in this APA case, which must be decided on the administrative record. Plaintiffs are not seriously seeking discovery to determine whether there has been final agency action on a decision to redesign East Potomac Golf Course. Indeed, Defendants have explained multiple times there has not been. *See* Bowron Decls. ¶ 14, Dkt. No. 26-4; ¶ 13, Dkt. No. 38-2. And before there is, the agency will complete all applicable compliance requirements. *See id.*, ¶¶ 15-24, Dkt. No. 26-4; ¶¶ 9-13, Dkt. No. 38-2. Defendants could not be more express about this. Plaintiffs, without offering facts of their own to contradict Defendants' sworn statements, are instead asking to rummage through all manner of agency documents and communications, including White House materials, and to take a seat at the agency decisionmaking table. They are asking this Court to insert them directly into Defendants' deliberative process. Such overreach is prohibited. The Supreme Court itself has faulted a district court for ordering government defendants to complete an administrative record

1

while the government's motion to dismiss was pending. *See In re United States*, 583 U.S. 29, 31–32 (2017) (per curiam) ("Under the specific facts of this case, the District Court should have granted [the government's] motion . . . to stay implementation of the challenged [order to complete the administrative record] and first resolved the Government's threshold arguments . . . .").

Plaintiffs ask this Court to cast aside longstanding Article III and APA principles and authorize discovery when the Court lacks jurisdiction and Plaintiffs have failed to state a valid APA claim. In doing so, Plaintiffs rely on inapplicable case law, fail to satisfy any exception to the default rule prohibiting discovery in APA cases, demand unreasonable and incredibly overbroad discovery requests in violation of the separate test for obtaining expedited discovery, and ignore that other less intrusive means already before the Court can help resolve any outstanding questions. For all of these reasons and for the reasons below, Plaintiffs' Motion must be denied.

**BACKGROUND**

The factual background of this case has been summarized in Defendants' prior filings. *See* Resp. in Opp'n to Pls.' Mot. for Stay Or, in the Alternative, Prelim. Inj., Dkt. No. 26; Mot. to Dismiss, Dkt. No. 34. Accordingly, Defendants incorporate by reference the information provided therein. For purposes of the present opposition to Plaintiffs' Motion, Defendants highlight only the key facts and subsequent factual and procedural developments since the filing of Defendants' Motion to Dismiss.

Plaintiffs brought this case under the APA to challenge two alleged agency decisions: a purported August 2025 idea by Department officials to renovate or redesign East Potomac Golf Course ("Golf Course"); and an October 2025 decision to stockpile clean fill material from the East Wing Modernization Project at the Golf Course.

2

Plaintiffs filed a preliminary injunction motion on February 23, 2026.  Dkt. No. 8.  On March 11, the Court held an initial status conference on Plaintiffs' motion.  *See* Tr., Dkt. No. 31.  Afterward and at the Court's direction, the parties submitted a joint status report proposing a schedule to resolve this matter.  *See* Min. Orders March 11 and 19, 2026; Joint Status Report, Dkt. No. 33.

The Court held a second status conference on April 9, 2026.  *See* Tr., Dkt. No. 35.  There, the Court directed the filing of Defendants' Motion to Dismiss, the administrative record, and a proposed briefing schedule.  *See* Minute Order, April 9, 2026.  The next day, Defendants filed their Motion to Dismiss, Dkt. No. 34, and shortly thereafter, the Parties submitted a proposed briefing schedule.  Dkt. No. 36.

In accordance with the Court's order from the second status conference, on April 30, 2026, Defendants filed with the Court the administrative record, and a Notice alerting the Court that Defendants had voluntarily published testing results associated with the stockpiling at East Potomac Park.  Dkt. No. 38-46.  Defendants' notice was accompanied by the declaration of NPS Regional Director Jennifer Nersesian. Dkt. No. 38-1.  As Ms. Nersesian explained, further analysis of the stockpile testing results is underway and NPS intends to post a final report summarizing all the data collected and evaluating whether any further investigation is necessary.  *Id.* ¶ 12.  But based on the data collected and analysis to date, all indications are that the soil in the stockpile is similar to existing soil at the site and suitable for recreational use.  *Id.* ¶ 14.

The Notice included a second declaration from Ms. Nersesian certifying the contents of the administrative record for the decision to stockpile clean fill material from the East Wing Modernization Project at East Potomac Park.  Dkt. No. 38-3.

Defendants' Notice was also accompanied by the declaration of NPS Comptroller Jessica Bowron.  Dkt. No. 38-2.  Ms. Bowron averred that Department officials had begun considering ideas to renovate East Potomac Park, but any plan remained in the conceptual stage, and several interim steps in the decisionmaking process necessary to reach a formal decision were yet to occur.  *Id.* ¶¶ 4-6, 13.  Ms. Bowron then outlined what those interim steps would entail as agency officials continue to contemplate whether and how to renovate East Potomac Golf Course—including the requisite legal compliance processes that Plaintiffs complained were lacking when Defendants first began considering this idea.  *Id.* ¶¶ 9-12.  Ms. Bowron reiterated under oath that "no formal decision has been made regarding the nature and scope of any renovations."  *Id.* ¶ 13.  Accordingly, Ms. Bowron could not certify an administrative record for a decision that does not yet exist.  She did, however, note that NPS may conduct deferred maintenance and repairs at East Potomac Golf Course to address deteriorating conditions and facilities. *Id.* ¶ 14.

Despite Ms. Bowron's promise of early notification of possible deferred maintenance activities, on May 3, 2026, Plaintiffs filed an emergency motion for a status conference without first notifying counsel for Defendants, based largely on unconfirmed news reports.  On May 4, the Court held a third status conference.  *See* Minute Entry, May 4, 2026.  There and in a supporting declaration, the Superintendent for the National Mall and Memorial Parks, Kevin Griess explained the routine and deferred maintenance activities NPS anticipated undertaking—but had not yet decided to undertake—and that no decision to close all or part of the Golf Course had been made. *See* Griess Decl., Dkt. No. 48-1.  During that status conference, the Court directed Defendants to notify Plaintiffs if, in anticipation of its maintenance activities, NPS identified more than ten trees for removal, NPS expected heavy equipment would be brought on site, or NPS anticipated any closure notice would be required.  Tr. 22:16-23:13, 35:24-36:12 (May 4, 2026).

4

In accordance with the Court's direction at the May 4 status conference, on May 7, 2026, counsel for Defendants notified Plaintiffs that on or about May 11, NPS intended to begin removing the access road to the stockpile and restoring it to its pre-construction condition, and that heavy equipment may be required for the work. And again, on May 21, counsel for Defendants notified Plaintiffs that NPS had identified 22 dead, dying, structurally compromised, or otherwise hazardous trees for immediate removal or pruning, and that NPS anticipated heavy equipment and short-term, temporary changes to the flow of play may be required.

On May 14, 2026, Plaintiffs filed the present Motion for Expedited Discovery. Plaintiffs' Motion purportedly seeks to fill gaps in Plaintiffs' own standing allegations and unearth a final agency action where one has not been plausibly alleged. Mot. for Expedited Disc. 5-6, Dkt. No. 51. Plaintiffs demand that the Court order Defendants to produce documents and respond to an overbroad and irrelevant set of discovery requests that bear no relation to the supposed dual purposes Plaintiffs proffer. As just a few examples, Plaintiffs' Motion demands:

- Information pertaining to third parties who are neither named as defendants nor even identified in any allegations in Plaintiffs' Complaint, *e.g.*, Ex. 1, 3 (Requests for Admission Nos. 1-3), Dkt. 51-2;

- The search of "all e-mails, text messages, correspondence, agreements, or documents of any type" of any Department of Interior employee, agent, or representative, past and present, that include any word or phrase out of a list of twenty phrases, *id.* at 2 (Instructions No. 3), 4 (Requests for Production No. 1);

- Documents that on their face would have been generated in the course of the deliberative agency process and subject to executive privilege, *id.* at 4 (Requests for Production No. 3)

(seeking documents created by Department of Interior employees and provided to Secretary Burgum or Comptroller Bowron);

- Documents that on their face would reveal presidential communications and meeting materials, *id.* at 5 (Requests for Production No. 14) (seeking documents relating to any conversations between *the President* and a golf course designer, Tom Fazio); *see also id.* (Requests for Production No. 10) (seeking documents relating to any meetings concerning East Potomac Park, including meetings with the Executive Office of the President).

Not stopping there, Plaintiffs also seek to issue third-party subpoenas demanding equally overbroad and irrelevant discovery from third parties, including Tom Fazio, the National Garden of American Heroes Foundation, the O'Rourke Group, and construction contractors.[1]

## ARGUMENT

The APA allows a reviewing court to review only "[a]gency action made reviewable by statute and *final* agency action." 5 U.S.C. § 704 (emphasis added). The APA provides no authority for courts to review *non*-final agency actions, that is, interim decisions that may (or may not) ultimately lead to final agency action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("[T]he 'agency action' in question must be 'final agency action.'"); *see Bennett v. Spear*, 520 U.S.

---

[1] Plaintiffs presumably seek information regarding the National Garden of American Heroes Foundation and the O'Rourke Group based on an extra-record document they filed with the Court. *See* Emergency Mot. for Status Conference Ex. A, Dkt. No. 47-2 ("Pledge Agreement"). Neither entity appears anywhere in Plaintiffs' allegation and neither the NPS nor the Department of the Interior has entered into any agreements with the National Garden of American Heroes Foundation or the O'Rourke Group concerning the alleged redesign of East Potomac Golf Course. Meredith O'Rourke is not employed by the federal government, including Defendants. She is a member of the Board of Directors for the National Park Foundation. *See* https://www.nationalparks.org/about-foundation/national-council-and-board-of-directors/meredith-orourke. The National Park Foundation is a nonprofit organization established by Congress "[t]o encourage private gifts of real and personal property . . . for the benefit of" the NPS. 54 U.S.C. § 101111.

154, 178 (1997) (explaining that to be final, "the action must mark the 'consummation' of the agency's decisionmaking process, . . . [a]nd . . . be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'") (citations omitted).

When reviewing final agency action, Congress directed the courts to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "whole record" includes "all documents and materials that the agency directly or indirectly considered" when it made the decision under review. *Pac. Shores Subdiv. v. U.S. Army Corps of Engr's*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (citation modified). "To ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997)). That is because the court, rather than weighing evidence for itself, is only evaluating the reasonableness of the agency's decision in the context of the information that was before the agency. *See Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019); *see also Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (recognizing that the district court's role is limited in APA cases because "the district judge sits as an appellate tribunal"). When an agency designates its administrative record, that designation "is entitled to a strong presumption of regularity." *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008).

Typically, when a final agency action has been challenged, there are two methods available to consider materials not initially found in the agency's certified record. First, a party may move to "complete" the record where an agency directly or indirectly considered materials in making its decision, but the agency failed to include those materials in the administrative record. *See Open Soc'y Inst. v. U.S. Citizenship & Immigr. Servs.*, 573 F. Supp. 3d 294, 307 (D.D.C. 2021). Second, a party may move to "supplement" the administrative record with extra-record evidence—

7

information that the agency did not consider.  But in either case, a successful motion to expand judicial review beyond an agency's certified administrative record "is a rare bird."  *Cape Hatteras Access Pres. All. v. U.S. Dep't of the Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009).

Because judicial review under the APA "is generally limited to the administrative record," discovery is "normally unavailable in an APA case."  *Friends of the Earth v. U.S. Dep't of the Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (citing *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985)) (denying discovery on issue of finality).  The D.C. Circuit has recognized just two narrow exceptions to this default rule.  Discovery may be available "'when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'"  *Id.* (quoting *Comm. Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).  But discovery "is the exception, not the rule."  *Loma Linda Univ. Kidney Ctr. v. Burwell*, 185 F. Supp. 3d 196, 199 (D.D.C. 2016) (internal quotation marks and citation omitted).

As their basis for bringing this case, Plaintiffs invoked only the APA and its limited waiver of sovereign immunity.  *See* 5 U.S.C. § 702.  They are therefore bound by the APA's constraints, "which . . . must be strictly observed."  *Soriano v. United States*, 352 U.S. 270, 276 (1957), *overruled on other grounds*, *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990).

Consistent with those constraints, Plaintiffs are not entitled to any of the discovery they seek for several reasons.  First, the Court must first consider the threshold issues barring Plaintiffs' claims raised in Defendants' Motion to Dismiss.  Second, Plaintiffs' argument is premised on case law and circumstances that are not present here.  Third, even if the Court were to entertain Plaintiffs' Motion, discovery is not necessary for effective judicial review.  Fourth, even if Plaintiffs could overcome all of these threshold hurdles to warrant the availability of discovery in an APA case (and they cannot), Plaintiffs' excessive and overly burdensome discovery requests

fall far short of satisfying the "reasonableness" test adopted by district courts in this Circuit. Fifth, even if the Court were to conclude that it needed to engage in fact-finding of its own, separation of powers concerns dictate that the Court should rely on the least intrusive means necessary to answer any lingering questions, which here would be reliance on agency declarations already in the record. Finally, even if the Court were to agree with Plaintiffs at every step, discovery would still not be warranted as resolution remains available on summary judgment.

## I.    Defendants' Threshold Standing and Finality Arguments Must First Be Resolved Before Plaintiffs' Motion for Expedited Discovery Can Be Considered

Defendants have argued that this Court lacks jurisdiction to consider Plaintiffs' claims because Plaintiffs lack Article III standing. *See, e.g.*, Defs.' Resp. in Opp'n to Pls.' Mot. for Stay or, in the Alternative, Prelim. Inj. 16-27, Dkt. No. 26; Joint Status Report 7-8, Dkt. No. 33. Defendants have also argued that Plaintiffs' Proposal Claims fail to challenge a final agency action. Defendants moved to dismiss Plaintiffs' claims on these and other bases. Defs.' Mem. in Supp. of Mot. to Dismiss 8-26, Dkt. 34-1. The Court must first assure itself of jurisdiction and resolve threshold questions of the availability of APA review before considering whether any discovery is warranted (and it is not). And if the Court agrees with any one of these arguments, it would obviate the need for Plaintiffs' discovery requests. *See In re United States*, 583 U.S. at 32 ("Either of those [threshold] arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record.").

"Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025). If a plaintiff fails to establish Article III standing, the federal court lacks jurisdiction and "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). In other words,

9

a court must first determine whether it has the power to consider any discovery issues before it can resolve them.  *See Cross-Sound Ferry Servs., Inc. v. I.C.C.*, 934 F.2d 327, 340 (D.C. Cir. 1991) (Thomas, J., concurring) ("A federal court may not decide cases when it cannot decide cases, and must determine whether it can, before it may.").

Similarly, in APA cases, although not a jurisdictional hurdle, whether a plaintiff has sufficiently alleged a final agency action is a "threshold question for suit under the APA . . . ."  *Del. Valley Reg. Ctr., LLC v. U.S. Dep't of Homeland Sec.*, 106 F.4th 1195, 1203 (D.C. Cir. 2024) (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006)).  The finality inquiry serves as a "gateway to whether [plaintiffs] can state a claim under the APA." *Id.*  It ensures that judicial review—and thus, with it, any discovery potentially associated with that judicial review—is available.  *See Hormel Foods Corp. v. U.S. Dep't of Agric.*, 808 F. Supp. 2d 234, 243 (D.D.C. 2011) (citing *Fund for Animals, Inc. v. U.S. Bur. of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006)).  This gatekeeping function prevents agencies from engaging in needless and burdensome discovery when plaintiffs fail to state an APA claim, and "'protect[s] the integrity of the administrative process' by 'prevent[ing] premature judicial intervention."  *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 29 (D.D.C. 2017) (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 20 (D.C. Cir. 1984)); *see also Transport Robert (1973) LTEE v. U.S.I.N.S*, 940 F. Supp. 338, 340 (D.D.C. 1996) ("The requirement of 'final agency action' recognizes that courts must not interfere with the executive function, whether exercised by executive officials or administrative agencies, by entertaining a lawsuit that challenges an action that is not final.").  The Supreme Court has said that a district court should have resolved the government's threshold arguments before requiring the agency to complete an administrative record for a final decision.

10

*In re United States*, 583 U.S. at 32. The need to first resolve Defendants' threshold arguments is magnified here because Plaintiffs seek discovery where there is no final agency action.

Indeed, when timely raised through a motion to dismiss, jurisdictional challenges to standing *must* be resolved and threshold finality challenges *should* be resolved before any discovery can be considered. This is true regardless of whether the sought-after discovery purportedly touches on matters of standing or finality. *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987) ("A motion to dismiss under 12(b)(1) for lack of standing . . . involves an examination of the face of the complaint, which does not depend upon discovery."); *Friends of the Earth v. U.S. Dep't of Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (recognizing that "no discovery is necessary to determine whether [the agency's action] rises to the level of final agency action"). In fact, when a motion to dismiss is pending, a district court commits reversible error if it authorizes a plaintiff's discovery requests "without considering possible alternate non-merits routes to dismissal." *In re Papandreou*, 139 F.3d 247, 256 (D.C. Cir. 1998); *see also In re Musk*, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) (granting stay where "petitioners have shown a likelihood of success on their argument that the district court was required to decide their motion to dismiss before allowing discovery").

Here, Defendants have raised threshold jurisdictional challenges to Plaintiffs' claims on the face of Plaintiffs' Complaint. Until the Court resolves those challenges, "defendant[s] [are] protected from compulsory discovery." *Haase*, 835 F.2d at 907. Accordingly, the Court must resolve Defendants' motion to dismiss Plaintiffs' claims on standing grounds and, if necessary, resolve Defendants' motion to dismiss on finality grounds before any motion for discovery is considered.

11

## II.    Plaintiffs' Argument Rests on Inapplicable Case Law

Even assuming the Court concludes one or more Plaintiffs have standing to bring one or more of their claims, Plaintiffs are not entitled to any discovery.  Plaintiffs' argument relies on case law justifying discovery in circumstances absent here and stretches cases concerning unwritten agency policies beyond the breaking point.  There is no indication those courts intended discovery to be available in run-of-the-mill APA cases where the parties agree agency officials conceived of an idea but disagree on whether a final agency action has occurred.  Plaintiffs' misapplication of irrelevant case law would turn the exception of APA discovery into the rule.

Plaintiffs rely heavily on three cases to purportedly support their thinly veiled fishing expedition: *Venetian Casino Resort, LLC v. Equal Employment Opportunity Commission*, 409 F.3d 359 (D.C. Cir. 2005); *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018); and *American Federation of Labor and Congress of Industrial Organizations v. Department of Labor* ("*AFLCIO*"), 349 F.R.D. 243 (D.D.C. 2025).  But all three of these cases involve a specific fact pattern that is not at issue here: a dispute over whether an agency had adopted a particular unwritten policy that guided its behavior in multiple discrete circumstances. Therefore, those cases are inapplicable.

First, take *Venetian Casino*.  In that case, the D.C. Circuit faced an extremely unusual situation; both parties effectively conceded that they could not explain what policy governed the agency's resolution of disputes regarding information disclosure.  Specifically, the parties based their argument before the district court on an outdated agency manual, neither party could explain the disclosure regime in the current manual, and agency counsel took inconsistent litigating positions and ultimately expressed uncertainty about whether the agency's current policy permitted disclosure without notice.  409 F.3d at 362-63.  The D.C. Circuit concluded that the case was ripe

12

for review notwithstanding the agency's own uncertainty regarding its policy because whatever that policy in fact was, it would apply to the plaintiff's documents already before the agency. *Id.* at 367. The Court distinguished the facts of that case from ordinary APA cases like *Nuclear Energy Institute v. EPA*, 373 F.3d 1251 (D.C. Cir. 2004), where the relevant agency positions have not yet "'crystallized' through implementation in a concrete factual setting," *id.* at 1313, and "procedural or substantive evolution of [the agency position] is pending or expected." 409 F.3d at 365. Thus, based on unique circumstances absent here, the D.C. Circuit remanded the matter to the district court to "ascertain the contours of the precise policy at issue." *Id.* at 367.

Moreover, apart from these substantial differences between the circumstances of this case and *Venetian Casino*, Plaintiffs also ignore what the *Venetian Casino* district court did next. The district court did not authorize expansive discovery into agency emails, text messages, deliberative documents, or documents from third parties, as Plaintiffs demand here; rather, the district court ordered the agency to simply submit an affidavit explaining the nature of the agency's disclosure policy—precisely the sort of sworn statement that Defendants have now twice provided. *Compare* Order, *Venetian Casino Resort, L.L.C. v. EEOC*, No. 00-2980 (RJL) (D.D.C. filed Nov. 14, 2005), Dkt. No. 44 *with* Bowron Decl. ¶¶ 9, 14-24, Dkt. No. 26-4 *and* Bowron Decl. ¶¶ 6-13, Dkt. No. 38-2.

In *Hispanic Affairs Project*, there too the D.C. Circuit was faced not with a challenge to a discrete action or to a formally adopted agency policy, as is typical under the APA, but with a challenge to an alleged pattern of behavior that amounted to an unwritten policy that had gone unaddressed by the district court. There, the D.C. Circuit concluded that plaintiffs had adequately alleged the existence of a *de facto* agency policy authorizing long-term visas in violation of various statutory and regulatory constraints. 901 F.3d at 385-86. The D.C. Circuit therefore remanded the

13

case for the district court to address the alleged unwritten policy in the first instance and, citing only *Venetian Casino*, acknowledged that the district court could take further steps to learn the contours of that unknown policy.[2]

*AFLCIO*, which is not binding on this Court, is similarly distinguishable.  Like *Venetian Casino* and *Hispanic Affairs Project*, at issue in *AFCLIO* was whether an alleged agency policy in fact existed—there, an alleged policy granting Department of Government Efficiency employees access to agency information systems.  349 F.R.D. at 248.  The court concluded it could "depart from the default APA no-discovery rule," because like in *Venetian Casino* and *Hispanic Affairs Project*, the lack of agreement about whether an agency policy existed meant that the case was "not an ordinary APA case."  *Id.*

The allegations and circumstances of *Venetian Casino*, *Hispanic Affairs Project*, and *AFLCIO*, however, are a far cry from this case.  First, this case does not involve an alleged agency policy—either written or unwritten—or an agency allegedly "applying some particular measure across the board."  *Hispanic Affairs Proj.*, 901 F.3d at 388.  Policies are implemented more than once and Plaintiffs have not alleged that a purported golf course policy "exist[s]."  *AFLCIO*, 349 F.R.D. at 249.  Plaintiffs' claims present an ordinary APA challenge to alleged agency decisions to redesign a golf course and stockpile fill material—except that in this case, agency officials have provided sworn and unrebutted declarations confirming that the alleged "decision" to redesign the golf course is still subject to on-going deliberation.  There is no mystery here about Defendants'

---

[2] On remand, the agency conceded that a practice of making such decisions existed, but argued it was the result of individualized decisionmaking, not a department-wide policy.  *See* Joint Report in Resp. to Dec. 20, 2018 Min. Ord., *Hispanic Affairs Proj. v. Acosta*, Case No. 1:15-cv-1562-BAH (D.D.C. filed Feb. 15, 2019), Dkt. No. 126.  The court then permitted limited discovery to resolve that dispute, *see id.* at Minute Order (filed Feb. 21, 2019), but whether that discovery was permissible was never adjudicated as the parties agreed to stay discovery and ultimately settled the case.  *See id.* at Joint Status Report, Dkt. No. 135.

litigating position that discovery could uncover.  Plaintiffs' Proposal Claims are simply not ripe and do not allege final agency action on their face.  They reflect, instead, the typical alleged APA action that must first "'crystallize[]' through implementation in a concrete factual setting." *Nuclear Energy Institute*, 373 F.3d at 1313.  This line of cases is therefore inapplicable and no discovery—expedited or otherwise—is warranted.[3]

Plaintiffs premise their quest for discovery by claiming "the core of this case is a factual dispute."  Pls.' Mot. for Expedited Disc. 1.  But there is no factual dispute.  Plaintiffs have put forth no facts to plausibly conclude that conceiving of an idea to redesign a golf course is final agency action.  They have not contested or questioned *any* of the sworn statements by NPS Controller Bowron.  The dispute before the Court is a legal one, not a factual one, and Plaintiffs' absence of facts does not justify their attempt to probe into internal agency processes.

To the extent that Plaintiffs claim discovery is warranted under these cases because Defendants purportedly rely "on facts [Defendants] put in the record," *id.* at 8 (quoting *AFLCIO*, 349 F.R.D. at 253 n.6), this too is a red herring.  Defendants have provided extra-record facts in this case for two purposes: to oppose a preliminary injunction, and to comply in good faith with court directives.  These choices do not mean that Defendants have consented to intrusive and burdensome discovery requests.  Moreover, the facts and information Defendants have provided do not relate to events preceding or at the time of the alleged decisions, but rather concern subsequent factual developments that have occurred since or that could foreseeably occur.

---

[3] As much as *Venetian Casino* also justified the need for discovery based on the agency's inconsistent litigating positions, that justification is not present here.  Counsel and agency declarants have consistently expressed that any decision to begin pursuing a redesign of the East Potomac Golf Course was the genesis of a decisionmaking process, not its terminus, and subsequent interim decisions and legal compliance are required before any formal decision on a redesign is reached.

Notwithstanding the lack of relevance of these facts to Plaintiffs' APA claims—which must rely on facts preceding any alleged decisions—Plaintiffs have had no problem when it comes to inserting their own facts into the record. *E.g.*, Pledge Agreement, Dkt. No. 47-2; Notice of Factual Development, Dkt. No. 49-1 ("Press Release"); Notice of Factual Development, Dkt. No. 50-1 ("Burgum Fazio Design Post"). Defendants' willingness to inform the Court of recent events and their future intentions does not serve as a basis for discovery into past alleged decisions.

In sum, this case is nothing like *Venetian Casino* and related cases. Allowing discovery here would invite the very sort of "meddling in an agency's tentative, internal deliberations" that courts have warned against. *Ctr. for Biological Diversity*, 260 F. Supp. 3d at 29. As soon as enterprising plaintiffs get word that an agency is contemplating a possible course of action, they could file suit and claim that the very idea that an agency may pursue that course of action is final agency action. Then, they could claim that discovery is needed to conclusively determine the issue. As a result, they could gain access to all kinds of documents and information outside the scope of a potential future administrative record and beyond what they would have otherwise been entitled to had their allegations satisfied the APA's finality requirement at the outset. And should that trove of discovery reveal the agency was correct all along that plaintiffs' thin allegations did not in fact amount to final agency action? By that point, the damage to the agency's deliberative process would already have been done. Such a stark reversal in the usual practice in record review cases "risks upsetting the balance between the judicial and administrative functions that Congress struck in the APA," *id.*, and cannot be drawn from the limited holdings in *Venetian Casino* and its progeny.

**III.**   **Discovery is Not Required for Effective Judicial Review of the Issues Raised**

Putting aside the line of cases that have permitted discovery regarding the existence of an unwritten or inconsistent agency policy, the D.C. Circuit has held that discovery is permitted in APA cases in only two circumstances: "'when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Friends of the Earth*, 236 F.R.D. at 42 (quoting *Comm. Drapery Contractors*, 133 F.3d at 7). Plaintiffs do not argue discovery is warranted on bad faith grounds.[4] Instead, Plaintiffs claim discovery is necessary to ensure effective judicial review of two issues: standing and final agency action. Pls.' Mot. for Expedited Disc. 5-6. They argue discovery is required to discern "the precise contours of" their own injuries and Defendants' alleged final agency action. *Id.* Not so.

**A.**   **Standing**

Plaintiffs are not entitled to any discovery at the motion to dismiss stage to shore up their own injury allegations for standing purposes. *Haase*, 835 F.2d at 908; *see also Gerber Prods. Co. v. Perdue*, 254 F. Supp. 3d 74, 85 (D.D.C. 2017) (recognizing that "no amount of discovery will cure Plaintiff's lack of injury"). By demanding discovery on this basis and refusing to stand behind

---

[4] In passing, Plaintiffs seemingly flip the relevant standard on its head and imply that they may need discovery to demonstrate bad faith. Pls.' Mot. for Expedited Disc. 13. But discovery is not available for this type of fishing expedition, and the claimed possibility of bad faith is not enough to warrant discovery. *Committee of 100 on the Fed. City v. Fox*, 140 F. Supp. 3d 54, 65 (D.D.C. 2015). Even if Plaintiffs had offered a "bad faith" theory, it would be without basis. With respect to the Stockpiling Claims, Defendants provided the appropriate evidence considered and compliance documentation in the administrative record for the decision to stockpile clean fill material. Plaintiffs have not filed a motion to complete or supplement that record and thus concede its correctness on that basis. As for the Proposal Claims, any allegation of bad faith would have to presume Defendants have had all the necessary construction and design drawings, contracts, and compliance in hand, made a final decision approving a redesign, are somehow concealing those accomplishments, all while swearing that they will complete those tasks at the appropriate stage of their deliberations. That theory is not only implausible but entirely unsupported.

17

their allegations, Plaintiffs are in effect conceding that any alleged injury is not "actual or imminent, . . . [but] conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To put a finer point on the needlessness of Plaintiffs' discovery for standing purposes, the fact that they cannot demonstrate any harm has occurred from any alleged redesign by now, many months after Plaintiffs filed their Complaint—and their still-pending emergency motion—shows how implausible their allegations are that such harm was imminent *at the time they filed their Complaint*, as is necessary to survive a Rule 12(b)(1) motion to dismiss. *See, e.g.*, *Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019). Plaintiffs' supposed need for discovery—i.e. that their injury from a redesigned golf course is actual or imminent—is premised on a theory that Defendants made a final decision many months ago, have held off on implementing that decision, and asserted a sworn intent to begin NEPA and NHPA Section 106 compliance at the appropriate time, all merely to conceal from Plaintiffs the fact that a final decision has already been made. Such a theory is unsupported and not plausible under *Twombly*. *See supra* 17 n.4; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Moreover, careful review of Plaintiffs' proposed discovery reveals that their requests are not aimed at identifying alleged injury caused by the challenged "decisions" at all. Notably, with limited examples discussed below, Plaintiffs' proposed discovery does *not* focus on soil testing results from the soil stockpile, which Defendants have voluntarily provided to the public. Instead, most of Plaintiffs' requests seek information related to third parties named in recent news reports, or to internal deliberations related to subsequent activities that have occurred after the challenged decisions were made. To the extent that Plaintiffs' requests are remotely relevant to the existence of an alleged pre-litigation, proposal contemplating the redesign of the Golf Course, Plaintiffs'

18

requests on their face seek deliberative information that would be protected by executive privilege. *See, e.g.*, Ex. 1, 4-5, Dkt. No. 51-2 (seeking among other things documents created by Defendants and provided to Secretary Burgum or the Executive Office of the President).  But Plaintiffs cannot use discovery to secure a place at the deliberative agency table.  *Ctr. for Biological Diversity*, 260 F. Supp. 3d at 29 (recognizing that "courts do not, and cannot, police agency deliberations").

Plaintiffs also do not identify *any* issue relevant to their Stockpiling Claims where effective judicial review is prevented and discovery would be justified.  Instead, they only vaguely identify factual "gaps" they contend must be filled for "proper resolution" of this case.  Pls.' Mot. for Expedited Disc. 7.  For example, Plaintiffs contend they need information related to "background levels" of contaminants at East Potomac Park, anti-leaching measures, "storage and transport protocols," and dirt "quantity."  *Id.*  But Plaintiffs identify no document that is supposedly missing from Defendants' stockpiling administrative record.  Indeed, Plaintiffs have not filed a motion to complete or supplement that administrative record.  Moreover, Defendants have already volunteered to provide all the extra-record testing results in their possession and corresponding interim and final analyses of those results.  *See* Nersesian Decl. ¶¶ 9, 11-13. Dkt. No. 38-1.

Presumably, Plaintiffs believe this discovery is necessary for the Court to determine whether they have standing to bring their Stockpiling Claims under their increased-risk-of-harm theory of injury.  But Plaintiffs are not entitled to any such discovery to correct the speculative nature of their own alleged injury.  *See Haase*, 835 F.2d at 908.  Plus, none of the requested discovery related to the stockpiling—i.e., information related to testing results or documents exchanged with third party contractors—is necessary to determine whether Plaintiffs have alleged facts plausibly showing a substantially increased risk of harm and a substantial probability of harm given that increase.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015).

19

For the reasons stated in Defendants' Motion to Dismiss and forthcoming reply in support, Plaintiffs' non-existent allegations on this front warrant dismissal.

### B.    Final Agency Action

Discovery is also not necessary for judicial review of finality. Plaintiffs alleged that on or about August 1, 2025, agency officials made a decision to redesign East Potomac Golf Course. Compl. ¶ 67, Dkt. No. 5-1. Plaintiffs claim that this alleged decision was unlawful final agency action under the APA. Plaintiffs maintain that before conceiving of this idea, Defendants were first required to conduct NEPA and NHPA Section 106 compliance. *Id.* Counts 1-4. Notably, Plaintiffs' complaint does not—and cannot—rely on any alleged "decision" that might have taken place since Plaintiffs initiated this litigation. But even assuming Plaintiffs have standing to bring these claims (and they do not), a second "threshold" hurdle stands in their way: the requirement that the alleged August 1, 2025 decision was final agency action. *Del. Valley Reg. Ctr., LLC*, 106 F.4th at 1203. The Court has all the information it needs before it to effectively review the question of whether the alleged *August 1, 2025, decision* was a final agency action, and to conclude that it was not.

Plaintiffs' allegations on their face fall far short of establishing that the Complaint challenges a ripe final agency action. At best, they amount to little more than a claim that the agency decided in August 2025 to explore the possibility of renovating and redesigning East Potomac Golf course and then began taking interim steps necessary to develop that idea into a plan for future action. But alleging "the mere 'contemplation' of certain action is not sufficient." *Kleppe v. Sierra Club*, 427 U.S. 390, 404 (1976); *see also Pub. Citizen v. Off. of U.S. Trade Reps.*, 970 F.2d 916, 920 (D.C. Cir. 1992) ("[C]ourts routinely dismiss NEPA claims in cases where agencies are merely contemplating a particular course of action . . . ."). The challenged action

20

must be sufficiently defined and concrete. *E.g.*, *Nevada v. Dep't of Energy*, 457 F.3d 78, 84-86 (D.C. Cir. 2006) (agency plan must have "sufficiently crystallized," otherwise it is "nothing more than a *possible* course of action"). Here, as a matter of law, Plaintiffs' allegations that Defendants decided to redesign East Potomac Golf Course do not present a sufficiently concrete and defined final agency action ripe for adjudication.

Plaintiffs rely on new "public revelation[s]" to argue that the agency *did* take final agency action, and supposedly we are now seeing the results. Pls' Mot. for Expedited Disc. 2. But these only prove Defendants' point: consistent with Ms. Bowron's declarations, the agency decisionmaking process is continuing and various interim steps both internal and external to the agency are occurring before the agency can conduct the necessary compliance and reach a final decision on whether and how to renovate or redesign East Potomac Golf Course. *Compare* Bowron Decl. ¶ 16, Dkt. No. 26-4 (acknowledging that "NPS, a new lessee, or an authorized third party" could propose a project to renovate the Golf Course), Bowron Decl. ¶ 7, Dkt. No. 38-1 (explaining NPS was considering various pathways and funding) *with* Pledge Agreement, Dkt. No. 47-2,[5] Press Release, Dkt. No. 49-1; *and compare* Bowron Decl. ¶ 9, Dkt. No. 38-2 (explaining that design services would need to be either donated or procured) *with* Burgum Post, Dkt. No. 50-1 (sharing a hypothetical design volunteered by Fazio Design).

In fact, Plaintiffs' so-called "revelation[s]" contradict their own narrative. Plaintiffs submitted a third-party Pledge Agreement that included two images of a reimagined East Potomac Golf Course. Pledge Agreement 3-4, Dkt. No. 47-2. They also submitted a hypothetical "design" consisting of a single image volunteered by Fazio Design. Burgum Post, Dkt. No. 50-1. Neither

---

[5] Although perhaps obvious, NPS has no authority over whether third parties like the National Garden of American Heroes Foundation fundraise using "[r]eimagined" images of properties under NPS management. Pledge Agreement 3, Dkt. No. 47-2.

set of images bear the hallmarks of final agency action demonstrating the consummation of the agency decisionmaking process nor legal rights and obligations with direct legal consequences. *Bennett*, 520 U.S. at 178. And even a cursory glance at the two sets of images reveals they portray drastically different proposals. As just two obvious examples, in one image, a golf course extends to the end of Hains Point but not in the other, and both show water hazards that are in different locations. If the supposed "final" decision to redesign the Golf Course has already changed, it may very well change again.

## IV. Plaintiffs Fail to Justify Expedited Discovery

The D.C. Circuit has not weighed in on the appropriate standard for adjudicating motions for expedited discovery. *See, e.g.*, *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). Courts in this Circuit have generally followed two tests when deciding such motions: the *Notaro* test;[6] and the reasonableness test. Plaintiffs rely only on the more liberal reasonableness test.

Under the reasonableness test, "the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances,' which include '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.* at 98 (quoting *In re Fannie Mae Deriv. Litig.*, 227 F.R.D. 142, 142-143 (D.D.C. 2005)) (citation omitted). While these factors are only "guidelines," *id.*, each weigh against the need for expedited discovery here.

---

[6] The *Notaro* test, from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), largely tracks the preliminary injunction standard while requiring a connection between the expedited discovery and the avoidance of irreparable injury. *See Guttenberg*, 26 F. Supp. 3d at 97. Plaintiffs make no effort to satisfy the *Notaro* test and any such argument is therefore waived.

The first and fifth factors involve the timing of a plaintiff's motion in relation to the procedural posture of the case and both weigh against granting Plaintiffs' Motion. Although a preliminary injunction motion is pending, Plaintiffs waited months after the events underlying this case to file their Complaint, another ten days to file their preliminary injunction motion, and nearly another three months before filing their present Motion. Plaintiffs' lack of urgency undercuts any argument that expedited discovery is warranted here. *See Guttenberg*, 26 F. Supp. 3d at 98 (concluding plaintiff's two-month delay between filing its complaint and its motion for expedited discovery weighed against its request). Plus, Defendants' Motion to Dismiss is also pending. At least one court in this district has described the pendency of a motion to dismiss the "most important" factor for the reasonableness analysis. *Guttenberg*, 26 F. Supp. 3d at 99. Where, as here, defendants have raised arguments in a motion to dismiss that a plaintiff's claims should be dismissed, "to expend significant resources in responding to plaintiffs' discovery requests would be unjust." *Id.* Accordingly, the first and fifth factors weigh against granting expedited discovery.

The second factor—the incredible breadth of Plaintiffs' discovery requests—weighs heavily in Defendants' favor. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (recognizing that any expedited discovery must be narrowly tailored and limited in scope). Plaintiffs' discovery requests are not limited or narrowly tailored—quite the opposite. Plaintiffs seek, among other things, the search of all emails, text messages, and documents of any Department of Interior employee, past or present, that use any single word in a list of more than twenty phrases; communications with third parties who are neither named Defendants nor identified anywhere in Plaintiffs' Complaint; internal agency communications that would be subject to executive privilege as deliberative materials; documents prepared for the President that would be subject to executive privilege; document subpoenas to multiple third parties who are not

23

alleged to have had any involvement in making the challenged decisions; and other matters detached from any reasonable connection to this case. *See* Dkt. No. 51-2, 51-3. Plaintiffs' requests go far beyond the "limited discovery" authorized in their preferred cases. *See AFLCIO*, 349 F.R.D. at 246 (permitting discovery that was limited to individuals' identities, dates, names of systems and documents already referenced in declarations). This factor, more than any other, demands that the Court deny Plaintiffs' Motion.

Third, these discovery requests are unnecessary to serve their purported purposes. As noted above, in the APA context, courts only recognize two purposes for deviating from the default rule that discovery is not permitted: bad faith; and to ensure effective judicial review. Plaintiffs do not rely on a bad faith justification, and for the reasons stated above, *supra* 17-22, Plaintiffs' discovery requests are not necessary to ensure effective judicial review of Plaintiffs' failure to establish standing or final agency action.

Fourth, the burden on Defendants to comply with these requests would be immense. Aside from searching troves of documents and data associated with Department employees, Plaintiffs' discovery requests would require the burdensome and onerous task of crafting a privilege log, as many of the documents requested by Plaintiffs are a product of the deliberative process and subject to executive privilege. Plaintiffs claim their requests are not burdensome because they "seek no depositions" and merely "entry on land." Pls.' Mot. for Expedited Disc. 11. But Plaintiffs fail to mention their requests for admission, interrogatories, requests for production, and six third-party subpoenas. If simply the absence of a request for depositions were dispositive of the question of burden, the reasonableness test would lose all meaning. Plus, access to the stockpile is wholly unwarranted because it would have no effect on the alleged arbitrariness at the time of the decision at issue and cannot cure Plaintiffs' defective increased-risk-of-harm injury allegations. Any

24

supposed utility gained from accessing the stockpile is nonextant in light of the test results and analyses Defendants produced and swore to produce once available.  *See* Nersesian Decl. ¶¶ 9, 11-13. Dkt. No. 38-1.

In short, Plaintiffs have sought expansive discovery into the inner deliberative workings of agency Defendants.  But the APA is not a substitute for FOIA, and Plaintiffs cannot satisfy even the reasonableness test to justify discovery here.  The Court should end Plaintiffs' thinly veiled fishing expedition and deny Plaintiffs' Motion.

**V.      Even if the Court Concluded Additional Fact-Finding Were Warranted, the Court Should Rely on Less Intrusive Means than Plaintiffs' Proposed Discovery**

Even assuming the Court finds Plaintiffs have standing (they do not), and even assuming further that the Court concludes that whether Plaintiffs have adequately alleged an agency decision that constitutes ripe final agency action is a factual question subject to further fact-finding (it is not), the Court should still deny Plaintiffs' Motion.  The Court should then use the least intrusive means available to satisfy itself that Defendants' fall 2025 decision to pursue the possible renovation and redesign of East Potomac Golf Course is not a ripe final agency action.

The U.S. Supreme Court has made clear that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications."  *U.S. Doge Serv. v. Citizens for Resp. & Ethics in Wash.*, 145 S. Ct. 1981 (June 6, 2025) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 385 (2004)).  To minimize these concerns, courts use the least intrusive means available when seeking more information from the Executive Branch.  *See, e.g.*, *In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008).

Any further fact-finding is unnecessary.  If the Court still has any lingering concerns, however, Defendants suggest that the Court follow the district court's lead in *Venetian Casino* and

rely on the declarations already submitted by NPS Comptroller Jessica Bowron and National Capital Region Director Jennifer Nersesian, *see* Dkt. Nos. 26-4, 38-2.

## VI.    The Court Can Resolve this Case Without Further Discovery

Finally, the Court can resolve this case without discovery.  Defendants maintain that this action and Plaintiffs' Proposal claims in particular should be dismissed for a variety of reasons, including lack of standing and lack of a ripe, final agency action.  If the Court disagrees, resolution of Plaintiffs' Proposal Claims becomes very simple.  In this scenario, the Court will have effectively found Plaintiffs alleged a decision constituting final agency action that has no corresponding administrative record.  The Court can simply remand the purported decision to the agency to first conduct NEPA and NHPA Section 106 compliance before making a subsequent decision to redesign the Golf Course—exactly what Defendants have informed Plaintiffs and the Court that they intend to do before a final decision is reached.

**CONCLUSION**

For all these reasons, Defendants request that the Court deny Plaintiffs' Motion for Expedited Discovery.

Respectfully submitted this 4th day of June 2026.

**ADAM R. F. GUSTAFSON**

Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

 */s/ Michael K. Robertson*

MICHAEL K. ROBERTSON
Trial Attorney (DC Bar No. 1017183)
U.S. Department of Justice

26

Environment & Natural Resources Division
Natural Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002
Tel: (202)-305-9609
Email: Michael.Robertson@usdoj.gov

*Attorneys for Federal Defendants*

27