## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*, | |
| *Plaintiffs*, | |
| *vs.* | Case No. 1:26-cv-477 |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | |
| *Defendants*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY

**TABLE OF CONTENTS**

I.    Extra-record discovery is appropriate in this case. ................................................................. 1

II.   Plaintiffs' requested expedited discovery is reasonable. ..................................................... 5

      A.    The Pendency of Plaintiffs' Preliminary Injunction Motion Warrants Discovery, And Defendants' Motion to Dismiss Does Not Counter Against It............................................................................................................................ 6

      B.    The Remaining Reasonableness Factors Favor Granting Plaintiffs' Motion.................................................................................................................................. 9

            1.    Breadth of Plaintiffs' Proposed Discovery ........................................................ 9

            2.    Purpose of Proposed Discovery ..................................................................... 12

            3.    Burden on Defendants' of Compliance........................................................... 17

III.  Defendants' suggestions for alternate resolution are inadequate...................................... 18

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*AFL-CIO v. Dep't of Lab.*,
  349 F.R.D. 243 (D.D.C. 2025)............................................................. 3, 6, 8, 13, 15

*Does 1-9 v. Dep't of Justice,*
  No. 25-CV-325, 2025 WL 894120 (D.D.C. Mar. 22, 2025) ............................... 5

*In re Fannie Mae Derivative Litig.*,
  227 F.R.D. 142 (D.D.C. 2005)................................................................... 9

*Friends of the Earth v. U.S. Dep't of Interior*,
  236 F.R.D. 39 (D.D.C. 2006).................................................................... 9

*Garnett v. Zeilinger,*
  No. 17-cv-01757, 2017 WL 8944640 (D.D.C. Dec. 15, 2017) .......................... 8

*Guttenberg v. Emery,*
  26 F. Supp. 3d 88 (D.D.C. 2014) ....................................................... 5, 6, 9

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987)................................................................... 8

*Hispanic Affairs Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018)................................................................... 3

*Menkes v. U.S. Dep't of Homeland Sec.*,
  637 F.3d 319 (D.C. Cir. 2011)................................................................... 2

*In re Musk,*
  No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ............................... 9

*New Mexico v. Musk*,
  770 F. Supp. 3d 192 (D.D.C. 2025)............................. 6, 7, 9, 10, 11, 12, 17, 18

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................. 5

*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1998)................................................................... 9

*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992)................................................................ 11

*Robertson v. Methow Valley Citizens Council,*
    490 U.S. 332 (1989) ........................................................................................... 16

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ......................................................................... 11

*Strike 3 Holdings, LLC v. Doe,*
    964 F.3d 1203 (D.C. Cir. 2020) ......................................................................... 8

*In re United States,*
    583 U.S. 29 (2017) ............................................................................................. 9

*Venetian Casino Resort, LLC v. EEOC,*
    409 F.3d 359 (D.C. Cir. 2005) ........................................................................... 3

## FEDERAL RULES

Fed. R. Civ. P.
    Rule 12(d) ........................................................................................................... 7

Plaintiffs have established their entitlement to expedited discovery. This is an unusual APA case, where the administrative record is far too sparse to allow meaningful judicial review, and extra-record discovery is therefore appropriate. And because of Plaintiffs' pending motion for preliminary relief, expedited discovery is likewise appropriate. With respect to Defendants' decision to raze historic East Potomac Golf Course in favor of the Washington National Plan, discovery is necessary because Defendants produced *no* administrative record, and their defenses to Plaintiffs' motion for preliminary relief—challenging standing, ripeness, finality, and irreparable harm—all turn on a factual dispute Defendants themselves introduced. Further, with respect to the dumping and storage of toxic and contaminated debris on East Potomac Golf Course, discovery is necessary to address significant gaps and contradictions in the inadequate administrative record Defendants provided, including test results that squarely refute Defendants' characterization of the debris as "clean fill."

In response, Defendants double down on the threadbare assertions of their unreliable declarants, incorrectly characterize their incomplete compliance with this Court's orders as voluntary transparency, and seek refuge in their meritless motion to dismiss. The Court should not allow Defendants' inadequate response to Plaintiffs' motion to prevent or delay necessary discovery while Defendants continue implementing the Washington National plan.

## I.      Extra-record discovery is appropriate in this case.

Extra-record discovery is appropriate here because the administrative record Defendants produced fails to address the Washington National Plan and provides insufficient information about the dumping and storage of contaminated debris on East Potomac Golf Course, and because Defendants' defenses all turn on a factual dispute introduced by Defendants. Despite clear instructions from the Court, Defendants' purported administrative record contains no information concerning the decision to overhaul East Potomac. *Compare* Status Conf. Tr., 18:7–

10, Apr. 9, 2026, Dkt. 35 (confirming the Court's understanding that the administrative record will "extend to both the dumping and the Washington National Plan as a whole") *with* Admin. R. Index., Dkt. 39 (administrative record limited to dumping).  Defendants brush off this failure to satisfy the Court's instruction by baselessly suggesting that "Plaintiffs are not seriously seeking discovery to determine whether there has been final agency action on a decision to redesign East Potomac" and, as they have since the beginning of this litigation, asking the Court and Plaintiffs to simply accept that there has been no such final agency action because "Defendants have explained multiple times there has not been."  Defs.' Br. 1, Dkt. 54.  But these "explanations" are contradicted by the allegations of the complaint and other extensive evidence, including Defendants' own out-of-court statements.  *See*, *e.g.*, Dkt. Nos. 47-1 at 12, 47-2, 49-1, 49-2, and 50-1.

Plaintiffs thus do in fact seek discovery to resolve the dispute over whether there has been final agency action in the form of a decision to convert East Potomac Golf Course from a recreational-style golf course to a championship-style professional venue—and into the exact parameters of that decision.  This discovery is necessary because (in addition to denying that the decision even has been made) Defendants have ignored the Court's instruction to provide an administrative record into that decision.  And Plaintiffs seek discovery into the parameters of the decision to dump contaminated debris on East Potomac Golf Course: that discovery is necessary because of substantial gaps and contradictions in the nominal administrative record Defendants produced regarding the dumping.

These gaps have left a record "so bare that it prevents effective judicial review."  *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 339 (D.C. Cir. 2011) (citation omitted).  On the present record, there is no way for the Court to reliably determine: (1) whether Plaintiffs have

2

correctly alleged (as confirmed by subsequent developments) that Defendants have made a final decision to overhaul East Potomac and are already implementing that decision; (2) the contours of that decision; (3) the degree to which the Washington National plan will violate Defendant NPS's statutory mandates; and (4) the extent of the pollution and contamination in the pile of debris Defendants have deposited on East Potomac and thus the harm it may cause.  Each of these determinations is necessary for resolution of Plaintiffs' motion for preliminary relief, and Defendants have offered no authority for the stunning proposition that the Court should decide a motion for preliminary relief by treating as true declarations that factual developments have contradicted time and time again.  Considering the fact that Defendants' declarations are seemingly inconsistent with undisputed facts, Plaintiffs should at least be given the opportunity to obtain and assess information exclusively within Defendants' control to determine whether Defendants' declarations are in fact credible.

Several cases establish that this is one of the rare APA cases justifying a departure from the record review rule to permit the Court and Plaintiffs to determine whether a final agency action exists and to assess its contours.  In *Hispanic Affairs Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018), the D.C. Circuit allowed discovery to determine the precise contours of an agency action, which was necessary because the existence of the final agency action could only be inferred from its implementation.  In *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359 (D.C. Cir. 2005), the parties could not agree on the nature of a final agency action—nor even whether it "in fact exists," *id.* at 360—and the D.C. Circuit therefore determined that discovery was appropriate to determine the existence and nature of the final agency action.  *Id.*  And in *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243 (D.D.C. 2025), Judge Bates allowed discovery to

ascertain the existence and scope of a data access policy the existence of which Defendants denied.

These cases make clear that discovery is appropriate in APA cases when there is a factual dispute as to whether a final agency action exists and when factual development is necessary to understand the exact contours of a final agency action. To date, the principal dispute in this case is whether Defendants have made a final decision to overhaul East Potomac, and, if so, what the final agency action's exact parameters are. And like *Acosta* and *AFL-CIO*, the existence of the final agency action at issue can primarily be inferred from its implementation.

Defendants' attempts to distinguish those cases from this one only demonstrate their similarities. Despite the overwhelming evidence to the contrary, Defendants describe this case as a "run-of-the-mill APA case[]" and argue that Plaintiffs' authorities do not support extending discovery into such cases. Defs.' Br. 12–16. But "run-of-the-mill APA cases" generally involve transparent government actions, have a well-defined and complete administrative record, and do not entail government defendants denying that the challenged final agency action exists (while confirming out of court that it does) or obscuring its contours. This case, much like *Venetian Casino*, *Hispanic Affairs Project*, and *AFL-CIO*, involves a final agency action obscured from public view, inferred from its implementation, and denied by the government.

Defendants also attempt to distinguish this case from Plaintiffs' cited authorities on the ground that Plaintiffs do not challenge a policy, but rather a specific decision. Defendants do not, however, explain why this is a legally significant distinction (it is not), instead retreating to their declarations and protesting once again that the decision in question has not yet been made. Defs.' Br. 14. Plaintiffs, of course, made contrary allegations in their complaint and have introduced contrary evidence of factual developments both predating and postdating the filing of

the complaint that directly refute what Defendants incorrectly style as "unrebutted declarations." *Id.* Defendants' declarations say that there is no final decision to overhaul East Potomac Golf Course, but Plaintiffs alleged in their complaint that Defendants made exactly such a decision and took several steps to implement it. And Plaintiffs have introduced evidence of factual developments—including announcements by Defendants of an overhaul of East Potomac Golf Course—that make clear that the decision to overhaul East Potomac is final and is being implemented.

Having created the factual dispute as to whether a final agency action has occurred and then staked their threshold defenses on it, Defendants nonetheless insist that, unlike in the cases on which Plaintiffs rely, here "there is no factual dispute." *Id.* at 15. This statement strains all credulity. That Plaintiffs must infer the existence of the final agency action—as in *Hispanic Affairs Project*—from Defendants' conduct and implementation of the decision does not change that Plaintiffs have alleged it and have demonstrated its existence.

## II.    Plaintiffs' requested expedited discovery is reasonable.

The reasonableness test for evaluating a motion for expedited discovery is "the majority approach in this District," *Does 1-9 v. Dep't of Justice*, No. 25-CV-325, 2025 WL 894120, at *5 n.3 (D.D.C. Mar. 22, 2025), and this Court should follow it here.[1]

> Under the reasonableness approach, the Court considers the "reasonableness of the request in light of all of the surrounding circumstances," *In re Fannie Mae*, 227 F.R.D. at 142-43, which include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery;

---

[1] Defendants briefly suggest the test from *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), might apply in place of the reasonableness test, but the very case Defendants cite for that suggestion notes that it would be illogical to apply *Notaro* to a motion for expedited discovery in support of a motion for a preliminary injunction because the *Notaro* standard overlaps in part with the preliminary injunction standard and thus "it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request" in that context. *Guttenberg*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014).

(4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* These factors, however, are only guidelines for the exercise of the Court's discretion.

*Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014).  Consideration of "the five factors of the reasonableness approach, albeit somewhat out of order," *AFL-CIO*, 349 F.R.D. at 249, favors allowing Plaintiffs' requested discovery.

A.      The Pendency of Plaintiffs' Preliminary Injunction Motion Warrants Discovery, And Defendants' Motion to Dismiss Does Not Counter Against It

First**,** "a preliminary injunction is pending," *New Mexico v. Musk*, 770 F. Supp. 3d 192, 198 (D.D.C. 2025) (quoting *Guttenberg*, 26 F. Supp. 3d at 98), which weighs in favor of granting expedited discovery.  Defendants respond that Plaintiffs have not moved quickly enough to seek injunctive relief and discovery and that this factor therefore weighs against expedited discovery.  But as Plaintiffs have explained, Defendants' decision to overhaul East Potomac did not become publicly evident for some time after they made it.  Plaintiffs acted promptly to file this lawsuit—and just ten days later, their motion for injunctive relief—once it became clear that Defendants had in fact adopted and begun to implement the Washington National Plan and well before Defendants had even finished dumping debris on the golf course.  In contrast, in the single case Defendants cite to suggest that the timing of Plaintiffs' filings has any bearing here, the plaintiffs waited two months after filing a complaint before they sought injunctive relief.[2]

Defendants' overarching argument against discovery is that the Court should resolve the threshold standing and finality arguments advanced in Defendants' pending motion to dismiss

---

[2] Defendants also complain about the length of time between Plaintiffs' motion for injunctive relief and Plaintiffs' discovery motion.  But it would have been inappropriate for Plaintiffs to seek discovery before Defendants had an opportunity to provide the administrative record and other information this Court ordered them to provide, and had Defendants in fact provided a record adequate to evaluate Plaintiffs' motion for injunctive relief, there would have been no need for the discovery motion at all.

before considering discovery.  The pendency of a motion to dismiss is generally considered under the fifth reasonableness factor.  Here, although Plaintiffs are seeking discovery "in advance of the typical process[,] . . . this factor holds little weight."  *Musk*, 770 F.Supp.3d at 203.

As an initial matter, for the reasons explained in Plaintiffs' opposition, Defendants' motion to dismiss is meritless, and as the Court has already recognized, "a lot of the standing issues are part and parcel to the merits issues, especially with respect to final agency action and whether there has been agency action."  Status Conf. Tr., 42:5–11, Mar. 11, 2026, Dkt. 31.  The Court can and should easily deny the motion to dismiss on its own terms or simply allow discovery to proceed in anticipation of resolving Defendants' threshold defenses after appropriate factual development.

In particular, Defendants' motion to dismiss, like their defense to Plaintiffs' motion for preliminary relief, bases its arguments about standing, finality, and failure to state a claim on Defendants' version of the facts rather than Plaintiffs' well-pleaded allegations.  Because Defendants' motion ignores Plaintiffs' allegations and improperly relies on Defendants' own counternarrative—contrary to the ordinary standards for a motion to dismiss—it should be easy for the Court to deny the motion and defer ruling on Defendants' threshold issues, thus resolving Defendants' concern that discovery wait until the motion's resolution.

If, however, the Court believes Defendants' motion to dismiss is the appropriate vehicle for considering Defendants' threshold arguments based on Defendants' alternate narrative and references to "matters outside the pleadings," then that motion should not be resolved without Plaintiffs receiving a "reasonable opportunity to present all the material that is pertinent."  Fed. R. Civ. P. 12(d).  Because the "standing issue . . . is very wrapped up with the merits issues," Status Conf. Tr., 67:3–4, Mar. 11, 2026, Dkt. 31, if the Court does not simply deny the motion to

7

dismiss, the most efficient course would be what the Court has already described: discovery first, with combined summary judgment and motion to dismiss proceedings to follow after discovery. *Id.* at 67:25–68:2.

Defendants cannot have it both ways; if they want the motion to dismiss to be resolved on the basis of unreliable factual allegations that directly contradict those set forth in Plaintiffs' complaint, the pendency of that motion cannot preclude Plaintiffs from discovery to contradict those allegations. To the contrary, when a motion to dismiss is filed only after other proceedings have revealed the parties' legal arguments, the motion's pendency no longer counsels against discovery. Pls.' Mot. 7–8, Dkt. 51; *AFL-CIO*, 349 F.R.D. at 253. And where, as here, Defendants' motion to dismiss (improperly) "rest[s] on facts outside the pleadings, . . . discovery [is] both beneficial and necessary." *AFL-CIO*, 349 F.R.D. at 253 n.6. Defendants offer no response to that point, instead repeatedly incanting the general principle that a pending motion to dismiss ordinarily delays discovery. Plaintiffs have never suggested otherwise—Plaintiffs simply argue that the general rule is inapplicable here.[3]

Defendants' cited authorities in support of this general principle all address cases where defendants (properly) sought to dismiss complaints on the basis of allegations in the complaint. The motions to dismiss in those cases only "involve[d] an examination of the face of the complaint," and therefore did "not depend upon discovery." *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987). *See also In re United States*, 583 U.S. 29 (2017) (district court should

---

[3] Even in the ordinary course, the pendency of a motion to dismiss does not definitively preclude discovery but is only one factor to consider. "The mere possibility that [a] . . . defendant may defeat a complaint at a later stage is not a legitimate reason to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211 (D.C. Cir. 2020). *See also, e.g.*, *Garnett v. Zeilinger*, No. 17-cv-01757, 2017 WL 8944640, at *2–3 (D.D.C. Dec. 15, 2017) (granting expedited discovery before a motion to dismiss was even filed because other considerations "outweighed" the early stage of the case).

resolve purely legal argument that decision to rescind program was committed to agency discretion before requiring administrative record for recission); *In re Papandreou*, 139 F.3d 247 (D.C. Cir. 1998) (district court should resolve purely legal arguments regarding whether a cause of action belonged to a corporation or its sole shareholder, forum non conveniens, act of state doctrine, and personal jurisdiction before allowing depositions); *Friends of the Earth v. U.S. Dep't of Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (denying discovery when only dispute was purely legal question of whether undisputed action constituted final agency action); *In re Musk*, No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) (staying discovery pending resolution of a motion to dismiss in which, by the plaintiffs' own characterization, defendants "have not raised any issues of fact." Mem. In Opp to Pls.' MTD 5, *New Mexico v. Musk*, No. 1:25-cv-00429 (D.D.C. Mar. 14, 2025), Dkt. 64). Defendants' motion here, in which they ask the Court to resolve a motion to dismiss on the basis of (purported) facts that contradict the allegations in the complaint, bears no resemblance to those authorities.

      B.      <u>The Remaining Reasonableness Factors Favor Granting Plaintiffs' Motion</u>

The remaining reasonableness factors likewise support expedited discovery, as Plaintiffs' requested discovery is narrowly tailored to promote resolution of the pending motion for preliminary injunction while minimizing the burden to Defendants.

      1.    <u>Breadth of Plaintiffs' Proposed Discovery</u>

First, Plaintiffs' discovery requests are "narrowly tailored to reveal information related to the preliminary injunction," *Musk*, 770 F. Supp. 3d at 199 (quoting *Guttenberg*, 26 F. Supp. 3d at 98), and are not an effort "to circumvent the normal litigation process,' *id.* (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005)). Plaintiffs' proposed requests are carefully crafted to obtain limited information specifically relating to the decision to overhaul East Potomac. They include searches of Defendants' systems for specific search terms unlikely

9

to appear in connection with any of Defendants' work other than the overhaul of East Potomac, correspondence with entities connected to Defendants only in direct relation to the overhaul of East Potomac, specific information about testing of the debris dumped at East Potomac, and information about meetings that specifically concerned the overhaul of East Potomac. Defendants reflexively describe those requests as overbroad but do not explain the basis for that characterization. Nor could they. The "more than twenty phrases" Plaintiffs identify as search terms include terms like "Fazio," "Walter Travis," and "Ben Crenshaw." Unless Defendants are actually overhauling *two* Walter Travis courses with the assistance of prominent golf course architects Fazio and Crenshaw, these terms simply will not cover any documents or communications other than those related to the overhaul of East Potomac.[4] Moreover, while Defendants object to discovery of communications with third parties not named in the complaint, communications between Defendants and the various people and entities responsible for designing and financing the overhaul of East Potomac are self-evidently relevant to establishing that the decision to conduct that overhaul has been made.

Defendants also broadly invoke executive and deliberative process privilege, but they fail to explain why those privileges would apply to any particular discovery request. Such "general privilege assertions cannot preclude discovery." *Musk*, 770 F. Supp. 3d at 201–02. While Defendants of course "may assert privilege claims on a case-by-case basis," including through provision of a standard privilege log, the mere existence of the privilege "does not mean it

---

[4] Of Plaintiffs' "more than twenty phrases," the term most likely to produce results unrelated to the overhaul of East Potomac is perhaps the phrase "East Potomac" itself, as it might produce results related to other operations of East Potomac Park. Not even Defendants could seriously argue that a search for "East Potomac" is overbroad in a case concerning debris dumping on, and the overhaul of, East Potomac Golf Course within East Potomac Park.

applies." *Id.* at 201.  In fact, neither privilege is likely to apply broadly to the records Plaintiffs seek.

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*."  *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (Ginsburg, J.) (emphasis in original).  The privilege exists to "shelter[] material implicating officials' exercise of judgment about policy matters."  *Id.* Defendants have offered no reason to believe that the internal correspondence Plaintiffs seek would be predominantly or even substantially deliberative, as opposed to ordinary workaday communications about the overhaul of East Potomac and the testing (or lack thereof) of debris. For instance, while a memo recommending adoption of the Washington National Plan may be subject to deliberative process privilege, internal correspondence directing or describing implementation of that decision—and referencing the existence of the decision—would not.

Defendants also state that Plaintiffs seek "documents prepared for the President that would be subject to executive privilege."  Defs.' Br. 23.  But the privilege for presidential communications has limited bearing here.  While it could apply to documents reviewed directly by the President or his advisers, those documents would constitute only a small fraction of the documents prepared for or as a result of meetings with the President or members of the Executive Office of the President.  And "[n]ot every person who plays a role in the development of presidential advice . . . can qualify for the privilege.  In particular, the privilege should not extend to staff outside the White House in executive branch agencies." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997).  Accordingly, even assuming the existence of documents or communications responsive to Plaintiffs' requests that were prepared in connection with meetings that included the President or members of the Executive Office of the President, any

11

such documents and communications that were not actually shared or presented, and any notes taken by attendees from the Department of Interior of the National Park Service, would not be covered by the privilege.[5]   Questions of privilege are thus best addressed on a document-by-document basis and cannot preclude discovery altogether.

### 2.   Purpose of Proposed Discovery

Second, Plaintiffs seek expedited discovery for the permissible purpose of "support[ing] their . . . preliminary injunction motion." *Musk*, 770 F. Supp. 3d at 199.  "Courts in this jurisdiction . . . have consistently found that preliminary injunction proceedings are exactly the kind of circumstance warranting expedited discovery. . . particularly so when the requested information is unavailable from other sources and within Defendants' exclusive control." *Id.* Defendants' only answer is to once again dispute the inadequacy of the record they provided. But the record on the decision to overhaul East Potomac is, due solely to Defendants' refusal to provide it, non-existent, and the record on dumping is too bare for effective judicial review.  *See supra*, Sec. I.

The discovery Plaintiffs seek regarding the adoption of the Washington National Plan maps precisely onto questions that the Court must answer to resolve Plaintiffs' preliminary relief motion with regard to the Plan: did Defendants make a final decision to adopt the Washington National Plan?  Will that final decision cause imminent injury and irreparable harm to Plaintiffs? And do the contours of the Plan violate the Organic Act and trigger NEPA and NHPA

---

[5] If the Court believes that any of Plaintiffs' proposed requests are not sufficiently narrow, the parties can negotiate to narrow them, as is common in discovery.  Absent agreement, the Court can easily exclude or narrow them, or instruct Plaintiffs to do so, rather than foreclosing other appropriate discovery.  And since Defendants view this factor as weighing against discovery "more than any other," Defs.' Br. 24, such modifications—if they are even needed—should address the bulk of Defendants' purported concerns about reasonableness.

obligations?  Defendants do not dispute that Plaintiffs' requested discovery would therefore be dispositive of the pending motion for preliminary relief with regard to the Washington National Plan.  *See* Pls.' Mot. 8–9.  Instead, Defendants simply argue that Plaintiffs are not entitled to discovery to support standing "at the motion to dismiss stage."  Defs.' Br. 17.  But Defendants miss the point of Plaintiffs' proposed discovery (and underscore the extent to which the motion to dismiss merely disputes the accuracy of the complaint's allegations).  Plaintiffs expressly seek discovery in support of their motion for preliminary relief; any benefit to the resolution of the motion to dismiss would be incidental to Plaintiffs' purpose in seeking discovery.  Where "defendants' motion to dismiss . . . rest[s] on facts outside the pleadings, . . . discovery [is] both beneficial and necessary."  *AFL-CIO*, 349 F.R.D. at 253 n.6.

Defendants also suggest that Plaintiffs have suffered no injury since filing their motion and therefore need no preliminary relief on the Washington National Plan or attendant discovery.  This ignores the fact that Plaintiffs have in fact suffered ongoing injury from the continued presence and dumping of contaminated debris on East Potomac Golf Course and ongoing procedural injuries.  It also ignores the fact that Defendants have continued publicly implementing the plan to overhaul East Potomac.

Defendants repeatedly observe that Plaintiffs seek information that postdates Defendants' decision to overhaul East Potomac, which they assert would not ordinarily be included in an administrative record.  But *extra-record* discovery generally involves material that would not be included in an administrative record, and such discovery is justified here, where Defendants not only obscure the exact contours of their final agency action, but deny its very existence and, on that basis, withheld from the administrative record any evidence at all concerning the Washington National plan.  In the face of such denials, Plaintiffs can only infer the existence and

13

contours of Defendants' decision from its subsequent implementation. *See supra,* Sec. I. *Ex post* evidence of the implementation of a final decision would show final agency action that definitively confirms Plaintiffs' allegations (in spite of the insufficient declarations to the contrary) and would allow the Court and Plaintiffs to more precisely ascertain the contours of Defendants' decision. Such evidence is also relevant to the imminence of Plaintiffs' injury and irreparable harm, which Defendants have disputed in opposing Plaintiffs' motion for preliminary relief.

Discovery into the extent of contamination of the dirt stockpile is similarly appropriate because the present record will not allow the Court, in considering Plaintiffs' motion for preliminary relief, to fully assess the injury and the ongoing irreparable harm posed by the contaminants and other dangerous substances in the stockpile, nor will it allow for a proper consideration of Plaintiffs' likelihood of success on the merits of their NEPA claims concerning the dumping.

Plaintiffs have alleged since the outset that the dirt is full of dangerous metals, *see, e.g.* Compl. ¶ 81, Dkt. 1, which endanger and continue to endanger Plaintiffs, and Plaintiffs have argued that the government's characterization of the debris as "clean fill" was incorrect and could not justify Defendants' use of a categorical exemption to evade their NEPA obligations. *See*, *e.g.*, Mem. in Supp. of Pls.' Mot. 34, Dkt. 8-1. In response—as with everything else Plaintiffs have alleged and argued—Defendants simply say "that's not true," and repeat, even in the face of their own contrary lab results, that the debris is clean.

But the results—which Defendants provided only after instruction from this Court, *contra* Defs.' Br. 19 (Defendants "volunteered" to provide the results)—tell a different story. The debris Defendants dumped is undisputedly contaminated. But to assess how contaminated and

14

how unsafe it is, including by comparison to the pre-existing environment, Plaintiffs reasonably need to (1) test the first week-plus of dirt which was dumped on East Potomac and undisputedly never tested; (2) understand the basis for Defendants' baseline levels of comparison; and (3) account for sampling and testing protocols which may have skewed the data to suggest lower levels of contamination than actually exist.[6]

Defendants recognize that Plaintiffs' proposed discovery into the dirt pile is relevant, at a minimum, to Plaintiffs' injury, but they contend the injury is too speculative.  Defs.' Br. 19. Defendants once again misunderstand the nature of Plaintiffs' motion and the standards governing their own motion to dismiss.  Plaintiffs do not need to bolster their showing of injury to defeat the motion to dismiss: the complaint alleges sufficient facts to establish standing, and that is all that matters.[7]  And contrary to Defendants' unsupported assertion, Plaintiffs can permissibly seek extra-record discovery concerning injury in connection with their motion for preliminary relief.  *AFL-CIO*, 349 F.R.D. at 253 n.6.  Plaintiffs' requested discovery into the debris pile and its contamination would also go directly to Plaintiffs' likelihood of success on the merits of their NEPA claim, as it would conclusively resolve the question of whether Defendants' categorical exemption was appropriate, accurate, and adequate.

---

[6] The additional documents Defendants filed yesterday afternoon only underscore the uncertainty surrounding the contamination of the debris pile.  Defs.' Notice, Dkt. 55.  Defendants' "Final Sampling Report" does not dispute that Defendants failed to test debris for over a week when they began dumping it at East Potomac, and Defendants' "Data Validation Summary" reveals testing irregularities, including a sample being tested despite having been stored above acceptable temperature and asbestos testing of a sample being canceled because the sample was submerged in water.

[7] The complaint alleges that the debris pile is contaminated—and that allegation must be treated as true in resolving Defendants' motion to dismiss.  But even setting aside the factual dispute the motion to dismiss introduced on that point, Plaintiffs have separately established standing through injury to their aesthetic interests to challenge the debris dumping and storage.  Compl. ¶¶ 18–20, 146, 153.

As Plaintiffs explained in their motion for discovery, the information Defendants have already provided about testing is insufficient to assess whether the contaminated debris at East Potomac poses a substantially increased risk of harm. Defendants have sought refuge in the alleged similarities between contaminant levels in the dumped debris and background levels in soil already present at East Potomac. But the available information does not allow the Court, Plaintiffs, or Plaintiffs' experts to assess whether those levels are in fact similar or whether the debris poses an increased risk of harm sufficient to constitute injury to Plaintiffs. Plaintiffs have identified the information they seek to be able to make those assessments, including: information about the calculation of background levels and the selection of background samples, information about testing gaps, and information about contaminant levels in untested debris. Defendants note that Plaintiffs have not moved to supplement the administrative record with this information, but Defendants would presumably also argue that the information (which Defendants cannot seriously deny exists) would not properly be included in the administrative record anyway. *See* Status Conf. Tr., 14:24–15:15, Apr. 9, 2026, Dkt. 35 (Defendants do not consider testing results to be part of the administrative record and view them as subject to a motion for extra-record discovery). Plaintiffs' motion for extra-record discovery avoids a sideshow disagreement over whether that information should have been included in the administrative record in the first instance.[8]

---

[8] Defendants claim to "have agreed to provide post-decision data and testing results," which they "are not required to produce as part of their administrative record." Defs.' Br. 1. To the extent the data and testing results are "post-decision[al]," it confirms that Defendants neither conducted nor considered test results or soil analysis data before deciding to dump the demolition debris from the East Wing—which they have elsewhere conceded contains asbestos, *see* Suppl. Mem. Ex. A ¶ 9, *Nat'l Trust for Historic Pres. v. Nat'l Park Serv.*, No. 25-cv-4316 (D.D.C. Mar. 31, 2026), Dkt. 30-1— on the course. This in itself constitutes a failure on Defendants' part to comply with their obligations under NEPA. *See Robertson v. Methow Valley Citizens Council,*

16

Defendants otherwise suggest that Plaintiffs' discovery requests are insufficiently focused on soil testing results. This is incorrect: Plaintiffs seek an admission of a testing gap, correspondence and analysis regarding testing of the debris both at the East Wing and at East Potomac, and entry onto land to access and test debris that Defendants apparently never tested. Nor is it relevant whether Plaintiffs' requests primarily concern testing results; Plaintiffs are free to strike the balance of their discovery request among issues as Plaintiffs see fit.

### 3.   Burden on Defendants' of Compliance

Finally, the benefit of discovery "outweighs the burden here." *Musk*, 770 F. Supp. 3d at 202. Each search Plaintiffs propose is likely to produce only a small volume of documents, the vast majority of which will be directly relevant to the issues for which Plaintiffs seek discovery, and Defendants offer no reason to expect that wide swaths of responsive documents will be subject to privilege. Plaintiffs' document requests, in short, are not appreciably more burdensome than ordinary FOIA requests. Plaintiffs' proposed requests for admission are similarly narrow in scope (seeking only admissions about whether Defendants reviewed or approved a single specific document, entered into a specific agreement with a specific third party, and conducted soil testing on debris from the East Wing of the White House during a specific eight-day period), as are Plaintiffs' interrogatories (which request lists of attendees at a single meeting and a single golf course walkaround). Defendants offer no basis to think complying with those narrow requests would be unduly burdensome. Defendants also make no attempt to describe Plaintiffs' requested entry on land as burdensome, nor do they identify any burden posed to Defendants by third-party subpoenas. All discovery imposes *some* burden, but

---

490 U.S. 332, 350 (1989) (explaining that NEPA's procedures require agencies to take a "hard look" at environmental consequences before committing to a course of action (citation omitted)).

17

Defendants have made no effort to show that the burden of this proposed discovery is extraordinary or unusual, and this Court should not preclude necessary discovery to spare Defendants the ordinary burden of discovery.[9]

### III.    Defendants' suggestions for alternate resolution are inadequate.

Defendants suggest two alternatives to discovery if the Court denies their motion to dismiss.  Neither is remotely adequate.

First, Defendants suggest that, if the Court requires further information to assess whether Defendants have made a final decision to overhaul East Potomac, the Court can rely on Defendants' declarations that say they have not.  Those declarations, however, have been undermined at every turn.  For instance, the April 30 declaration of Comptroller Bowron indicated that NPS had not procured any design services for the overhaul of East Potomac, that procuring such services would require compliance with the federal procurement process, and that design services would entail extensive procedural safeguards.  Suppl. Decl. of Jessica Bowron ¶¶ 9–12, Dkt. 38-2.  Eleven days later, Defendants and others—including Tom Fazio, the course designer for the overhaul of East Potomac—announced the overhaul of the course, Notice Ex. A, Dkt. 49-1, and three days after that, Secretary Burgum unveiled Fazio's design for the overhaul, Notice Ex. A, Dkt. 50-1.  Unless Defendants completed procurement in eleven days, and all of the procedural safeguards in three days (during which Tom Fazio also designed a championship course from scratch), Comptroller Bowron's declaration should not be taken at face value.

Defendants finally suggest, Defs.' Br. 26, that if the Court denies their motion to dismiss, the Court can remand back to NPS for compliance with NEPA and Section 106 of NHPA.  If

---

[9] As with the third reasonableness factor—breadth of requests—if the Court believes that Plaintiffs' requests pose an undue burden, "courts are permitted to narrow discovery requests to minimize burdens on the Executive," *Musk*, 770 F. Supp. 3d at 202, and could modify Plaintiffs' requests rather than foreclosing discovery entirely.

Defendants are in fact prepared to agree to immediately undertake the required Environmental Impact Statement and full Section 106 review without further merits proceedings should the Court deny their motion to dismiss—and agree to take no further steps toward implementing the Washington National Plan in the interim—Plaintiffs would agree to hold in abeyance the portions of their discovery motion that relate to the decision to adopt and implement the Washington National Plan.[10]  If, however, Defendants would, as Plaintiffs suspect, instead engage in further merits defense after the denial of their motion to dismiss, their proposed "solution" solves nothing.  Plaintiffs would still need to prevail on preliminary relief and/or final judgment to force Defendants' legal compliance and would therefore still be entitled to expedited discovery to do so.

## CONCLUSION

This Court should grant Plaintiffs' motion for expedited discovery and grant Plaintiffs leave to serve their proposed discovery requests upon Defendants and to serve their proposed third-party subpoenas.

---

[10] Even in that circumstance, Defendants' proposed "solution" would not address Plaintiffs' claims concerning the dumping, and Plaintiffs would still seek discovery relevant to their motion for injunctive relief on those claims.  Nor would the "solution" bear in any way on Plaintiffs' claims under the NPS Organic Act and the 1897 Act establishing East Potomac Park.

Dated: June 25, 2026                                    Respectfully Submitted,

Abbe David Lowell (Bar No. 358651)                     */s/Mark B. Samburg*
Caleb Hayes-Deats (Bar No. 1643213)                    Will Bardwell (Bar No. 90006120)
Jack Bolen (Bar No. 90031046)                          Mark B. Samburg (Bar No. 1018533)
Angela Reilly*                                         Catherine M.A. Carroll (Bar No. 497890)
LOWELL & ASSOCIATES, PLLC                              Robin F. Thurston (Bar No. 7268942)
1250 H Street, N.W., Suite 250                         DEMOCRACY FORWARD FOUNDATION
Washington, DC 20005                                   P.O. Box 34553
T: (202) 964-6110                                      Washington, D.C. 20043
F: (202) 964-6116                                      (202) 448-9090
adlowell@lowellandassociates.com                       wbardwell@democracyforward.org
chayes-deats@lowellandassociates.com                   msamburg@democracyforward.org
jbolen@lowellandassociates.com                         ccarroll@democracyforward.org
areilly@lowellandassociates.com                        rthurston@democracyforward.org

Norman L. Eisen (Bar No. 435051)                       *Counsel for Plaintiffs*
Lindsay Zimliki (Bar No. 475890)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
lindsay@democracydefenders.org

*Admitted *pro hac vice*