**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>*Defendants*. | Civil Action No. 1:26-cv-477 |

**DEFENDANTS' MOTION TO DISQUALIFY**
**JUDGE ANA C. REYES AND TO AUTHORIZE RELEASE OF HEARING AUDIO**

Fair proceedings free from partiality are essential to the integrity of the judiciary, and there is an urgent need to curtail ongoing improper judicial encroachments on the appropriate, lawful activities of the Executive Branch. In light of Judge Reyes's actions here and in other high-profile litigation involving the Trump Administration, no reasonable observer could consider Judge Reyes sufficiently impartial to adjudicate this case.

While Judge Reyes has claimed she has "given the government every single benefit of the doubt," 10/9 Hearing Tr. 3:19–20, in reality she has hamstrung the Government's legitimate attempts to maintain East Potomac Park from the outset. While Judge Reyes formally declined to enter any order against the Government until this week, in May she effectively granted Plaintiffs veto power over any significant maintenance at the Park. *See id.* at 4:10–14 (explaining that, in May, Judge Reyes told the Government, "if anyone orders big things to show up" at the Park, "and by 'big things,' I mean anything, you know, more than my sedan – then I want plaintiffs to have notice.").

To name just a few examples of bias, Judge Reyes has unfairly questioned Trump Administration attorneys' intelligence, allowed her disdain for the Trump Administration to influence how hearings unfold, and systematically disregarded basic separation of powers principles and Article III constraints on judicial authority. *See, e.g.*, Tr. 20:7–21:18, 137:5–9; Kyle Cheney, (@kyledcheney), X (Oct. 12, 2026 at 12:16 PM) ("R[eyes] is yelling now. . . . We're fact-finding in real time now.").

Accordingly, to ensure that these proceedings are free from any suggestion or appearance of partiality, Defendants move to disqualify Judge Reyes under 28 U.S.C. § 455(a). Defendants respectfully submit that this matter should be transferred to another district court judge—one who has not demonstrated open hostility towards Defendants by prejudging the outcome of motions that are yet to be filed, summoning witnesses with no notice on federal holidays, calling witnesses to appear to testify at hearings on motions that have yet to be filed, and for violating the basic norms that a judge be a fair, neutral, and impartial arbiter applying the law to facts before the Court. Judge Reyes's histrionics in prior hearings have clearly demonstrated she is no longer impartial. In addition, to allow the American people to fully appreciate Judge Reyes's animosity for the Trump Administration (beyond just what is revealed in a cold transcript) the Court should release the October 12, 2026, hearing audio.

## LEGAL STANDARD

Recusal is mandatory where a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[T]he question is whether a reasonable and informed observer would question the judge's impartiality." *Stone v. U.S. Embassy Tokyo*, 2020 WL 5653699, at *1 (D.D.C. 2020) (quotation omitted); *see also SEC v. Loving Spirit Found.*, 392 F.3d 486, 493 (D.C. Cir. 2004).

The touchstone for recusal under Section 455(a) is "not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 865 (1988)). Thus, "any doubts must be resolved in favor of recusal." *Id*.; *see also Parker v. Connors Steel Co*., 855 F.2d 1510, 1524 (11th Cir. 1988) ("It has been stated on numerous occasions that when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification."). The Supreme Court has explained that remarks by a court may constitute a basis for recusal if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

## DISCUSSION

Judge Reyes's behavior in this case is nothing short of egregious. And her misconduct in other high-profile litigation involving the Trump Administration only confirms that she cannot serve as an impartial arbiter of the issues in this case.

### I. JUDGE REYES'S MISCONDUCT IN THIS CASE DEMONSTRATES A LACK OF IMPARTIALITY.

At a hearing Judge Reyes convened on Columbus Day, Judge Reyes repeatedly belittled and shouted at the attorney appearing on behalf of the United States in an unorthodox and regrettable show of judicial impropriety. For example, Judge Reyes berated government counsel by asking her whether she had an e-mail account or cell phone, with full knowledge that all such government employees (and indeed most every American adult) have access to such communication technologies. Tr. 8:3–10. In what can only be described as a personal and pernicious attack on counsel, Judge Reyes implied that counsel's actions had caused her to

question whether *any* government lawyer can act in good faith going forward. Tr. 12:2–11. She also made aggressive interjections, for example: "I don't care if you had any details," Tr. 6:20; "I don't care about a filing," Tr. 8:16; and "No, you did not do your best. You did your absolute worst; you did your absolute worst," Tr. 10:20-21.

When one witness explained that, in certain discussions he had with his colleague, "we were just discussing in hypotheticals," Judge Reyes sarcastically injected, "Oh I'm sure you were." Tr. 84:22. When another witness was called to the stand, Judge Reyes gleefully uttered "Oh, we're going to ask some questions, certainly." Tr. 15:25. Later, when a witness said he would have to think about a probing question before offering a fulsome response, Judge Reyes replied, "I've got all the time in the world, sir. Why don't you sit and think about it, and then name one for me." Tr. 113:15–16. Judge Reyes also openly questioned counsel's *ability* to tell the truth, Tr. 135:17–25, going so far as to say that "the government can't be trusted," Tr. 132:20. Such implications of lack of candor to the Court should not be made lightly, jokingly, or sarcastically, and they are certainly improper where, as here, counsel fulfilled her duty of candor to the Court by being honest and making arguments in defense of her client. Notably, all of this concerned the government's performance of authorized tree maintenance in East Potomac Park.

Judge Reyes also referred to herself and Plaintiffs' counsel as "we," praising the quality of Plaintiffs' counsel's and her own questions. *See* Tr. 137:5–9. Meanwhile, in response to government counsel's reasonable request for no further evidentiary hearings, Judge Reyes suggested that government counsel's supposed lack of understanding of the issues in this case (and, to be clear, counsel, as Deputy Chief of the Natural Resources Section, is an expert in the issues in this case) was detrimental to the United States. *See id.* ("If you don't understand the relevance of the questions we're asking, the government has a much bigger problem than I understood it to

have. Because I was pretty careful about the questions I asked, and I'm quite confident plaintiffs' counsel was careful about the questions they asked.").

Judge Reyes's inappropriate outburst and remarks prompted the Acting Deputy Attorney General to issue a public statement in support of counsel for Defendants. *See* Acting Deputy Attorney General Trent McCotter (@PADAGMcCotter), X (Oct. 12, 2026 at 6:45 PM) ("The Department of Justice is proud to have attorneys—like the one here—who keep their poise and respectful demeanor, even in the face of judges who unfortunately fail to reciprocate. The ethics canons require judges to maintain an appropriate temperament; a few fall far short."); *see also* Gabe Whisnant & Dan Gooding, *Judge Screams at Trump Officials for Abruptly Cutting Down 500 Trees in DC*, Newsweek (Oct. 12, 2026), https://www.newsweek.com/judge-trump-officials-trees-dc-east-potomac-golf-course-12556145 ("U.S. District Judge Ana Reyes repeatedly raised her voice during a hearing over work at East Potomac Golf Links, where the National Park Service has begun removing trees as part of the administration's renovation plans."); Scott MacFarlane, @MacFarlaneNews, X (Oct. 12, 2026 at 10:11 AM) ("Court rules prohibit me from sharing audio of this hearing. But I've never heard a judge scream at full voice at a lawyer before. Not like this. Trump Admin lawyer is getting excoriated.").

Appendix A to this Court's Local Civil Rules incorporate the D.C. Bar's "Principles of General Applicability: Lawyers' Duties to other Counsel, Parties, and the Judiciary." Local Civ. R. App. A. Those principles also set forth "Judges' Duties to Lawyers," including the following:

- "We will be courteous, respectful, and civil to lawyers, parties, and witnesses. We will maintain control of the proceedings, recognizing that judges have both the obligation and the authority to ensure that judicial proceedings are conducted with dignity, decorum, and courtesy." Local Civ. R. App. A ¶ 34.

- "We will not employ hostile, demeaning, or humiliating words in opinions or in written or oral communications with lawyers, parties, or witnesses." Local Civ. R. App. A ¶ 35.

Judge Reyes has obviously breached both of those duties which judges are tasked with enforcing.

In addition, Judge Reyes has engaged in improper conduct blending aggression with systematic disrespect for a coequal branch of Government. When one of the Government's witnesses testified, in response to one of Judge Reyes's questions, that he had spoken with Frank Lands, the Deputy Director of the National Park Service, Judge Reyes interjected and said: "All right. I'm ordering Mr. Lands to appear at this hearing. . . . Get him on here ASAP." Tr. 20:17–19. She continued, "I'm sorry, Did you get that, Counsel? . . . You had better figure out how to get him on the phone. . . . that is not a suggestion. That's an order. I want him on this phone as soon as possible." *Id.* at 20:22–21:18. The Government secured Mr. Lands's presence and testimony that day notwithstanding the lack of any urgency justifying a hearing, and notwithstanding the fact that it was a federal holiday and he had to dial in from his car. *Id.* at 77. In other words, Mr. Lands was forced to testify under oath, under the penalty of perjury, and without having *any opportunity whatsoever* to reasonably prepare or consult with counsel—all from his vehicle, on a federal holiday. *See United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (explaining that all parties "are entitled to prepare their witnesses").

After the hearing, where she ordered the presence of NPS's Deputy Director with no notice, Judge Reyes entered a new order compelling the presence of two additional high-level executive officials—Gregory Wischer, the Secretary of the Interior's Deputy Chief of Staff for Policy, and Jessica Bowron, the Acting Director of the National Park Service—at a preliminary injunction hearing this Monday, October 19 at 10:00 am. *See* Oct. 12 Minute Order, Case No. 1:26-cv-00477

(D.D.C.). But Plaintiffs had made no request. Nevertheless, Judge Reyes directed Mr. Wischer and Ms. Bowron to appear at the hearing and to "be prepared to present sworn testimony," but her order gave no indication of what topics the officials should be prepared to address, nor did she provide any analysis of why either official's presence was necessary. *Id.* Judge Reyes maintained this aggressive approach even after the United States complied in good faith with her unprecedented demand for the same-day live testimony of a high-level government employee on a federal holiday. *See* Tr. 20:7–21:18; *see also id.* at 77:15–25. And she has now clarified that while one of the witnesses may appear remotely, Mr. Wischer and Ms. Bowron (and, as of this afternoon, a third witness, Dr. Griess) must appear in person. *See* Oct. 15 Minute Order, Case No. 1:26-cv-00477 (D.D.C.); Oct. 16 Minute Order, Case No. 1:26-cv-00477 (D.D.C.).

By insisting on forcing high-level Trump Administration officials to appear in her courtroom without adequate time to prepare, Judge Reyes demonstrates a cavalier disregard for these officials' valuable time, as well as a blatant disregard for black-letter separation of powers principles she should be aware of as a federal judge. *See In re Musk*, 169 F.4th 445, 449 (4th Cir. 2026) (barring depositions of Elon Musk, Deputy Administrator of USAID, and Undersecretary of State because "[d]eposing high-ranking officials is a measure of last, not first, resort"). As the D.C. Circuit has made clear, "[t]he duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (granting petition for writ of mandamus and quashing deposition notice seeking testimony from Vice President's chief of staff); *see also Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (upholding ALJ's decision to strike party's request for testimony from "certain Department of Labor officials," including "the Solicitor of Labor, the Secretary's Chief of Staff," a "Regional Administrator," and an "Area

Director" because "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions"). This is a well-established principle which flows "obvious[ly]" from our constitutional separation of powers; "High ranking government officials have greater duties and time constraints than other witnesses," and if such officials were "asked to testify in every case," their "time would be monopolized by preparing and testifying in such cases." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993).

Here, Judge Reyes has simply gone ahead and entered an order compelling the presence and testimony of a cabinet agency's Deputy Chief of Staff and the Director of NPS. That order does not even attempt to demonstrate a compelling need, nor does it provide any explanation of why she is unable to obtain the information she deems relevant from witnesses that have already been made available. From what the United States has been able to gather, Judge Reyes's basis for compelling these witnesses appears to be that she has "not yet heard from" them, ECF No. 79 at 15 (Memorandum Opinion on TRO Motion), and that they may have relevant knowledge, Tr. 135:12–25. But "[t]he fact that plaintiffs" or Judge Reyes "may need the information and that [high-level officials] may have [important] firsthand information about the identity of decisionmakers and the timing of decisions is not, by itself," a basis to compel testimony from such officials. *In re Musk*, 169 F.4th at 448–49. "If it were, the limitation on deposing high-ranking government officials would be no limit at all." *Id.* at 449.

Judge Reyes's systematic disregard for Trump Administration officials' demanding schedules is further evidence of her inability to render impartial justice in this case.

## II. JUDGE REYES'S MISCONDUCT IN OTHER HIGH-PROFILE LITIGATION INVOLVING THE TRUMP ADMINISTRATION DEMONSTRATES A PATTERN OF ANIMUS AGAINST THE ADMINISTRATION.

Judge Reyes's conduct in this case continues a pattern of animus against the Trump Administration. At hearings in *Talbott v. Trump*, No. 25-cv-00240 (D.D.C. 2025), Judge Reyes exhibited similar behavior.[1] In that case, which concerned a challenge to Executive Order 14183, *Prioritizing Military Excellence and Readiness*, 90 Fed. Reg. 8757 (Feb. 3, 2025), Judge Reyes stated that "this executive order is premised on an assertion that's not biologically correct. There are anywhere near about 30 different intersex examples. So, someone who does not have just an XX or XY chromosome is not just male or female; they're intersex. And there are over 30 potential different intersex examples." *Id.* (quoting portions of February 18, 2025 hearing transcript). She also accused the Administration of "literally erasing transgender people." *Id.*

Judge Reyes then asked counsel for the government what "Jesus would say to telling a group of people that they are so worthless, so worthless that we're not going to allow them into homeless shelters? Do you think Jesus would [say], 'Sounds right to me?' Or do you think Jesus would say, 'WTF? Of course, let them in?'" *Id.* She then used counsel for the government as a prop, saying "I made a change to my standing order when I was in the back. My new standing order says that no one who has graduated from UVA Law School can appear before me. So, I need you to sit down, please. I need you to sit down." *Id.* When counsel complied with this directive, Judge Reyes continued her hypothetical about UVA law graduates being banned from her courtroom because "they're all liars and lack integrity." *Id.* And just this week, at a status conference in *Talbott*, Judge Reyes made fun of Secretary of War Pete Hegseth while threatening

---

[1] *See* Complaint Against United States District Court Judge Ana C. Reyes, available at https://fingfx.thomsonreuters.com/gfx/legaldocs/xmvjjokmjvr/JUDICIARY_REYES_COMPLAINT_complaint.pdf.

to compel his deposition testimony, stating: "I am very aware that he is the secretary of [War] and has a lot of constraints on his time, but he has time to tweet, and he has time to put out videos, and he has time to speak to the generals." Christopher Wiggins, *Judge May Force Pete Hegseth to Testify Under Oath*, The Advocate, https://www.advocate.com/politics/national/pete-hegseth-transgender-slurs-deposition (Oct. 14, 2026).

Judge Reyes's conduct rises to the level of deep-seated and unequivocal antipathy toward the Trump Administration. In *Liteky*, the Court cited *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case, as an example of the kinds of statements that evidence such antagonism. The District Judge in that case allegedly said that German American "hearts are reeking with disloyalty" and said that he knew a bank robber who was now a soldier and that between the bank robber and the defendant, he preferred the bank robber. *Id.* at 28–29. Judge Reyes's temperament and statements display a similar disdain for the government and its counsel. She has screamed at full voice, suggested that the government was acting contrary to the will of Jesus, and accused counsel for the government of having done her "absolute worst," in addition to the statements described above.

**CONCLUSION**

The Trump Administration is entitled to a neutral forum and an adjudicator who is capable of maintaining the appearance of impartiality. Judge Reyes has demonstrated she cannot do that. For the reasons set forth above, to remove the appearance of partiality in these proceedings, Defendants respectfully request that Judge Reyes be recused from this case.

[SIGNATURE BLOCK NEXT PAGE]

Dated: October 16, 2026

Respectfully submitted,

/s/ *Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
Associate Attorney General
950 Pennsylvania Ave NW
Washington, DC 20530
202.514.9500
stanley.woodward@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7(m)**

Pursuant to Local Civil Rule 7(m) and this Court's Standing Order in Civil Cases, counsel for the United States has made a good-faith effort to determine whether there is any opposition to the relief sought. Plaintiffs oppose this motion.

/s/ *Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
Associate Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who appeared in this case.

/s/ *Stanley E. Woodward, Jr.*
STANLEY E. WOODWARD, JR.
Associate Attorney General