**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE et al.,<br>*Plaintiffs*,<br>v.<br>DEPARTMENT OF INTERIOR et al.,<br>*Defendants*. | Case No. 1:26-cv-00477-ACR |

# MEMORANDUM OPINION

For months, the Court has declined Plaintiffs' repeated requests to restrain the Government's activities at East Potomac Golf Course. Time and again, it has credited Government counsel's representations and refused to presume bad faith. The Government now seeks to disqualify the Court for bias.[1]

That is a serious charge. The Court answers it. With the record.

Consider:

**Claim:** "Judge Reyes has unfairly questioned Trump Administration attorneys' intelligence."[2]

**The Record:** Within minutes of the first hearing in this litigation, the Court praised Government counsel for filing "one of the more exceptional government briefs I have seen in

[1] Dkt. 86 at 1.

[2] *Id.* at 2.

three years on the bench."[3] The "writing was spectacular" and "the analysis was spot on."[4] Later to the same counsel: "[Y]ou know I have an immense amount of respect for you. I think at every single hearing I have said that I think you're doing an excellent job."[5]

**Claim:** Judge Reyes "has [] demonstrated open hostility toward[] [the Government] by prejudging the outcome of motions that are yet to be filed."[6]

**The Record:** Before October 11, Plaintiffs asked the Court for some form of relief nearly a dozen times. The Court denied each request.[7]

> **THE COURT:** I'm a pure pragmatist, which means I'm not going to do anything, anything, unless I feel like I have to do it and if there is [no] pragmatic solution. Otherwise, I'm going to step back, because I think that federal courts should not be involved in telling the Executive or Congress what to do unless we have to because the Constitution or the laws require us to. Which means I'm not going to step in and make [Government counsel] tell his client he can't do something before I think there is no turning back, before I think there has been an obvious violation of law, and before I think that they are committed to a course and there is no way to stop them.

July 3, 2026, Tr. 59.

**Claim:** Judge Reyes "has hamstrung the Government's legitimate attempts to maintain East Potomac Park from the outset."[8]

**The Record:** Between February 13, when this case was filed, and October 11, the Court had not barred the Government from taking any action in East Potomac, including tree removal.[9]

---

[3] March 11, 2026, Tr. 3.

[4] *Id.*

[5] July 2, 2026, Tr. 6.

[6] Dkt. 86 at 2.

[7] May 4, 2026, Tr. 12, 14, 16–17, 27; July 2 Tr. at 55–56, 59, 61, 91–92; Sept. 3, 2026, Tr. 10–13; *see* Dkt. 8; Dkt. 47; April 9, 2026, Tr. 17–18.

[8] Dkt. 86 at 1.

[9] Sept. 3 Tr. at 4–5.

So what happened? Not sudden onset bias. Instead, the Government decided to remove over 500 healthy, non-invasive trees from East Potomac Golf Course.[10] It waited until 4:55 p.m. on the Friday of a holiday weekend to give notice that it would begin removing trees within 15 hours.[11] It removed nearly 430 trees in one day and would have destroyed hundreds more but for a rain delay.[12] Plaintiffs moved for a temporary restraining order.[13] The Government opposed the motion.[14] The Court granted it.[15]

The Government takes issue with the Court's conduct during the October 12, 2026, hearing on the motion for a temporary restraining order.[16] Yes, the Court was "furious" and "beyond disappointed," and said as much.[17] But "[p]articularly in hard-fought litigation dealing with controversial issues, district judges must sometimes take strong actions and use strong words." *Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006).

The Government has not met its burden to demonstrate that the Court's actions and words demand disqualification.

Motion **DENIED**.

---

[10] *See* Dkt. 79 at 7.

[11] *See id.* at 8.

[12] *See id.* at 1 & n.2

[13] Dkt. 76.

[14] *See generally* Oct. 12 Tr. at 3–16, 128–39. The Government did not file a written opposition.

[15] Dkt. 79.

[16] After receiving the Government's recusal motion, the Court gave Plaintiffs an opportunity to respond. Min. Order (Oct. 16, 2026). They did. *See* Dkt. 90. The Court gave the Government an opportunity to respond to Plaintiffs' filing. Min. Order (Oct. 16, 2026). It did not.

[17] Oct. 12 Tr. at 9, 11.

## I. LEGAL STANDARD

28 U.S.C. § 455(a) provides that a "judge of the United States shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." The party moving for recusal carries a "heavy burden" of proof to show that the instant case qualifies as the "rare[] circumstance" where a judge has exercised "the degree of favoritism or antagonism required to warrant recusal." *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (cleaned up); *Liteky v. United States*, 510 U.S. 540, 555 (1994).

This is an objective inquiry made from the perspective of a reasonable observer "who is informed of all the surrounding facts and circumstances." *Perkins Coie LLP v. U.S. Dep't of Just.*, 775 F. Supp. 3d 431, 435 (D.D.C. 2025) (cleaned up). "In evaluating a motion for disqualification, courts in this district begin with the presumption that judges are impartial, then consider whether" the moving party has "demonstrate[d] by clear and convincing evidence that a judge has conducted h[er]self in a manner supporting disqualification."[18] *United States v. Trump*, 694 F. Supp. 3d 144, 149–50 (D.D.C. 2023).

Recusal is rare. Only in "truly extraordinary cases where . . . [a] judge's views have become so extreme as to display clear inability to render fair judgment" will courts grant a motion requesting recusal. *Cobell*, 455 F.3d at 332 (cleaned up). Because the requested relief is "extraordinary," the D.C. Circuit has cautioned that a disqualification motion "should not be lightly granted." *Trump*, 694 F. Supp. 3d at 150 (quoting *United States v. Pollard*, 959 F.2d 1011, 1023 (D.C. Cir. 1992)). Indeed, there is "as much 'obligation upon a judge not to recuse

[18] The Government cites out-of-circuit authority for the proposition that "any doubts must be resolved in favor of recusal." Dkt. 86 at 3 (citing *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)). The Government does not cite authority showing that rule governs here. Nor would it change the outcome if it did.

h[er]self when there is no occasion as there is for h[er] to do so when there is.'" *Id.* (quoting *United States v. Mitchell*, 377 F. Supp. 1312, 1325 (D.D.C. 1974)).

Recusal based on judicial statements is rarer. As the Supreme Court explained in *Liteky v. United States*, a judge's in-court statements reflect "what the [Court] learn[s]" from the "facts introduced or events occurring in the course of the current proceedings." 510 U.S. at 541 n.1, 555. Judges must judge. Which is why statements germane to jurists do not amount to disqualifying bias. Those include "expressions of impatience, dissatisfaction, annoyance, and even anger." *Id.* at 555–56. And "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556. The list goes on. *See Trump*, 694 F. Supp. 3d at 156 (collecting authority).

Recusal, when proper, promotes public trust in the judiciary. But a court cannot permit "a disqualification motion [to be] a procedural weapon to harass opponents and delay proceedings." *United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001).

## II. DISCUSSION

The Government's motion attacks the Court's ability to rule impartially. In its view, the Court has exhibited "a deep-seated favoritism [and] antagonism that [makes] fair judgment impossible." Dkt. 86 at 3 (quoting *Liteky*, 510 U.S. at 548). The Court takes each argument in turn. Each fails. And so the Government has failed to meet its "heavy burden" to show that this is the exceedingly rare case that calls for recusal. *Loving Spirit Found. Inc.*, 392 F.3d at 493.

### A. Treatment of Government Attorneys

Accusing the Court of "histrionics,"[19] the Government complains that the Court harbors hostility toward Government counsel. Dkt. 86 at 1. Chief among the Government's complaints is the Court's tone and temperament. *See id.* at 2–4. Absent from the Government's complaints is authority suggesting that the Court's "expressions of impatience, dissatisfaction, annoyance, and . . . anger" are disqualifying. *Liteky*, 510 U.S. at 555–56. The Government is free to characterize the Court's behavior as "aggressive" or "sarcastic[]" if it so desires. Dkt. 86 at 4. But those subjective characterizations are not evidence—and certainly not clear and convincing evidence—demanding disqualification.

Next, the Government contends, "[i]n what can only be described as a personal and pernicious attack on counsel, [the Court] implied that counsel's actions had caused her to question whether *any* government lawyer can act in good faith going forward." *Id.* at 3–4. As in all things, context is key. The Government provides none, making it impossible for an impartial observer to grasp the facts and circumstances surrounding this exchange. *See Perkins Coie LLP*, 775 F. Supp. 3d at 435.

The Court fills in the gaps.

---

[19] "Histrionic" derives from the Latin term *histrio*, meaning actor. *See Histrionic*, Merriam-Webster Dictionary (last visited Oct. 18, 2026). And so the Court is reminded of Hamlet's advice to the players: "Suit the action to the word, the word to the action." William Shakespeare, *Hamlet* act 2, sc. 2.

> **THE COURT:** I absolutely believe that everything [Government counsel is] telling me is what you believe to be true. I don't think you're dissembling or hiding anything . . . I have 1,000 percent faith in you.

July 2 Tr. at 30.

> **THE COURT:** I just wanted to make clear for the record, because there was misimpression, that no one has violated any of my orders. In fact, [Government counsel has] done every single thing I have asked you to do.

*Id.* at 33.

> **THE COURT:** Yeah, I just want to make it clear for the record, you know, because I obviously take, you know, the government following orders incredibly seriously. And in my courtroom, I can't speak for anyone else's courtroom, but in my courtroom to date no government attorney has violated one of my orders. And certainly not [Government counsel], who I think has—and I've said this before I'll say it again, I think you've been a terrific advocate for the Government. And I have —you've given me no reason to doubt what you've said.

Sept. 3 Tr. at 6.

> **THE COURT:** No. Look, here is what we're not going to do today. I'm not doing political talk today. Here is what we're not going to do today—and you know I have an immense amount of respect for you. I think at every single hearing I have said that I think you're doing an excellent job.

July 2 Tr. at 6.

> **THE COURT:** I want to trust that people are acting in good faith and have them acting in good faith until proven otherwise, and [Government counsel] has not proven otherwise to me in this litigation.

*Id.* at 91.

> **THE COURT:** That's totally fair, which is also another reason why I thought some of the press was unfair, because [Government counsel] actually [has] been doing everything I asked, so thank you.

*Id.* at 104.

Now back to October 12. To be sure, the Court stated that the Government had lost "all of its credibility in this case." October 12, 2026, Tr. at 4. As the record reflects, it had a lot to lose. "[F]rom day one," Government counsel "has had a great deal of credibility." July 2 Tr. at 31. The Court had "done everything humanly possible to give the [G]overnment the benefit of the doubt in this case . . . repeatedly. . . for months." Oct. 12 Tr. at 11–12.

Based on this record, a reasonable person would understand that the Court's skepticism about whether Government counsel can act in good faith going forward is legitimate and not the product of bias. The Government has not met its burden to show otherwise.

**B. Alleged Improper Favoritism and Hostility**

The Court's deep-seated favoritism, the Government contends, makes it "[unable] to render impartial justice in this case." Dkt. 86 at 8; *see id.* at 4. Recall that the question is "whether a reasonable and informed observer would question the judge's impartiality." *Trump*, 694 F. Supp. 3d at 150 (quoting *Microsoft Corp.*, 253 F.3d at 114).

The record gives a clear answer. Before October, Plaintiffs asked the Court about a dozen times to intervene in some way, either by imposing a formal notice order—so that, if violated, the Court could hold the Government in contempt—or by ordering injunctive relief. The Court denied each request.

At an emergency May hearing, the Court denied Plaintiffs' request for a temporary restraining order, in part by crediting the Government's good faith, and instructed the parties to work out notice between themselves.

> **THE COURT:** I don't want to be the overseer of parks and rec, I mean, I'm no Amy Poehler. So like if we—if it's like he's fixing the things in the articles, you know, in the, that he in the pictures it's either digging up the dead trees, if that's the plan, you know, that's fine. If the plan is do something more than that then I want you to—I want [the Government's witness] and [Government counsel] to communicate on that. I want the plan or whatever's written down to go to you because you're a lawyer and you will understand—no offense [to the Government's witness]—better than a layperson will, sort of, you know, what the issues are here. I'm not right now imposing a TRO, I'm . . . giving you the benefit of the doubt that we're not going to be in a situation where we have bulldozers bulldozing down trees and no one has alerted me first or the plaintiffs.

May 4 Tr. at 12.

> **THE COURT:** I don't know that there's any emergency relief I can offer. I mean, we can talk about—just with respect to the renovations at this point, we can talk about the dangerous issue separately. But I mean, I have no reason to disbelieve [the Government's witness] that there's not bulldozers on the way this morning.

*Id.* at 16–17.

> **THE COURT:** Well, okay. [Government counsel, Government witness] if anyone orders big things to show up, and by big things I mean anything, you know, more than my sedan, then I want the plaintiffs to have notice.
>
> **Government Counsel:** Your Honor, you have been clear on that point and that we will provide plaintiffs with that notice should that happen.

*Id.* at 27.

The Court took the same approach at a July hearing that Plaintiffs requested after President Trump posted to Truth Social that work on the East Potomac Golf Course would begin on September 1, 2026.

> **Plaintiffs' Counsel:** The preliminary relief that we are asking for is to stop any irretrievable implementation of that plan.
>
> **THE COURT:** Nothing irretrievable has happened so far.
>
> **Plaintiffs' Counsel:** Right, and we want that to continue. Until they have completed NEPA and NHPA compliance, we want an injunction against any meaningful ground disturbance that is inconsistent with East Potomac's historic design . . . NEPA and NHPA are not box-checking exercises. These have got to be real hard looks. It's hard to imagine that happening. I know that we're getting a little bit ahead of ourselves here.
>
> **THE COURT:** I understand the skepticism. I'm sure many people share it, but I'm not going to assume that the agency is going to act in bad faith before they have acted.

July 2 Tr. at 70.

Instead of intervening, the Court asked the parties to confer and agree on language that was not an injunction.

> **THE COURT:** What is some language that—what is something that I can say "please do X before you do Y" where I will have comfort that we're not sending in bulldozers in dark of night to chop down cherry trees?
>
> **Government Counsel:** I have been pondering what could possibly work, Your Honor, and I don't have anything at the moment, but I'm happy to confer with my client and see what they can potentially come up with.
>
> **THE COURT:** I want all you guys to get together in some meeting and figure out some language that your client will agree to that I sign off on, and it's not going to be an injunction. The only reason I'm not making an injunction order is because I don't want to put people through contempt proceedings. I want to trust that people are acting in good faith and have them acting in good faith until proven otherwise, and you have not proven otherwise to me in this litigation.

*Id.* at 91.

The Court at the same time refused to enter an injunction concerning the pile of East Wing destruction debris the Government had dumped onto the golf course.

> **THE COURT:** I am not going to tell them to move that soil unless I have some actual proof that, A, the soils have contaminants in them that are dangerous to the human beings or the ecology. And I'm telling you right now I don't have it.

*Id.* at 61.

In late August and early September, reports appeared in the press that the Government had begun removing trees at the Course. *See* Dkt 69 at 1. The Court held a hearing and declined to intervene.

> **THE COURT:** There was no order that I ever entered saying that the administration could not chop down trees or do maintenance work at Hains Point or any area. That is not an order I ever entered. I indicated that the administration, if they were going to tear down a substantial number of trees—I think I threw out the number 10 at some point—were to provide notice.
>
> But subsequently, at various hearings, we have discussed that I was not going to be the sort of parks and rec supervisor of trees having to be torn down because they are dead or dying or for routine maintenance reasons, which, as I understand it from statements at least to the press from the government, is what has occurred to date.

Sept. 3 Tr. at 4–5.

Plaintiffs insisted. The Court again refused.

> **THE COURT:** I'm not going to discuss the trees ad nauseam, all right, not the Lorax. Sounds like we have a solid response from the government. I have no reason to disbelieve it. If you have reason to believe that they're cutting down live, healthy trees, then by all means let me know and we can get on it then, okay?

*Id.* at 13.

With the facts in focus, the Court finds that no reasonable person could believe that after October 12 the Court exercised favoritism in a manner supporting disqualification.

### C. Separation of Powers

The Government appears to suggest that the Court cannot fairly rule on any case involving the Executive Branch. Dkt. 86 at 2, 7–9. The clear and convincing evidence to support that sweeping allegation? "[D]isrespect," evidenced by the Court's "disregard for [agency] officials' valuable time" and "blatant disregard for black-letter separation of powers principles." *Id.* at 6–7.

The Court again commends the record to the reader. As the Court explained to the parties in July, "federal courts should not be involved in telling the Executive or Congress what

to do unless we have to because the Constitution or the laws require us to." July 2 Tr. at 59. Unless "there has been an obvious violation of law," or until the Government "[has] committed to a course and there is no way to stop them," federal courts cannot "step in" and "tell [the Executive Branch] [it] can't do something." *Id.* Again in September: It would be inappropriate to "assume that the [Government] is going to act in bad faith before they have acted." Sept. 3 Tr. at 17. And again in October: federal "courts should [not] be playing parks and rec" with the Executive Branch. Oct. 12 Tr. at 132.

The Government also contends that the Court's actions demonstrate a misunderstanding of separation-of-powers principles "she should be aware of as a federal judge." Dkt. 86 at 7. To support that contention, the Government points to caselaw protecting high-ranking government officials from "judicial demands for information that could be obtained elsewhere." *Id.* (citing *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008)). The Court is aware of this principle and the privileges associated with it. A judicial recusal motion, however, is not the appropriate venue to air or resolve substantive legal arguments.

### D. Other Complaints

The Government complains that the Court required officials to testify "on a federal holiday" and "notwithstanding the lack of any urgency justifying a hearing." *Id.* at 6. The Court agrees that the timing was inconvenient. It was inconvenient for the courtroom deputy, for the court reporter, for the Court's clerks, and other court staff. It was inconvenient for the Plaintiffs, and their lawyers and staff. It was inconvenient for innumerable journalists and interested members of the public.

The Government created that inconvenience by insisting it would resume felling trees on the Monday of a holiday weekend, weather conditions permitting. *See* Dkt. 76 at 3–4. The

Government created an emergent situation. The Court responded. Put differently, an emergency hearing on an emergency motion is an "ordinary effort[] at courtroom administration." *Liteky*, 510 U.S. at 556.

Finally, the Government searches for evidence that the Court is biased against the Executive Branch by looking to other cases on the Court's docket. The Court does not take that accusation lightly. But the Government identifies no authority suggesting that prior conduct in unrelated cases establishes deep-seated bias in the instant case. Nor does it identify any prior conduct that establishes such bias.[20]

## III. CONCLUSION

It is easy to weaponize selective quotations to bring a baseless recusal motion. But it is much harder to meet the demanding legal standard against a full record. By any objective measure, the Government fails to meet the standard for recusal. And the Court does not, on its review, conclude it is mandatory.

The Court **DENIES** the Motion.

Date: October 18, 2026

ANA C. REYES
United States District Judge

---

[20] The Government accuses the Court of "ma[king] fun of" and "threatening to compel [the] deposition testimony of" Secretary of Defense Pete Hegeseth in an unrelated case. Dkt. 86 at 9–10. Neither is true. In that case, the Court denied Plaintiffs' request for a seven-hour-long deposition of Secretary Hegseth. It left open the possibility that, should Plaintiffs make that request again, the Court will hear argument on permitting a limited deposition of one hour. The Court is "very aware that he is the Secretary of Defense and has a lot of constraints on his time," but observed that "he has time to tweet, and he has time to put out videos, and he has time to speak to the generals." *Talbott v. Trump*, 25-cv-250, Dkt. 159, Oct. 14, 2026, Tr. 15. These are facts, not insults.