**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-477-ACR |

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

Defendants the United States Department of the Interior ("DOI"), *et al.*, hereby respectfully respond to the Court's order to show cause "as to why the Court should not order it—including relevant DOJ attorneys and staff—to preserve information relevant to the existence of the Washington National Plan, the timing of the tree removal, and the notification of tree removal to the Court and Plaintiffs." Dkt. No. 101 at 3 (the "Show Cause Order"). This filing also responds to the Court's further minute order of October 27, 2026, requiring an explanation of "whether any plan exists to close East Potomac Golf Course on or around November 15, 2026."

With regard to the necessity of a document preservation order, good cause does not exist for five reasons:

First, The Show Cause Order is unwarranted because both the DOI and Department of Justice ("DOJ") are already subject to extensive federal record retention requirements. As the D.C. Circuit has explained, "Federal agencies' records creation, management, and disposal duties are

set out in a collection of statutes known collectively as the Federal Records Act." *Armstrong v. Exec. Off. of the President, Off. of Admin*., 1 F.3d 1274, 1278 (D.C. Cir. 1993) (citing 44 U.S.C. §§ 2101 et seq., 2901 et seq., 3101 et seq., 3301 et seq.). The Federal Records Act "prescribes the exclusive mechanism for disposal of federal records." *Id.* If a document is a record, the agency must request approval from the Archivist, or destroy "certain common types of records pursuant to disposal schedules promulgated in advance by the Archivist," taking "into account the FRA's goal of preserving documents of 'administrative, legal, research, or other value." *Id.* (quoting 44 U.S.C. § 3303a(d)). In light of these federal statutory obligations, there is no basis for the Court to stack yet another retention order on top – particularly when the documents are clearly subject to retention in relation to ongoing litigation to begin with.

Second, On top of federal record retention requirements, at DOJ's request, DOI has entered a litigation hold regarding this matter which requires the preservation of a broad category of documents. The litigation hold was originally put in place at the start of litigation and updated throughout. After the Court entered several oral orders to witnesses to retain documents at the October 12, 2026, Temporary Restraining Order hearing,[1] the litigation hold was again updated on October 15, 2026. The materials to be preserved encompass all information related to this litigation, including any redesign of East Potomac Golf Course, and any communications regarding the same. It also covers information regarding the storage of fill material from the White House East Wing project, and communications related to the 2019 Cultural Landscape Report and 2026 Tree Management Plan. This litigation hold is sufficient to capture all records that could plausibly be subject to the Court's Show Cause Order. The undersigned have no reason to believe

[1] Those oral orders provide another independent basis that the Show Cause Order is unnecessary. The Court has already ordered relevant Department of the Interior employees—including Dr. Griess, Mr. Lands, and Mr. Wischer—to retain related records.

that anyone is failing to comply with the FRA or the litigation hold, (and even if that were occurring without their knowledge, issuing a duplicative preservation order would not accomplish anything).

Third, As to the specific request regarding DOJ records, the Show Cause Order is particularly inappropriate. The DOJ is not a party to this case. Its only role is as legal counsel to the Defendants. Accordingly, the vast majority of records—if not all of them—would be protected by the attorney-client or attorney-work product privileges. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It goes both ways: it protects the lawyer in giving advice, but also "the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. This privilege extends to government agencies. *See, e.g., Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997). To the extent the Show Cause Order contemplates the eventual production of privileged documents, it is futile, and thus unwarranted.

Fourth, To the extent the Show Cause Order is directed towards a possible civil contempt proceeding, the Court itself has acknowledged it did not enter any order requiring notice. *See* October 12 Transcript, 135:8-10 ("THE COURT: … And the only reason, the only reason I have not yet entered a show cause on contempt *is that I never put this in a formal order*[.]") (emphasis added). Accordingly, there is no basis for a contempt inquiry or hearing. *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999) (citations omituted) (contempt requires that "the court must have fashioned an order that is clear and reasonably specific" and "the defendant must have violated that order."). It cannot be disputed that this test cannot be met here. Defendants nonetheless provided notice. Dkt No. 74. Therefore, there is no cause to order the retention of documents for a potential contempt inquiry or proceeding in the absence of any order that could have been violated.

Fifth, Finally, this litigation is an Administrative Procedure Act record-review case. It is black-letter law that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). This Court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The Court has entered its preliminary injunction order, and has acknowledged that there is no basis for any contempt proceeding. Any further prosecutorial investigation by the Court has no basis in law.

With regard to the Court's request for clarification as to "whether any plan exists to close East Potomac Golf Course on or around November 15, 2026," and if so, "how that can be reconciled with Associate AG Woodward's representation to the Court," Minute Order of October 27. The undersigned acknowledges the President has twice directed Interior and the National Park Service to close the park by November 15. Accordingly, Interior, acting through counsel, is working to develop a plan to implement that direction and will provide this Court with notice pursuant to the Court's October 26, 2026, Order.

For the foregoing reasons, cause does not exist for the Court to enter further orders to retain documents.

Respectfully submitted this 28th day of October 2026.

*/s/ Stanley E. Woodward, Jr.*
**STANLEY E. WOODWARD, JR.**
Associate Attorney General

**ANDREW J. BLOCK**
Senior Counsel
Office of the Associate Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington D.C., 20530

**ADAM R. F. GUSTAFSON**
Principal Deputy Assistant Attorney General

**BENJAMIN HAYES**
Deputy Assistant Attorney General

**MARISSA PIROPATO**
Deputy Chief, Natural Resources Section
Energy & Natural Resources Division

Natural Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002

*Attorneys for Federal Defendants*