**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-477-ACR |

**DEFENDANTS' MOTION TO STAY OF**
**PRELIMINARY INJUNCTION PENDING APPEAL**

On October 26, 2026, the Court entered an Order granting Plaintiffs' Motion for Preliminary Injunction. Dkt. No. 101. Defendants have appealed the Court's Order to the D.C. Circuit and respectfully request that this Court stay any such order pending appeal by November 4, 2026.

The factors governing whether to issue a stay include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Here, these factors weigh in favor of a stay. Defendants have strong arguments for appeal, and the equities and public interest weigh overwhelming against suspending U.S. Department of the Interior and National Park Service activities in the interim.

1. **Success on the Merits**. Defendants have strong arguments to present on appeal. Indeed, the Court adopted some but not all of Defendants' threshold arguments and recognized that its Order will be subject to appellate review. Mem. & Op. 6, Dkt. No. 103. The strength of Defendants' arguments is sufficient to warrant a stay pending appeal, especially in light of the broad and expansive incursions the Order seeks into the Executive Branch and the minimal (if any) harms to Plaintiff of allowing Defendants' activities to proceed.

*First*, Plaintiffs do not have standing. The Court correctly concluded that D.C. Preservation League ("DCPL") lacked organizational standing and individual Plaintiffs Roberts and Dickson failed to establish standing based on either an increased-risk-of-harm theory or Plaintiffs' fears that, if the golf course is one day renovated, it will be more expensive to play. *Id.* at 47-48, 51. But just as those alleged harms were too speculative to constitute an Article III injury, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), so too are Plaintiffs other alleged recreational, aesthetic, and historic injuries. The Court recognized that their alleged injuries, even if concrete (which they are not), could only come to fruition "[i]f NPS destroys" East Potomac Golf Course or if "the courses are converted into a single course." Mem. & Op. 45-47. The Court provides no basis for concluding that some of Plaintiffs' alleged injuries tied to potential changes to the layout, design, and makeup of East Potomac Golf Course are speculative while others are not.

Moreover, the alleged injuries for which the Court concluded Plaintiffs do have standing are not concrete. As its sole basis for finding an Article III injury, the Court identified only Plaintiffs' alleged harms to their recreational, aesthetic, and historic interests *if* East Potomac Golf Course's Walter Travis design were to change. *Id.* at 45-47, 51. The Supreme Court has recently concluded that such allegations of injury are not sufficient for Article III standing purposes. *National Park Service v. National Trust for Historic Preservation in the United States*, No. 2026

WL 2564318, 609 U.S __ (2006) (*NTHP*). The Court rejected near identical alleged "'injuries' to [plaintiff's] 'aesthetic, cultural, and historical interests'" because the plaintiff found aspects "of the government's design distasteful." *Id.* at *2. The Court distinguished the flawed injuries in *NTHP* by simply stating they were "based on [plaintiff's] disagreement with the ballroom's construction." Mem. & Op. 44. But there is no basis for differentiating between one's distaste for one version of the East Wing over another and one's distaste for one potential design of a golf course over another.

Moreover, these purported injuries, even if valid, reflect a fundamental disconnect with the basis for which the Court granted the injunction: the removal of trees pursuant to a separate agency decision. Injuries allegedly caused by a potential future redesign of the Golf Course, cannot serve as a basis for enjoining independent activities within NPS's management authority—whether that be tree removal, vegetation management, sea wall construction, or related Park closures. Alleged injury from one agency activity does not automatically translate into injury from other agency activities.

*Second*, Plaintiffs have failed to identify any final agency action. NPS has exercised its management authority to conduct certain activities like tree removal. And NPS intends to exercise its management authority to conduct further activities, such as associated Park closure. Neither of those actions constitute final agency action. And Plaintiffs' focus on the prospective redesign plan for the Golf Course misses the mark twice over.

Most fundamental, redesigning an existing public golf course into a different public golf course is not agency action at all, because it is not the sort of governmental power that the APA cares about. *Cf. Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 193 (4th Cir. 2013) ("The term 'action' in the APA is a term of art that does not include all conduct

such as, for example, constructing a building, operating a program, or performing a contract.”). Compared to expanding the fairways, filling the bunkers, or turning the Par 4s into Par 3s, the contemplated action here is different in degree, but not kind: The government is acting as proprietor, changing the design of the product it is offering the public. That is simply outside the APA. *Cf. Dong* v. *Smithsonian Inst.*, 125 F.3d 877, 882 (D.C. Cir. 1997).[1]

Separately, final agency requires action that (1) “mark[s] the ‘consummation’ of the agency’s decisionmaking process,” and (2) creates legal “rights or obligations,” with “direct and appreciable legal consequences.” *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted). Assuming a golf course redesign could result in agency action, any proposal is not yet final because the Park Service has not settled on or approved any such plan. *See, e.g., Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 84 (D.C. Cir. 2006) (recognizing that agency activities like simply “prepar[ing] proposals” are not final agency action); see also Mem. & Op. 35; 16 (citing Dkt. 50-1 at 2); *id* 22-23 and Dkt. No. 96-1 (citing different conceptual renderings that changed over time). The Court instead cobbled together agency action from disparate Presidential statements and agency activities.

*Third*, Plaintiffs’ National Environmental Policy Act (“NEPA”) claim fails on the merits. Plaintiffs never brought a claim asserting injury from tree removal and never challenged any NEPA document authorizing tree removal. And yet, the Court granted an injunction based on Plaintiffs’ purported segmentation theory. But Plaintiffs’ segmentation theory is inapplicable here in light of the Supreme Court’s decision in *Seven County Infrastructure Coalition v. Eagle County*, 605 U.S. 168, 180 (2025). The Court gives short shrift to the core holding in *Seven County* that “the central

---

[1] The Court acknowledged Defendants’ alternative argument at oral argument. Oct. 19, 2026 Tr. 191:21-192:5.

principle of judicial review in NEPA cases is deference." *Id.* at 179. Not deference when the Court prefers it. And not deference only in this or that NEPA case. Such substantial deference is "required in NEPA cases"—including the categorical exclusions NPS relied on for tree cutting here. The Supreme Court made clear that "[c]ourts should afford substantial deference and should not micromanage those agency choices so long as they fall within a broad zone of reasonableness." *Id.* at 183. Under *Seven County*, the proper course under NEPA should have been to defer to the Executive's judgment as to the scope of the project to be evaluated under NEPA.

**2. Irreparable Injury**. Defendants will also be irreparably injured absent the stay for several reasons. To begin, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). *See Maryland v. King*, 567 U.S. 1301, 1303 (2012); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). And the Government in particular is likely to suffer irreparable harm when enjoined in this manner. *Maryland v. King*, 567 U.S. 1301, 1303 2012); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 860-61 (2025). This is certainly true where, as here, the Court has issued an excessive and overbroad preliminary injunction violating the D.C. Circuit's "long held" mandate "that '[a]n injunction must be narrowly tailored to remedy the specific harm shown.'" *State of Nebraska Dept. of Health & Hum. Servs. v. Dept. of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (quoting *Aviation Consumer Action Proj. v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976). Against this backdrop, Defendants are likely to suffer irreparable injury if the Court's Order is not stayed for several reasons.

*First*, the Court's Order constitutes severe and overly intrusive judicial interference with the operation of the Executive Branch in violation of separation of powers principles. As just one example, the first part of the Court's Order would require a declaration from a senior National Park

Service employee before a single tree that posed an imminent threat to public safety could be cut down. Order 1, Dkt. No. 101. Such a demand ignores the unique time constraints on senior executive officials and the fact that the same information could be provided by a less senior official. As another, the Order would seek to graft additional records preservation requirements on to both the U.S. Department of the Interior and the U.S. Department of Justice beyond the ordinary records retention requirements already required by law.

*Second*, the Court entered an Order that is exceptionally overbroad, and in doing so, ran afoul of the Supreme Court's decision in *Monsanto*. 561 U.S. 139. Like the *Monsanto* district court's error in enjoining any partial deregulation, here, the district court, in its fervor to enjoin Defendants, took a preliminary injunction motion based on partial changes to the Golf Course (tree removal), and used it to enjoin not only more complete changes (complete redesign), but also any other partial changes. *Id.* at 161 (criticizing the district court for "not just enjoin[ing] the *particular* partial deregulation" but also "barr[ing] the agency from pursuing *any* deregulation"). In other words, where enjoining one activity will do, enjoining others does not follow.

To illustrate the point, Part Two of the Court's Order effectively substitutes the Court for NPS as manager of East Potomac Golf Course, requiring extensive notice of a whole host of activities that have no relation to Plaintiffs' purported injuries or claims in this case. The Order prohibits *all* tree management (including topping or "substantial pruning" of any tree) throughout the entirety of East Potomac Park, even though Plaintiffs' alleged harms are derived from potential future golf course redevelopment. Part Two also reaches all of East Potomac Park—not simply the area bounded by Buckeye Drive SW and Ohio Drive SW where East Potomac Golf Course is located. And the Court's Order unnecessarily interferes with Defendants' ability to conduct other

maintenance that potentially may be required at the Golf Course—maintenance which Defendants have shown in the past is warranted. *See, e.g.*, Decl. of Kevin Griess, Dkt. No. 48-1.

The Court's preliminary injunction is excessive, overbroad, and causes irreparable harm in still other ways. The Court requires Defendant to inform the Court "without delay if any entity or individual seeks to effectuate changes to East Potomac Park." Order 2. The unbounded nature of this command makes compliance nearly impossible, at the risk of sanctions for any such failure. It would force an endless loop of Defendants seeking permission to manage the Golf Course, the Court considering Defendants' request, and the Court deciding for itself whether the activity may move forward. And by imposing excessive notification requirements, the Court contravenes *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978), which instructs that courts are not free to impose procedural requirements on agencies. *Id.* at 524. By requiring ten-days' notice before the Golf Course is closed (and notice before action is taken to address park safety), the Court appointed itself as supervisor of the agency with authority to veto agency activities *before* they are approved. The Order interferes with day-to-day Executive Branch functions, creating immediate and irreparable harm. *See Trump v. CASA, Inc.*, 606 U.S. 831, 859-62 (2025) (citations omitted).

**3. The stay will not substantially injure other parties.** Plaintiffs' central concern in this case has been the design of East Potomac Golf Course. Staying the Order and permitting Defendants to conduct additional tree removal, maintenance, and other construction activities throughout the Park along with any associated temporary closures free from intrusive judicial oversight does not substantially impact this concern. *See W. Ala. Quality of Life Coal. v. U.S. Fed. Highway Admin.*, 302 F. Supp. 2d 672, 684 (S.D. Tex. 2004) (finding that "temporary effects"

caused by construction do not amount to irreparable harm because the time construction will occur "is not permanent or of long duration").

**4. The public interest lies with a stay.** Staying the Court's Order would permit Defendants to continue to serve the public without unnecessary interference in managing East Potomac Golf Course. This includes ordinary maintenance activities wholly unrelated to any potential redesign of the Golf Course. Plus, issuing a stay would permit government officials with limited government resources to expend their energies on other critical matters in serving the public rather than expending great effort to comply with an overbroad Order.

* * *

For these reasons, this Court should stay its preliminary injunction pending appeal. The D.C. Circuit should have the opportunity to weigh-in on these significant and novel issues before Defendants are subjected to intrusive judicial oversight regarding their management of a golf course, particularly at the behest of plaintiffs who have suffered no concrete injury and have no applicable cause of action to justify such judicial intrusion into the management responsibilities of the Executive Branch.

Defendants respectfully request that the Court rule on this Motion by November 4, 2026.

Respectfully submitted this 29th of October 2026.

**STANLEY E. WOODWARD, JR.**
Associate Attorney General

**ANDREW BLOCK**
Senior Counsel
Office of the Associate Attorney General
950 Pennsylvania Avenue
Washington, DC 20530

**ADAM R. F. GUSTAFSON**
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Energy & Natural Resources Division

**BENJAMIN HAYES**
Deputy Assistant Attorney General

(202) 514-9500
stanley.woodward@usdoj.gov

*/s/ Marissa Piropato*
**MARISSA A. PIROPATO**
Deputy Chief (MA Bar No. 651630)

**MICHAEL K. ROBERTSON**
Trial Attorney (DC Bar No. 1017183)
U.S. Department of Justice
Energy & Natural Resources Division
Natural Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002
Tel: (202) 598-3835
Email: michael.robertson@usdoj.gov

*Attorneys for Defendants*