**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br>*Plaintiffs*,<br>*vs.*<br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br>*Defendants*. | Case No. 1:26-cv-477-ACR |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' RESPONSE TO THE COURT'S MINUTE ORDER**

On October 30, 2026, the Court issued a Minute Order directing Defendants to brief whether, and if so, how, the deliberative process privilege protects it from disclosing the date on which tree removal and/or a links-style golf design was first added to the NCPC Proposal. *See* Minute Order, Oct. 30, 2026. On November 2, 2026, Defendants filed their response to the Court's order. ECF No. 121, Defendants' Response to the Court's Minute Order ("Defs' Resp."). In that response Defendants assert that "the information sought is clearly both predecisional and deliberative" *id*. at 3, and renew their objection to extra-record discovery on the grounds that the "Administrative Procedure Act ("APA") cabins judicial review to the administrative record of a final agency action." Defs' Response at 4. In accordance with the Court's order, Plaintiffs file their response. The information the Court ordered Defendants to disclose is not pre-decisional or deliberative as it is material to the Washington National Plan, which this Court found exists and constitutes final agency action for APA purposes. Further, the deliberative process privilege cannot be used to shield government misconduct from the public eye. Here, the Court has made a finding of bad faith on the part of government officials with respect to their assertion that the removal of

hundreds of trees from the golf course was part of a 2019 CLR, as opposed to part of the larger Washington National Plan. Lastly, the Court should overrule Defendants' renewed objection to Court's order on the basis of the APA. The Court already justified its finding that extra-record evidence is appropriate in this case because there is a strong showing of bad faith and a minimal administrative record. As such, the Court should not allow Defendants to circumvent its October 30 order to disclose the date on which the tree removal and Fazio design first were added to the NCPC Proposal.

## LEGAL STANDARD

The deliberative process privilege only extends to documents and information "that are both pre-decisional and deliberative." *Leopold v. Off. of Dir. of Nat'l Intel.*, 442 F. Supp. 3d 266, 274 (D.D.C. 2020). To be pre-decisional, the document or information "must have been generated before the agency's final decision on the matter" and "prepared in order to assist an agency decisionmaker in arriving at [a] decision." *Id.* (cleaned up). "To be deliberative, the document [or information] must have been 'prepared to help the agency formulate its position.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 768 (2021). "[The agency asserting the privilege] bears the burden of establishing all the required elements of the privilege." *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

## ARGUMENT

### I. The Deliberative Process Privilege Does not Apply Because the Information Defendants' Seek to Protect is not Pre-Decisional or Deliberative

The deliberative process privilege exists to protect the consultative process, not to shield the government's adopted decisions. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Here, Defendants have made a final agency decision to adopt and implement the Washington National Plan, a plan that entails destroying a historic golf course and

replacing it with a championship-style golf course suitable for professional tournaments, including by removing hundreds of tree to accommodate the size and features of the new design.[1] *See* ECF No. 103.

Here, the Court found that the record evidence in this case supports a finding that the Washington National Plan is final, *id.* at 27-28. This evidence includes: President Trump stating so on January 11, June 28, twice on October 18, and once on October 19 that the plan exists; Secretary Burgum stating so on May 8 and May 14; Secretary Burgum not contradicting the President's statement that DOI, under his auspices, has developed the plan; final designs announced by President Trump, prepared by the same individual—Tom Fazio—who Secretary Burgum (in May) and the President (in June) said would design the Course; the dumping of soil on the Course, in preparation for future construction; the termination of the National Links Trust's lease, which allowed NPS directly to oversee Course design and maintenance; the June tour of the Course, where President Trump, Secretary Burgum, Fazio, Wischer, and others discussed a full Course renovation pursuant to a Fazio design; and the removal of hundreds of trees, a necessary step for the construction of the championship-style course. *Id.* citing Dkt. 49-1; Dkt. 58 at 1; Dkt. 72-1 ¶¶ 98–99; Dkt 91-1; Dkt. 91-2; Dkt. 96-1; Oct 11 Det. NEPA Adequacy at 356; Griess Decl. ¶¶ 15, 33–34; Oct. 16, 2025, CE at 2.

---

[1] Though the Court's order referred to a "links-style" golf course design, the Fazio design likely is not a "links-style" course. Traditional "links" courses, including the original Walter Travis design at East Potomac, rely heavily on natural land features and terrain and thus—like the coastal Scottish courses where the style originated—are more open with few trees and fewer if any scalloped-edged bunkers or water features. *See* ECF No. 98, at ¶ 3; *see also, e.g.*, CLR at 94 (describing Travis course). Nonetheless, from its inception, the Washington National Plan has always required the "removal or relocation of hundreds of trees," as tree removal would be necessary to create sufficient space for a championship-style course suitable for major tournaments, including the unnatural bodies of water and artificial bunkers such a course would feature. *See* ECF No. 98, at ¶ 103; ECF No. 1, at ¶ 85.

The Court further found that record evidence supports its finding that the tree removal, or Tree Management Plan, was part of the Washington National Plan and that the Government's claim that the 2019 CLR was the reason it cut down hundreds of trees was pretextual. ECF No. 103 at 29-31. The purpose of the 2019 CLR was to return the course to its historic design. As the Court succinctly put it, "[i]t makes zero sense for the agency to have cut down hundreds of healthy, mature, and non-invasive trees to return East Potomac Golf Course to the Travis design—only for that same agency, behind the scenes, simultaneously to develop and implement a Plan to abandon that same historical design." *Id.* at 29. Thus, the Court concluded Defendants' claim that they were implementing the 2019 CLR was simply pretext for their true purpose of implementing the Washington National Plan. If evidence establishes that an agency has hidden a functionally final decision in draft form, the deliberative process privilege will not apply. *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. at 273. Defendants cannot hide this "functionally final decision in draft form" by claiming that elements of the Plan that appear in the NCPC proposal, including tree removal, were "pre-decisional" when in fact the Washington National Plan was already final.

## II. Even Assuming the Washington Plan was not Final, the Deliberative Process Privilege does not Apply to Independently Ascertainable Historical Facts

Defendants also fail to explain how revealing the date the tree removal and/or the Fazio golf design was first added to the NCPC Proposal reveals protected deliberations. The privilege protects pre-decisional and deliberative communications, not independently ascertainable historical facts. *In re Sealed* Case, 121 F.3d 729, 737 (D.C. Cir. 1997); *Playboy Enterprises, Inc. v.* DOJ, 677 F.2d 931, 935-36 (D.C. Cir. 1982); *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt.").

Absent a particularized showing that disclosure of the date itself would reveal protected governmental deliberations, the privilege therefore would not apply. Moreover, the Court has not ordered Defendants to produce "various iterations," or "redline edits," or comments, or drafts of agency documents, ECF No. 121 at 3. Defendants do not need to review "drafts, or communications between drafters, and describe[e] their contents[.]" Defs' Resp. at 4. The Court has not ordered Defendants to track various versions of the NCPC submission and disclose which ones contained the tree removal and/or Fazio golf design and which ones did not. The Court has ordered Defendants to disclose *only* the date upon which these two decisions were first added to the submission.

**III. The Deliberative Process Privilege does not Shield Government Misconduct**

Defendants ignore the reason the Court ordered Defendants to disclose the date at issue—namely, to determine whether and to what extent government officials have misrepresented the underlying facts in this case. The Court previously found that extra-record discovery was warranted in this case due to a "strong showing of 'bad faith'" on the part of the government. ECF No. 103 at 23 (citing, Oct. 19 Rough Tr. I at 4:25–10:23; *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010)). As discussed above, the Court correctly concluded that the Washington National Plan exists and constitutes final agency action and that the TMP was part of implementing that Plan, despite Defendants' continuous claims and sworn statements that no such plan exists and that the TMP served independent, pretextual purposes. *Id.* at 27–29, 32–39; *see also* Defs' Resp. at 5 ("[T]here is not yet a final agency action."). Further, additional evidence has since come to light during the October 30 hearing that agency officials had already been working on the NCPC Proposal for weeks, which clearly discusses tree removal in preparation for a golf course renovation based on a Fazio-designed course, all while continuing to represent to the Court that there was no plan to renovate the golf course. The deliberative process

privilege does not afford the government an absolute right to shield internal communications from discovery. Rather, the privilege is qualified and may be overcome by a sufficient showing of need. *In re Sealed Case*, 121 F.3d at 737–38. The D.C. Circuit has expressly recognized that the privilege loses its justification where there is reason to believe that the withheld communications may reveal government misconduct. *Id.* at 738. Such is the case here, where the record evidence contradicts Defendants' representations to the Court.

## IV. The Court Should Overrule Defendants' Objection to the Court's Order on the Ground that the APA Limits Judicial Review to the Administrative Record

In their response, Defendants renew their objection to extra-record discovery on the grounds that the "Administrative Procedure Act ("APA") cabins judicial review to the administrative record of a final agency action." Defs' Response at 4. While this is true, there are exceptions to this general rule and the Court found that two exceptions apply. "Here, the Court has [ ] concluded that the 'strong showing of bad faith' and 'bare' administrative record in this case required extra-record discovery." ECF No. 103 at 23. The Court detailed these findings in its October 26 Order granting Plaintiffs' preliminary injunction. *Id.* at 23-29. Defendants concede "there *is no administrative record* for the golf course claims" but state it is "because there is not yet a final agency action." Defs' Resp. at 5. But, as discussed, the record evidence refutes this claim. Defendants argue "there will not be a reviewable agency action because redesigning a public golf course is not the type of action the APA concerns itself with." *Id.* Defendants cite no authority for this and the Court already found they are estopped from pressing this argument. ECF No. 103 at 36-37. Considering the Court's well supported and clearly explained findings and in the absence of any real attempt on Defendants' part to articulate why the Court's findings are unsupported, the Court should overrule Defendants' renewed objection.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' attempts to assert the deliberative process privilege with respect to the disclosure of the date upon which the tree removal and/or the links-style golf design became part of the NCPC Proposal and overrule its renewed objection to extra-record discovery.

Dated: November 3, 2026

RESPECTFULLY SUBMITTED,

*/s/ Lindsay W. Zimliki*

Lindsay Zimliki (Bar No. 475890)
Norman L. Eisen (Bar No. 435051)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
T: (202) 601-8678
Norman@democracydefenders.org
Lindsay@democracydefenders.org

Abbe David Lowell (Bar No. 358651)
Caleb Hayes-Deats (Bar No. 1653213)
Jack Bolen (Bar No. 90031046)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
Chayes-Deats@lowellandassociates.com
JBolen@lowellandassociates.com
AReilly@lowellandassociates.com

Will Bardwell (Bar No. 90006120)
Mark B. Samburg (Bar No. 1018533)
Catherine M.A. Carroll (Bar No. 497890)
Robin F. Thurston (Bar No. 7268942)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
T: (202) 448-9090
wbardwell@democracyforward.org
msamburg@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*