**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DC PRESERVATION LEAGUE, *et al.*,

*Plaintiffs*,

*vs.*

UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,

*Defendants*.

Case No. 1:26-cv-477-ACR

**PLAINTIFFS' OPPOSITION TO MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

Introduction ..... 1

Legal Standard ..... 1

Argument ..... 2

I. Defendants have not made a strong showing they are likely to succeed on appeal ..... 2

II. Defendants will not suffer irreparable injury without a stay ..... 7

III. The balance of equities and public interest weigh heavily against a stay ..... 10

Conclusion ..... 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*AFL-CIO v. Dep't of Lab.*,
836 F. Supp. 3d 137 (D.D.C. 2026) ....................5

*Awad v. Obama*,
608 F.3d 1 (D.C. Cir. 2010) ....................4

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ....................8

*Ctr. for Taxpayer Rts. v. IRS*,
190 F.4th 990 (D.C. Cir. 2026) ....................3

*Davis v. District of Columbia*,
925 F.3d 1240 (D.C. Cir. 2019) ....................5

*Dong v. Smithsonian Inst.*,
125 F.3d 877 (D.C. Cir. 1997) ....................5

*Drs. for Am. v. OPM*,
766 F. Supp. 3d 39 (D.D.C. 2025) ....................5

*EOG Res., Inc. v. Lucky Land Mgmt., LLC*,
134 F.4th 868 (6th Cir. 2025) ....................10

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ....................5

*League of Women Voters of the U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ....................7

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ....................8

*N.Y. Stock Exch. LLC v. SEC*,
2 F.4th 989 (D.C. Cir. 2021) ....................5

*Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*,
609 U.S. 1068 (2026) ....................3

* *Nken v. Holder*,
556 U.S. 418 (2009) ....................1, 2

*Save the Sound, Inc. v. FAA*,
183 F.4th 763 (D.C. Cir. 2026) ....................6

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) ....................6, 7

*Venetian Casino Resort, LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) ....................6

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
714 F.3d 186 (4th Cir. 2013) ....................5

*Vt. Yankee Nuclear Power Corp. v. NRDC, Inc.*,
435 U.S. 519 (1978) ....................8

*Wash. Area Bicyclist Ass'n, Inc. v. Burgum*,
840 F. Supp. 3d 883 (D.D.C. 2026) ....................6

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ....................5

**OTHER AUTHORITIES**

S. Doc. No. 79-248 (1946) ....................5

## INTRODUCTION

As the Court has explained, it spent months declining to intervene in this dispute until Defendants' own actions made that approach untenable and required entry of preliminary relief to prevent irreparable harm to Plaintiffs and the public. ECF No. 103 at 5–6 ("PI Op."). Defendants now ask the Court to stay the relief it just ordered and give them free rein to resume their implementation of the Washington National Plan, including the removal of hundreds more trees in East Potomac Park.

The Court should deny that request. Defendants have not made the required "strong showing" that they are likely to succeed on appeal; indeed, they largely fail even to acknowledge—much less identify any error in—the thorough analysis of these issues in the Court's preliminary injunction opinion. To the extent Defendants engage with that analysis, they disregard the Court's central finding that Defendants' tree-razing operation was not executed to advance the objectives of the 2019 Cultural Landscape Report ("CLR") but instead constituted a further step toward implementation of the Washington National Plan. Defendants identify no clear error in that factual finding or the credibility determinations on which it rests.

Defendants also utterly fail to establish that they will be irreparably harmed absent a stay. Two Department of Interior witnesses testified under oath that there is no urgency to the tree removal. Nor do Defendants show that any of the other relevant factors favor a stay pending appeal, including because many of their specific objections to the Court's order either misread the order or are or may soon be moot.

## LEGAL STANDARD

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review" and "accordingly is not a matter of right, even if irreparable injury might

otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks omitted). The appellant bears the burden to show that four factors favor a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433–34.

## ARGUMENT

### I. Defendants have not made a strong showing they are likely to succeed on appeal.

Defendants raise three arguments why they are likely to prevail on appeal: Plaintiffs lack standing, have not identified final agency action, and lack a meritorious NEPA claim. ECF No. 112 at 2–5 ("Mot."). Defendants are wrong on each count.

*Standing*. The Court correctly determined that Plaintiffs have standing based on harms to their and their members' recreational, aesthetic, and historic interests in East Potomac Golf Course. PI Op. at 42–47. Defendants say this finding is inconsistent with the Court's conclusion that Plaintiffs have not yet established three other harms: exposure to toxic contaminants dumped on the course, higher costs to play on the new course, and organizational harms to the DC Preservation League itself. *Id.* at 47–48, 49–52; Mot. at 2. But there is no inconsistency in those findings. The Court explained that it presently "lacks sufficient evidence to determine whether the contaminated soil substantially increased Plaintiffs' risk of harm," whether prices will increase once Defendants' plan is implemented, and the extent to which DCPL will be harmed as an organization. PI Op. at 48, 51. In contrast, the Court had significant evidence before it that the Washington National Plan would harm Plaintiffs' recreational, aesthetic, and historic interests

in East Potomac Golf Course. *Id.* at 45–47. Defendants simply ignore that distinction and the extensive evidence on which the Court relied.

Defendants again invoke the stay decision in *National Park Service v. National Trust for Historic Preservation in the United States*, 609 U.S. 1068 (2026). But as this Court explained, *NPS* itself distinguished between cases involving "mere offense, disagreement, or distaste"—injuries that are insufficiently concrete and particularized to support standing—and cases, like this one, that involve something more, such as injuries to "recreational interests" or certain environmental concerns. *Id.* at 1071–72; *see* PI Op. at 43–45. Defendants' suggestion that *NPS* eliminated recreational, aesthetic, and historic interests as a basis for Article III standing, *see* Mot. at 2–3, is inconsistent not only with the decision itself but with "a long line of Supreme Court and D.C. Circuit decisions holding that these interests are sufficiently concrete under Article III," PI Op. at 43; *see also* ECF No. 80-1 at 12 (collecting cases); ECF No. 88 at 2–4 (same). Defendants have failed to make a strong showing they will prevail on appeal in the face of that long line of authority.

Defendants' final standing argument is that, even if Plaintiffs would be harmed by implementation of the Washington National Plan, they are not harmed by allegedly "independent activities" such as "the removal of trees pursuant to a separate agency decision." Mot. at 3. That claim is wrong at least twice over. First, it is contradicted by the Court's thoroughly supported factual findings that, far from an independent action, removal of trees pursuant to Defendants' "tree management plan" ("TMP") was "part of the Washington National Plan" and that "the Government's justification for the TMP … is pretextual." PI Op. at 29–31. Defendants cite no reason to revisit those findings—let alone to conclude that Defendants are likely to meet their heavy burden on appeal to show that the findings are clearly erroneous. *See, e.g.*, *Ctr. for*

*Taxpayer Rts. v. IRS*, 190 F.4th 990, 1000 (D.C. Cir. 2026) (in reviewing a "district court's decision to order preliminary relief, … [we] review the court's … factual findings for clear error"); *Awad v. Obama*, 608 F.3d 1, 7 (D.C. Cir. 2010) (under this standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals *may not reverse it*" (emphasis added)). Second, as the Court also concluded, and Defendants make no effort to address, Plaintiffs have in fact "establish[ed] a likelihood of irreparable harm from further tree cutting" itself. PI Op. at 63–64.

*Final agency action.* The Court correctly concluded that the Washington National Plan exists and constitutes final agency action. *Id.* at 27–29, 32–39. Defendants have already taken several steps to implement that plan, including most recently bulldozing hundreds of trees on the course and announcing the closure of the park. Defendants deny that these implementing actions are part of the Washington National Plan, Mot. at 3, but they again fail to show any error—never mind clear error—in the Court's contrary factual findings, and there is none. And additional evidence that has emerged since the Court's preliminary injunction order only further confirms the Court's findings and undermines Defendants' account: The plan for the course that Defendants submitted to the National Capital Planning Commission ("NCPC") specifically acknowledges that "thin[ning] trees" and constructing a new seawall are part and parcel of the plan to destroy East Potomac Golf Course as it currently exists and replace it with a new "championship-style" course designed by Tom Fazio. Ex. 1 at 31–33, 38–39.

Defendants also dispute that the Washington National Plan constitutes "agency action." Mot. at 3–4. But the Court rightly held that Defendants are estopped from pressing that argument at this point, having spent months successfully arguing to the contrary—and to Plaintiffs' detriment at the time—that the overhaul of East Potomac Golf Course would be a

major federal action subject to NEPA. PI Op. at 36–37. Defendants do not even acknowledge that holding, which was well justified in the circumstances here. They therefore have failed to make a strong showing that they are likely to establish that the Court abused its discretion on this point. *See, e.g.*, *Davis v. District of Columbia*, 925 F.3d 1240, 1255 (D.C. Cir. 2019) ("We review only for abuse of discretion the district court's decision to invoke judicial estoppel.").

Defendants are wrong on the meaning of "agency action" too. As the Court explained, "agency action" under the APA "is not a high bar" and "is meant to cover comprehensively every manner in which an agency may exercise its power." PI Op. at 38 (third quotation from *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001)); *see also, e.g.*, *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7 (1980) (explaining that "[t]he term 'agency action'" is meant "to assure the complete coverage of every form of agency power, proceeding, action, or inaction" (quoting S. Doc. No. 79-248, at 255 (1946))); *AFL-CIO v. Dep't of Lab.*, 836 F. Supp. 3d 137, 160 (D.D.C. 2026) ("Courts have long understood that 'agency action' is a purposefully broad term"); *Drs. for Am. v. OPM*, 766 F. Supp. 3d 39, 49–50 (D.D.C. 2025) (similarly emphasizing the breadth of the term and also noting that "an order is virtually any authoritative agency action other than a rule" (quoting *N.Y. Stock Exch. LLC v. SEC*, 2 F.4th 989, 992 (D.C. Cir. 2021))).

The two cases Defendants cite do not call that conclusion into doubt. *See* Mot. at 3–4. *Dong v. Smithsonian Institution*, 125 F.3d 877, 877 (D.C. Cir. 1997), merely held that the Smithsonian is not an "agency" subject to the Privacy Act; it did not address the meaning of agency "action" at all. And *Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 193–94 (4th Cir. 2013), held that an agency's adoption of a harbor management plan "surely amounted to 'agency action,'" even if the agency's "performance" of the plan over time did not. To the extent this decision has any application here at all, it supports Plaintiffs' position,

not Defendants', because Plaintiffs challenge the Washington National Plan itself, not merely some specific facet of how the new course may be designed or operated in the future.

Defendants fare no better arguing that the Plan is not "final" agency action because "the Park Service has not settled on or approved" a specific proposal. Mot. at 4. To begin with, NPS's submission to the NCPC indicates that in fact NPS has settled on a specific proposal. *See* Ex. 1. In any event, as the Court explained and Defendants fail to address, "[t]he agency need not have publicly settled on a final design for the Fazio course, so long as it has made the final decision to replace the current Course." PI Op. at 35; *see also id.* at 27 (defining the relevant agency action as the plan "to destroy the current East Potomac Golf Course and to replace it with a modern, championship-style course designed by Tom Fazio"); *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008) (evaluating an agency policy as final agency action even though "the details of the Commission's disclosure policy are still unclear"). Defendants' motion does not and cannot dispute that they have made such a final decision and have already begun implementing it.

*NEPA*. Defendants' sole argument on the merits of Plaintiffs' NEPA segmentation claim is that it is foreclosed by *Seven County Infrastructure Coalition v. Eagle County*, 605 U.S. 168 (2025). Mot. at 4–5. But the Court explained at length that, while *Seven County* requires courts to defer to an agency's definition of the relevant project—at least "so long as the agency drew a reasonable and manageable line"—the case "does not foreclose review altogether." PI Op. at 55–57 (first quotation from *Seven County*, 605 U.S. at 190). It noted that the D.C. Circuit had adopted the same approach following the decision in *Seven County*. *Id.* at 55 (citing *Save the Sound, Inc. v. FAA*, 183 F.4th 763, 771–72 (D.C. Cir. 2026)). And it further explained that *Seven County* "likely does not extend to NEPA cases—such as this one—involving categorical

exclusions." *Id.* at 57 (citing *Washington Area Bicyclist Ass'n, Inc. v. Burgum*, 840 F. Supp. 3d 883, 917–18 (D.D.C. 2026)). Defendants fail to grapple with any of this. Defendants likewise do not dispute that, under *Seven County* and D.C. Circuit precedent, NPS did not and could not draw a "reasonable and manageable line" between the razing of hundreds of trees and the Washington National Plan itself because the former is inextricably part of the latter. PI Op. at 59–62. Defendants have thus not made a strong showing that they will prevail on appeal with this claim—particularly where the D.C. Circuit has already adopted a different understanding of *Seven County* from the one Defendants urge here.

## II. Defendants will not suffer irreparable injury without a stay.

Defendants do not remotely establish that they will be irreparably harmed absent a stay. Defendants' motion fails to identify any pressing need to move forward immediately with tree removals or with any other aspect of the Washington National Plan. *Cf.* PI Op. at 65 ("The Government has provided no compelling reason that it must destroy the remaining trees on the Course before" the court can resolve the case.). Indeed, agency witnesses testified under oath that there is no such pressing need. *Id.* at 30 (citing Oct. 12 Tr. at 53:20–54:1, 83:17–21, 117:14–17). Nor do Defendants have any answer to the Court's observation that agencies lack a cognizable interest "in the perpetuation of unlawful agency action." *Id.* at 65 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Defendants say the preliminary injunction is "excessive and overbroad" in various respects, Mot. at 5–7, but none of their objections to the scope of the order provides any support for a stay.

First, several of Defendants' objections rest on simple misreadings or mischaracterizations of the order. Defendants complain, for example, that it would be burdensome for them to have to submit a declaration before cutting down a tree "that posed an

imminent threat to public safety." *Id.* at 5–6. But the order by its terms plainly allows Defendants, in cases involving "an imminent threat to public safety," to act first and notify later; it provides that Defendants "may take action" to address such threats so long as they provide notice and explanation "within 24 hours," including setting forth "the need of *the taken* action." ECF No. 101 at 1, 2 (emphasis added) ("PI Order").[1]

Similarly, Defendants misread the order as "enjoin[ing] not only more complete changes (complete redesign), but also any other partial changes," instead of enjoining only further tree removal. Mot. at 6. The preliminary injunction order simply does not say that. The sole activity the order actually prohibits is the further destruction of trees in East Potomac Park. PI Order at 1. For other actions, it requires only that Defendants submit sufficient notice.[2] Defendants can hardly protest that this modest notice requirement is "excessive and overbroad," Mot at 5, particularly given the government's conduct in this case, which includes providing a "morass of different accounts concern[ing] the future of the East Potomac Golf Course," "d[oing] what it assured all it would not do" by "bulldoz[ing] hundreds of trees on the Course" "[w]ithout meaningful notice to Plaintiffs or the Court," and taking steps "to impede Plaintiffs' ability to

---

[1] In any event, this complaint is likely moot. On October 31, pursuant to the Court's October 30 minute order, the parties met and conferred regarding the scope of the notice requirement in the preliminary injunction order. Plaintiffs advised Defendants that the stay motion appeared to misinterpret the 24-hour notice rule, and the parties have agreed in principle to propose clarifying edits to this requirement.

[2] For this reason, among others, Defendants' reliance on *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 161 (2010)—which disapproved an injunction that "d[id] not just enjoin the *particular* partial deregulation" that plaintiffs challenged but "barred the agency from pursuing *any* deregulation"—is wholly misplaced. *See* Mot. at 6. Nor is this case at all like *Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 524 (1978), which bars courts from reading additional procedural requirements into the APA's notice-and-comment provisions. *See* Mot. at 7. The Court has not done so here; it has instead acted well within its broad discretion to fashion appropriate preliminary equitable relief. *See, e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (emphasizing the breadth of district courts' "substantial ability to order that relief which is necessary to cure the appellants' legal transgressions").

seek Court intervention," PI Op. at 1–7. Moreover, the notice requirement does not give the Court authority to "veto agency activities *before* they are approved," Mot. at 7, but instead ensures that Plaintiffs have an opportunity to seek judicial review and, if they do, that the Court has the opportunity to consider the matter before an action becomes an irreversible fait accompli.

Defendants object that "the Order would seek to graft additional records preservation requirements" on to the government. *Id.* at 6. But again, the order imposes no such requirements: It merely directs Defendants to show cause why the Court should not order such requirements. PI Order at 3. At the October 30 hearing, the Court issued a ruling on that order to show cause, and the parties are conferring on a proposed order to implement that ruling. Defendants cannot attack that separate ruling in an appeal from a preliminary injunction that does not itself impose any preservation requirement.

Others of Defendants' complaints, such as their objection to the geographic scope of the notice requirement and the provision concerning notice "if any entity or individual seeks to effectuate changes to East Potomac Park," Mot. at 6–7 (quoting PI Order at 2), may be fully addressed, and thus rendered moot, via resolution of the parties' forthcoming submissions concerning the contours of the notice requirement. These objections therefore provide no basis for staying the order—particularly as the order itself established a process by which the parties could seek clarification on these and other potential ambiguities. *See* PI Order at 3.

Defendants' objection to the ten-day notice requirement before closing the course has already largely been mooted by Defendants' announcement that they intend to close East Potomac on November 15. *See* Mot. at 7; ECF No. 111 at 2. And in any event, Defendants could hardly hope to show that this reasonable notice requirement inflicts "immediate and irreparable harm," Mot. at 7, particularly given their course of conduct in this case.

Finally, Defendants' passing invocation of "separation of powers principles," Mot. at 5, is entirely undeveloped and makes no effort to engage with the Court's extensive and persuasive treatment of that issue, PI Op. at 66–70. Defendants therefore have not shown they will suffer irreparable harm without a stay pending appeal.

**III. The balance of equities and public interest weigh heavily against a stay.**

Defendants' cursory treatment of the final two stay factors does nothing to tip the scales in their favor. *See* Mot. at 7–8. Their argument that Plaintiffs will not be injured by a stay wholly ignores the Court's well-supported factual findings that the tree removals are a component piece of the broader Washington National Plan that Plaintiffs challenge and that Plaintiffs would be irreparably harmed without the protections of a preliminary injunction. *See* PI Op. at 27–31, 62–64. And their attempt to depict the destruction of hundreds of healthy and non-invasive trees as a merely "temporary" measure is nonsensical. *See* Mot. at 7–8; *cf. EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 886–87 (6th Cir. 2025) (explaining that "American courts have long held up downing trees as a prototypical irreparable injury" for the simple reason that "[o]nce trees are down, they don't go back up"). Defendants also do not and could not establish a strong public interest in favor of their ability to move forward immediately with actions the Court has already determined are likely unlawful and where Defendants have not shown any need to take immediate action. *See* Mot. at 8. To the contrary, the public interest will be irrevocably harmed if Defendants are permitted to fell hundreds more trees as a further step toward implementing the Washington National Plan at the expense of treasured parkland and cultural resources.

**CONCLUSION**

For all these reasons, the Court should deny a stay pending appeal.

Dated: November 3, 2026

Respectfully submitted,

/s/ *Kevin E. Friedl*

Kevin E. Friedl (Bar No. 90033814)
Will Bardwell (Bar No. 90006120)
Mark B. Samburg (Bar No. 1018533)
Catherine M.A. Carroll (Bar No. 497890)
Robin F. Thurston (Bar No. 7268942)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
T: (202) 448-9090
kfriedl@democracyforward.org
wbardwell@democracyforward.org
msamburg@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

Abbe David Lowell (Bar No. 358651)
Caleb Hayes-Deats (Bar No. 1653213)
Jack Bolen (Bar No. 90031046)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
Chayes-Deats@lowellandassociates.com
JBolen@lowellandassociates.com
AReilly@lowellandassociates.com

Norman L. Eisen (Bar No. 435051)
Lindsay Zimliki (Bar No. 475890)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
T: (202) 601-8678
Norman@democracydefenders.org
Lindsay@democracydefenders.org

*Counsel for Plaintiffs*