**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DC PRESERVATION LEAGUE, *et al.*,**

Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,**

Defendants.

Civil Action No. 1:26-cv-00477 (ACR)

The Hon. Ana C. Reyes

**SUPPLEMENTAL BRIEF OF *AMICI CURIAE* HAINS POINT RUNNERS AND CHERRY BLOSSOM, INC. IN SUPPORT OF PLAINTIFFS**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, Cherry Blossom, Inc., doing business as Cherry Blossom 10 Mile and 5K, states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........ i

TABLE OF AUTHORITIES ........ iii

INTEREST OF *AMICI CURIAE* ........ 1

INTRODUCTION ........ 2

ARGUMENT ........ 3

I. There Is No Rational Connection Between the Longstanding Deteriorating Seawall and Closure of the Roadway. ........ 3

II. NPS Has Disregarded Its Own Closure Regulations. ........ 7

III. *Amici* Will Suffer Irreparable Harm. ........ 8

A. The Closure Would Eliminate Distinctive Opportunities for Runners to Train and Race. ........ 9

B. The Closure Would Eliminate an Iconic Portion of the Credit Union Cherry Blossom Ten Mile Run. ........ 11

IV. The Balance of Equities and Public Interest Favor Preliminary Relief. ........ 12

CONCLUSION ........ 13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alon Ref. Krotz Springs, Inc. v. Env't Prot. Agency*,
172 F.4th 12 (D.C. Cir. 2026) .......... 7

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*,
190 F.4th 990 (D.C. Cir. 2026) .......... 8, 12

*Huisha-Huisha v. Mayorkas*,
27 F.4th 718 (D.C. Cir. 2022) .......... 13

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 12

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 7

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 12

## Statutes

Act of Mar. 3, 1897, ch. 375, 29 Stat. 624 .......... 2, 13

## Regulations

36 C.F.R. § 1.5 .......... 7, 8

## Other Authorities

DC Road Runners, *Al Lewis 10 Miler and 5 Miler* .......... 10

Marine Corps Marathon Org., *2026 Marine Corps Marathon Top Finishers* .......... 6

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Cherry Blossom, Inc., is a District of Columbia nonprofit corporation that organizes and stages the annual Credit Union Cherry Blossom Ten Mile Run. Individual *amici*—Jeffrey Redfern, Evan Fallor, Barry Hauptman, Lydia Pelliccia, Camille Doom, Matthew Sarge, Luke Cancilla, Katherine Engel, and Xavier Salvador—are residents of the District of Columbia, Maryland, and Virginia who have long used East Potomac Park for running, walking, cycling, race organizing, race volunteering, athletic rehabilitation, and other forms of outdoor recreation, and who anticipate continuing to rely on Hains Point for these purposes as conditions permit.

*Amici* previously submitted a brief in support of Plaintiffs. *See* Br. of *Amici Curiae* Hains Point Runners & Cherry Blossom, Inc. in Support of Plaintiffs ("First Amicus Br."), Dkt. No. 97. *Amici* submit this supplemental brief to assist the Court in evaluating whether the deteriorating conditions of the seawall and adjacent promenade described by Defendants rationally explain the decision to close East Potomac Park. *Amici* further seek to inform the Court of the unique irreparable harm that *amici* and other recreational users of the Hains Point perimeter roadway will suffer from the planned closure of East Potomac Park, including Ohio Drive.[1]

[1] No party or party's counsel authored this brief in whole or in part. Moreover, no party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than *amici* or undersigned counsel made such a monetary contribution.

## INTRODUCTION

Defendants propose to close all of East Potomac Park south of Buckeye Drive. This includes Ohio Drive—the Hains Point perimeter roadway that has served generations of runners, cyclists, triathletes, race participants, and other recreational users represented by *amici*. The planned closure of a Park dedicated to the "recreation and pleasure of the people" is the antithesis of Congress's mandate. Act of Mar. 3, 1897, ch. 375, 29 Stat. 624, 624.

Plaintiffs' brief explains why this planned closure cannot be reconciled with the governing law. *See generally* Pls.' Mem. Supp. Mot. for TRO or Stay ("Pls.' TRO Mem."), Dkt. No. 139-1. *Amici* submit this supplemental brief to supply factual context bearing on two related questions: Whether the deteriorating conditions described by Jessica Bowron, NPS Comptroller exercising the delegated authority of the NPS Director ("Comptroller Bowron"), rationally explain the decision to close Ohio Drive, and what *amici* and other members of the public will lose if the roadway is eliminated.

Defendants point to the conditions of the East Potomac Park seawall and adjoining promenade as the basis for the planned closure of the Park south of Buckeye Drive. *See* Defs.' Notice at 2, Dkt. No. 111; Third Suppl. Decl. of Jessica Bowron ¶¶ 17–18, Dkt. No. 111-2 ("Bowron Decl."). While the hazards NPS invokes are serious, the essential conditions are not new. For years, NPS has managed hazards from the seawall and promenade while simultaneously permitting intensive recreational use of the roadway. Indeed, as recently as 2022, when seawall deterioration was already well underway, NPS redesigned Ohio Drive to devote substantial roadway space to walking, running, and cycling. And throughout the years these conditions have existed, runners and cyclists have continued to use Ohio Drive, including as part of NPS-permitted road races.

As this supplemental brief explains, the planned closure would cause immediate and irreparable harm to *amici* and other members of the public. These recreational users value the roadway for its flat terrain, limited interruptions from traffic lights or cross traffic, and scenic setting—characteristics that cannot be replicated elsewhere in the District, and which NPS has itself long accommodated.

*Amici* accordingly submit this supplemental brief to reinforce Plaintiffs' showing that the planned categorical closure of East Potomac Park south of Buckeye Drive lacks a rational factual foundation, conflicts with NPS's own regulations governing park closures, and will irreparably harm the Park's recreational users. Preserving public access to the Park while this litigation proceeds also serves the public interest.

## ARGUMENT

### I. There Is No Rational Connection Between the Longstanding Deteriorating Seawall and Closure of the Roadway.

In her third declaration, Comptroller Bowron identified "deteriorating condition[s]" of the East Potomac Park seawall and adjoining promenade and terrain. *See* Bowron Decl. ¶ 7. She noted the collapse of the "integrity of the seawall" and adjacent promenade, the regular "overtopping" of the seawalls and flooding of the adjacent promenade, and the "damage to the trees along the seawall." *Id.* ¶¶ 9, 13, 17. "Based on these facts," Comptroller Bowron states, she "plan[s] to close" all of East Potomac Park south of Buckeye Drive, effective November 15. *Id.* ¶ 18. But her declaration does not identify a safety condition requiring closure of Ohio Drive, and the facts that Comptroller Bowron invokes do not rationally explain the planned categorical closure.

The conditions Comptroller Bowron describes in her declaration are those NPS has noted and "sought to address" since at least 2011, including by fencing off areas for "visitor safety." *Id.*

¶¶ 7, 14; *see also* Pls.' TRO Mem. at 9–10. But Comptroller Bowron identified no hazardous conditions affecting Ohio Drive itself. And that makes sense given Ohio Drive's physical separation from the seawall and promenade, which NPS's own assessment of the seawall and promenade in 2026 reflects. For the majority of Hains Point, the seawall and promenade are separated from Ohio Drive by a "sloped grass area and trees," with few if any "paved connections between the roadway and promenade." Decl. of individual *amicus curiae* Matthew Sarge ("Sarge Decl.") ¶ 14. This separation of seawall from roadway can be readily seen in the aerial photographs attached as Exhibit D to Defendants' Notice. *See* Defs.' Notice, Ex. D, Dkt. No. 111-6 (2026 East Potomac Park Seawall Promenade Condition Survey). And a "large section of grass and shrubs" separates the seawall and promenade at the southernmost tip of the Park from the roadway. Sarge Decl. ¶ 14.

*Amici* have used the Hains Point perimeter roadway throughout the period of deterioration described in Comptroller Bowron's declaration.[2] Individual *amicus* Matthew Sarge, for example, has regularly used Ohio Drive for running and cycling training for the past approximately fifteen years, notwithstanding the "deterioration along portions of the seawall and waterfront promenade" and "fences or barricades restricting access" to certain segments that Sarge has observed. Sarge Decl. ¶¶ 2, 11–13. Rather, in Sarge's experience, the "deterioration and localized restrictions" along the waterfront have long "coexisted with continued recreational use of Ohio Drive." *Id.* ¶ 16. And *amicus* Cherry Blossom, Inc. has continued to conduct its annual, NPS-permitted Credit Union Cherry Blossom Ten Mile Run ("Cherry Blossom Ten Mile Run"), whose race course

[2] *See* First Amicus Br. at 1–3 (detailing *amici*'s decades-long and continued use of the roadway); *see also* Bowron Decl. ¶ 14 (noting NPS's knowledge of "the failing of the seawall and its increasingly hazardous condition" over "several years," and citing 2011 NPS Phased Rehabilitation Plan for East Potomac Park, West Potomac Park & Tidal Basin).

includes the Ohio Drive perimeter road. Decl. of *amicus curiae* Cherry Blossom, Inc. Event Director Emeritus Phil Stewart ("Stewart Decl.") ¶ 5.

That is consistent with NPS's own consideration of the roadway. While NPS has known of the deteriorating conditions of the seawall and promenade since at least 2011,[3] it has addressed these conditions through targeted measures, fencing off hazardous portions for visitor safety while facilitating continued recreational use of the unaffected areas, including the roadway.[4] In 2022, for example, as part of adopting traffic-safety improvements to Ohio Drive on East Potomac Park, NPS acknowledged that "portions of the seawall and path [were] closed" and "structurally unsound," and would "not reopen for the next several years."[5] Yet NPS affirmatively dedicated roadway space to pedestrians and cyclists, with the aim of "[i]mprov[ing] traffic safety for all visitors." First Amicus Br., App. G at 5. The following year, in a 2023 Cultural Landscapes Inventory of East Potomac Park, NPS again recognized that although sections of the promenade adjacent to the seawall had been "closed from public use," Ohio Drive continued to "facilitat[e] active and passive recreational pursuits" including by "people walking, jogging, and bicycling"—consistent with the functions established in East Potomac Park during its historic district "period of significance." Defs.' Notice, Ex. A at 123–24, Dkt. No. 111-3 (2023 Cultural Landscapes Inventory of East Potomac Park); *see also id.* at 9 (identifying period of significance for East and West Potomac Parks Historic District as 1882 to 1997, per revised National Register nomination).

---

[3] *See* Defs.' Notice, Ex. B (2011 Phased Rehabilitation Plan for East Potomac Park, West Potomac Park and the Tidal Basin), Dkt. No. 111-4.

[4] *See* Defs.' Notice, Ex. D, at 3–19 (2026 East Potomac Park Seawall Promenade Condition Survey) (aerial photographs reflecting barricades and fencing of East Potomac Park seawall and promenade).

[5] First Amicus Br. at 10; *id.*, App. G at 5, Dkt. No. 97-7 (NPS, *East Potomac Park Traffic Safety Improvements Final Concept Presentation* (Nov. 2022)).

Consistent with this targeted management, NPS has continued to approve East Potomac Park race-course maps that incorporate substantial portions of the Hains Point perimeter roadway. From 2021 through 2026, for example, NPS approved permits for the Credit Union Cherry Blossom Ten Mile Run, whose course, as noted above, includes the Ohio Drive perimeter road. *See* Stewart Decl. ¶ 5. As the race's organizer of more than three decades attests, at no point during this period did NPS "raise the condition of the East Potomac Park seawall as a safety concern or as a possible reason for re-routing the race course." *Id.* ¶¶ 1, 5. Rather, NPS "continued to authorize the race's use of Ohio Drive" and worked with *amicus* Cherry Blossom, Inc. on "course operations and participant safety." *Id.* ¶ 5.

NPS has continued to approve other races, including, as Plaintiffs note, the Marine Corps Marathon. *See* Pls.' TRO Mem. at 10. That NPS-approved marathon is one of the nation's largest, and it saw more than 24,000 finishers on October 25, all of whom used the Park's perimeter road.[6] The race day was just three days before Comptroller Bowron submitted her October 28 declaration basing the Park's closure in part on the deteriorating conditions of the seawall and promenade. *See generally* Bowron Decl.

*Amici's* and NPS's historic uses and management of East Potomac Park do not establish that conditions along the seawall and promenade have remained static, or that unsafe portions of these areas should remain open. But they do establish that the deterioration of the seawall and promenade, and NPS's targeted fencing of hazardous segments, have long coexisted alongside *amici*'s and NPS-authorized recreational uses of Ohio Drive. *See, e.g.*, Sarge Decl. ¶ 16. Having as recently as October 25 permitted tens of thousands of runners to travel Ohio Drive despite the

---

[6] *See* Marine Corps Marathon Org., *2026 Marine Corps Marathon Top Finishers*, https://track.rtrt.me/e/MCM-2026#/leaderboard/top-marathon-guntime-_ALL/FINISH-M [https://perma.cc/4DJH-3KUT] (last visited Nov. 6, 2026).

seawall and promenade's longstanding deteriorating conditions, NPS has not explained why those same conditions can, days later, rationally support closing the roadway to the public altogether.

To be sure, *amici* do not question NPS's authority to close Ohio Drive to the extent actually necessary to accommodate seawall construction or repairs. But Defendants have identified no seawall work scheduled to begin on November 15 or otherwise requiring closure of Ohio Drive on that date. Rather, Defendants' October 30 submission to the National Capital Planning Commission, *see* Dkt. No. 128-1, makes clear that the planned closure is part of efforts to implement the Washington National Plan, undermining Defendants' invocation of longstanding safety conditions—up to now addressed through measured restrictions—as a basis for completely closing the Park on November 15, *see* Defs.' Notice at 2, Dkt. No. 111.

Agency action requires a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). On the present record, Defendants have not identified what has changed on the roadway itself that would necessitate eliminating the public's longstanding use of it in its entirety.

## II. NPS Has Disregarded Its Own Closure Regulations.

The planned closure of East Potomac Park south of Buckeye Drive is problematic for the additional reason that NPS has disregarded its own regulations governing the closure of park areas to public use. *See* 36 C.F.R. § 1.5. "[I]t is axiomatic . . . that an agency is bound by its own regulations," and "an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Alon Ref. Krotz Springs, Inc. v. Env't Prot. Agency*, 172 F.4th 12, 17 (D.C. Cir. 2026) (citation omitted).

Section 1.5 provides that prior to implementing a closure of "all or a portion of a park area" to public use or "a specific use or activity," the NPS superintendent shall prepare a written determination that explains the basis for the closure and provides an "explanation of why less restrictive measures will not suffice." 36 C.F.R. § 1.5(c). Defendants have provided no such explanation. Comptroller Bowron's declaration does not explain why the targeted fencing of the seawall and promenade—a "less restrictive measure[]" that NPS has long employed, *id.*—will no longer suffice.[7]

Further, the planned closure of East Potomac Park in its entirety south of Buckeye Drive would necessarily "significant[ly] alter[] . . . the public use pattern of the park area" and is plainly "controversial." 36 C.F.R. § 1.5(b). Under those circumstances, NPS must proceed through notice-and-comment rulemaking. *See* First Amicus Br. at 18–19; *see also* Pls.' TRO Mem. at 18–21. Until those procedures are followed, NPS is bound by its own regulation not to implement the planned closure.[8]

## III. *Amici* Will Suffer Irreparable Harm.

"A threatened injury is irreparable if it is 'certain and great,' 'actual and not theoretical,' and 'beyond remediation' at a later date." *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 190 F.4th 990, 1011 (D.C. Cir. 2026) (citations omitted). *Amici* are likely to suffer irreparable harm absent preliminary relief here.

---

[7] Nor is that approach limited to East Potomac. NPS recently rehabilitated the seawalls at the Tidal Basin and West Potomac Park by phasing construction and restricting affected areas without closing those parks in their entirety. *See* Pls.' TRO Mem. at 9 n.7, 21.

[8] Nor does the planned closure constitute an "emergency situation[]" exempting Defendants from these requirements. 36 C.F.R. § 1.5(b), (c); *see* Pls.' TRO Mem. at 21.

### A. The Closure Would Eliminate Distinctive Opportunities for Runners to Train and Race.

For runners, cyclists, and triathletes, including *amici*, the perimeter roadway's relatively flat terrain, long straightaways, extended loop, and separation from urban congestion make it particularly useful for long runs, repeated laps, and sustained workouts.

Individual *amicus* Sarge has used the Ohio Drive perimeter roadway around Hains Point for "running and cycling training" for approximately fifteen years, including to train for the "cycling portion of triathlons." Sarge Decl. ¶ 2. The roadway "forms a relatively flat loop," enabling a cyclist to "complete repeated laps" and "accumulate substantial distance while riding continuously solo or in groups" without having to stop repeatedly for traffic lights or cross traffic—a workout that "more closely resembles the continuous riding required in a triathlon" than the stop-and-start riding characteristic of city streets, and that is more accessible than "other popular cycling routes in the region." *Id.* ¶¶ 3–4, 6. Other triathletes and endurance cyclists in the Washington area use Hains Point for similar reasons, and its features are equally valuable to runners. *Id.* ¶¶ 5, 7.

The closure would also eliminate opportunities for runners to race—not only in major events like the Cherry Blossom Ten Mile Run, but also in smaller, lower-cost races that are an "important part of the local running community." *Id.* ¶ 10. Because the Hains Point course has "few intersecting roads" and relatively "limited interaction with ordinary traffic," races on Hains Point can be staged with relatively "little police coverage" and "low entry fees." *Id.* ¶ 8. The Al

Lewis 10 Mile race on Hains Point, for example, is a low-cost race that nevertheless draws a strong, competitive field of local runners. *Id.* ¶¶ 9–10.[9]

Closing Ohio Drive would necessarily eliminate the location used by the Al Lewis 10 Mile, along with other "low-key local road races." *See id.* ¶¶ 8–9. For *amici* and other runners, that outcome is of consequence. Smaller races provide ordinary runners and triathletes with opportunities to compete throughout the year at comparatively modest cost. *Id.* ¶ 10. The closure of Hains Point would thus not simply require *amici* and other athletes to select another place to train. It would eliminate a distinctive recreational opportunity and training setting unlike any other in the District or its environs, which Hains Point's physical characteristics help make possible.

Finally, *amici* value Hains Point for reasons that are neither competitive nor utilitarian. The perimeter roadway largely follows the Potomac River and Washington Channel, offering "open views of the water, mature trees, and open parkland." Sarge Decl. ¶ 17. For *amicus* Sarge, these qualities are an "important part of the experience of running and cycling there." *Id.* And for *amici* and other members of the public who regularly choose to run, walk, cycle, or engage in other recreational activities along the perimeter roadway precisely because of its scenic setting, other "accommodat[ions]" contemplated by Defendants' concept submission—*i.e.*, West Potomac Park and the Tidal Basin—are not substitutes. Dkt. No. 128-1, at 37 (proposing that new "biking, walking, [and] fishing" opportunities "affected by the project" along the promenade and Ohio Drive will be "accommodated nearby, such as at West Potomac Park and the Tidal Basin").

---

[9] *See* DC Road Runners, *Al Lewis 10 Miler and 5 Miler*, https://runsignup.com/Race/DC/Washington/AlLewisTenMiler [https://perma.cc/D277-J9TT] (last visited Nov. 6, 2026).

### B. The Closure Would Eliminate an Iconic Portion of the Credit Union Cherry Blossom Ten Mile Run.

*Amicus* Cherry Blossom, Inc. is also likely to suffer irreparable harm given the closure's impact on the Cherry Blossom Ten Mile Run. The Run has used East Potomac Park and Ohio Drive as part of its race course "since the inaugural race in 1973," apart from limited periods when "construction or other circumstances" required temporary rerouting. Stewart Decl. ¶ 3. The race now attracts more than 20,000 participants, *see* First Amicus Br. at 1, and for more than five decades, roughly three of its final miles—miles 7, 8, and 9—have taken runners beneath the canopy of hundreds of cherry trees lining the Hains Point roadway, *see* Decl. of *amicus curiae* Cherry Blossom, Inc. Event Director Rob Wolfe ("Wolfe Decl.") ¶¶ 3–4; Stewart Decl. ¶ 3. This portion of the course is among the most "recognizable parts of the race." Wolfe Decl. ¶ 4; *see also* Stewart Decl. ¶ 6 (describing Hains Point as a "distinctive segment of the course for both recreational and competitive runners"). Recreational runners associate the roadway with "the identity of the race," and elite athletes have set multiple world and American records on the segment's "relatively flat and uninterrupted configuration." Wolfe Decl. ¶ 5. Indeed, the Cherry Blossom Ten Mile Run has served as host of the USA Track & Field 10 Mile Championships since 2023 and is scheduled to do so again in 2027. *See id.*

The next Cherry Blossom Ten Mile Run is scheduled for April 4, 2027. Wolfe Decl. ¶ 6. The consequences of the planned closure would arise well before race day. If Ohio Drive is closed, *amicus* Cherry Blossom, Inc. would be "unable to use the Hains Point portion of its customary course" and would need to develop and obtain approval for a "materially different course." *Id.* Doing so would require "coordination with NPS," "potentially the District of Columbia government," and "other governmental authorities," and would raise "logistical, operational, and participant-safety considerations" for Cherry Blossom, Inc. to address within the relatively short

time remaining before the April 2027 scheduled race. *Id.* ¶ 7. Any alternative course would also likely require "increased public safety resources and personnel," given the "need to secure additional traffic intersections." *Id.* And no substitute could make the race whole. Although Cherry Blossom, Inc. has "adapted its course when circumstances required it," another location would "not reproduce Hains Point's combination of a long, flat roadway, waterfront views, and hundreds of Spring-flowering cherry trees." *Id.* ¶ 8; *see also* Stewart Decl. ¶ 6 (identifying Hains Point as "an important part of the event").

* * *

The harms described above are "'beyond remediation' at a later date." *Ctr. for Taxpayer Rts.*, 190 F.4th at 1011 (citation omitted). Runners and cyclists cannot recover the months of lost access to Hains Point; athletes cannot recreate training opportunities that have passed; race organizers cannot later restore races that could not be held because the course was closed; and sightseers cannot retrieve lost days in the Park. Once those opportunities are lost, "there can be no do over and no redress." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (citation omitted).

**IV. The Balance of Equities and Public Interest Favor Preliminary Relief.**

Where, as here, "the Government is the opposing party," the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). That merger does not drop public interest from the analysis. "There is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations," and there is "generally no public interest in the perpetuation of unlawful agency action." *Ctr. for Taxpayer Rts.*, 190 F.4th at 1011 (citation omitted). The Court must also account for the concrete harms the closure would impose on members of the public, including *amici* and other recreational users of

East Potomac Park. Those considerations weigh strongly in favor of preserving public access while this litigation proceeds.

And Defendants would not suffer from the requested relief. *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022) ("weighing the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined" and concluding balance favors plaintiffs (citation omitted)); *see also* Pls.' TRO Mem. at 34. Preliminary relief would not require Defendants to reopen portions of the seawall or promenade. It would mean continuing the approach NPS has long employed—preserving public access to the established recreational roadway while continuing to restrict hazardous areas of the seawall and promenade from public use. And temporarily preserving that roadway while the Court evaluates the legality of the closure would advance—not frustrate—the public purpose for which the Park has long been managed: "as a park for the recreation and pleasure of the people." Act of Mar. 3, 1897, ch. 375, 29 Stat. at 624.

## CONCLUSION

For the foregoing reasons, *amici* respectfully submit that this Court should grant Plaintiffs' Motion for Temporary Restraining Order or Stay, and Plaintiffs' requested relief.

Respectfully submitted,

*/s/ Alan Pemberton*

Alan Pemberton (D.C. Bar No. 367108)
Rachel Bercovitz (D.C. Bar No. 1780904)
Basundhara Mukherjee (D.C. Bar No. 90025431)
Covington & Burling LLP
850 Tenth St. NW
Washington, D.C. 20001
Phone: (202) 662-6000
apemberton@cov.com
rbercovitz@cov.com
bmukherjee@cov.com

*Counsel for* Amici Curiae *Hains Point Runners and Cherry Blossom, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Local Civil Rule 7(o)(4) because it does not exceed 25 pages. I further certify that this brief complies with the Court's typeface and type style requirements for motions because it has been prepared in a proportionally spaced typeface using 12-point, Times New Roman font, two spaces between sentences, double spacing, and with page numbers and margins of no less than 1 inch.

Respectfully submitted,

*/s/ Alan Pemberton*

Alan Pemberton (D.C. Bar No. 367108)
Covington & Burling LLP
850 Tenth St. NW
Washington, D.C. 20001
Phone: (202) 662-6000
apemberton@cov.com

*Counsel for* Amici Curiae *Hains Point Runners and Cherry Blossom, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, an electronic copy of the foregoing was filed with the Clerk of Court for the United States District Court for the District of Columbia using the Court's CM/ECF system and was served electronically by the Notice of Docket Activity upon registered CM/ECF participants.

Respectfully submitted,

*/s/ Alan Pemberton*

Alan Pemberton (D.C. Bar No. 367108)
Covington & Burling LLP
850 Tenth St. NW
Washington, D.C. 20001
Phone: (202) 662-6000
apemberton@cov.com

*Counsel for* Amici Curiae *Hains Point Runners and Cherry Blossom, Inc.*