Office of the Attorney General
Washington, D.C. 20530

MEMORANDUM

TO: All Assistant Attorneys General
All United States Attorneys

FROM: EDWIN MEESE III
Attorney General

SUBJECT: Department Policy Regarding Special Masters

These guidelines are promulgated in order to give central direction to the government's positions in cases involving special masters. They set out the Department's policy on the use of masters, the criteria by which master appointments are to be assessed, and procedures which attorneys for the United States are to follow. For the first time, the Department of Justice here adopts a policy with respect to the costs of special masters in light of the doctrine of sovereign immunity. The guidelines are to be followed in all cases tried by counsel under the Attorney General's direction, except those in the Supreme Court of the United States and those in state courts under the McCarran Amendment, 43 U.S.C. § 666.

## I. General Policy on the Use of Masters

It is the position of the Justice Department that, as a general matter, the judicial power vested by the Constitution in the courts is to be exercised by judges and their legislatively created subordinates, such as United States Magistrates. This policy accords with Rule 53 of the Federal Rules of Civil Procedure, under which the appointment of special masters and other non-legislative judicial delegees is to be considered the exception rather than the rule. Special masters are an acceptable aid to judicial officers in a narrow range of cases, but they are not a substitute for Article III judges.

The appropriate role for special masters is in situations where the demands on the decisionmaker's time are great but the need for judicial resolution is minimal. Masters can be useful where decisions are (1) routine, (2) large in number, (3) minimally connected to the substantive issues in a case, and (4) not sufficiently difficult or significant to require a constitutional or legislative officer. A principal example is the class of cases involving unusually extensive discovery proceedings, in which a large number of minor decisions must be made concerning

questions such as discoverability and privilege. In situations of that sort, the special master is a legitimate and valuable part of the judicial process. Masters can also play a role in the remedial stage of a proceeding, where there is a need for monitoring of a judicial order clear enough to require no adjudicative decisions by the master.

The fact that masters are not substitutes for judges has several significant consequences:

1. Masters should not be employed simply to alleviate congestion or lighten workloads, if to do so would result in a master performing a judge's function. The appropriate level of staffing for the federal courts is a decision for Congress, not for individual judges. The fact that a case is large or complex, and thereby represents an above-average burden on scarce judicial resources, will generally mean that the judge should spend more time on the case, not that ad hoc officers should be appointed.

2. The fact that a case presents difficult technical issues should not be considered as weighing in favor of the appointment of a master. Hard factual problems are to be addressed through the normal techniques of trial, including the presentation of expert testimony. If necessary, the trial court can appoint its own expert witnesses. It is a serious error, however, for a master, who is a hearing officer and fact-finder, to be confused with someone who develops and presents evidence. Masters should not be appointed for this purpose, and their use as de facto experts should be resisted when it occurs.

3. Masters are not appropriate when their decisions will have to be reviewed by the judge in substantial detail. Such an arrangement is uneconomic and, more importantly, inadequately serves the right of litigants to have any significant question resolved in the first instance by a constitutional or statutory judicial officer.

4. Masters should not be employed as part of non-judicial alternative dispute resolution methods. The United States favors the use of alternative dispute resolution methods such as minitrials, arbitration and mediation. Insofar as these methods are not part of the judicial process proper, masters, who are ad hoc judicial officers, should not be used as neutral parties in such situations. And insofar as encouraging or facilitating alternative dispute resolution requires the judgment or authority of the court, it is not appropriate for master involvement because the use of masters should be restricted to more ministerial functions.

5. Masters should not be entrusted with issues that are novel, difficult, closely related to the outcome of the case, or significant from the point of view of policy. Such issues demand the attention of life-tenured judges who have gone through the rigorous process of judicial selection, and are insulated in their decisionmaking by the constitutional protections surrounding their office.

6. It is inappropriate for a court to use a master to extend its own power. Masters should not be a tool for bringing under the control of the court matters that otherwise would be resolved elsewhere. This is particularly important when the United States is a party, because in such cases the enhancement of judicial power will usually be at the expense of a coordinate branch of government.

7. Masters should be employed only in cases where their utility justifies the additional cost. Judges and magistrates are already made available at public expense, as a result of the decision that certain services are to be provided without cost to litigants. The imposition on the parties of additional expenses can be justified only by the prospect of a substantial increase in litigation efficiency; such an imposition merely to save the time of officers that Congress has determined shall be available to all is improper.

## II. Procedures in Master Cases

### A. The Decision on Appointment

#### 1. Application of the Criteria

The Department of Justice favors the use of special masters only in the narrow class of lawsuits discussed above. Accordingly, before proposing to the court that a master be appointed, attorneys for the United States must analyze the case in light of the principles set out here. A master should be suggested only if counsel judge that (1) the case (or order to be implemented) contains enough of the routine, minor issues that are appropriate for master resolution to justify the additional expense and delay, and (2) it appears very unlikely that the master would function in an improper fashion. The same considerations will govern the response of counsel of the government to another party's suggestion that a master be employed.

#### 2. Sua Sponte Appointments

The Department believes that courts should appoint masters on their own motion only after consultation with the parties. Accordingly, any time a judge raises the possibility that a master be appointed sua sponte, government counsel should request the opportunity to be heard on both the advisability of

the appointment and the appropriate role of the master. When a court appoints a master without discussing the possibility beforehand, the United States will generally seek a reconsideration of the decision. This should be done even when we agree with the appointment, in order to encourage the court to make its reasons explicit and, if possible, to adopt the principles enunciated here. In the very exceptional case where a motion for reconsideration would seriously undermine the government's overall position, litigation strategy may dictate that a sua sponte appointment not be challenged at all.

3. Acquiescence in Appointments

Sound litigation strategy also may dictate that the government acquiesce in the appointment of a master even when the Department's policies would indicate opposition. Counsel may decide that a major concession by another party justifies such acquiescence, or that a clear intention by the judge that a master will be employed should not be resisted. Acquiescence should be the exception and not the rule, however, and should never occur when there is a significant danger that the master would perform essential judicial functions or operate significantly to increase the power of the court relative to that of another branch or level of government.

B. Selection of the Master

1. Procedures

Because a special master is an ad hoc officer appointed for a particular case and paid for by the litigants, selection of the individual who is to act as a special master should be as much in the hands of the parties as feasible. Whenever possible, the parties should consult together and agree on a master, or on a list of suggested names. Similarly, the litigants should have an opportunity to comment on any candidate the court is considering and may request the judge to invite comments on several possible masters. Unless case-specific considerations strongly dictate otherwise, the United States will press for the exercise of these procedural rights. When a judge simultaneously announces his decision to appoint a master and the name of the individual who is to serve, the government will usually request that the appointment be reconsidered along with the decision to make it, and will then comment on the prospective master as well as on the advisability of using one.

2. Criteria for Selection

a. Qualifications. In choosing or commenting on proposed masters, the United States will be guided primarily by considerations of technical competence and impartiality. A master is a hearing officer, not an expert. Therefore, while it

is not always vital that a master be closely conversant with the subject matter of the case, it is necessary that he be thoroughly familiar with any procedural questions he is to handle -- privilege issues, for instance.

b. Independence. It is also important that the master be unbiased, not only as between the parties, but in his relationship with the judge: it is the duty of both the master and the judge to disclose to the parties any personal or business association between them that might impair this independence of judgment. Moreover, the master should exercise his independent judgment, and the judge should review the master's decisions on the merits. Accordingly, the United States must examine carefully the likely impartiality of any prospective master who is a close associate of the judge making the appointment.

c. Cost. Economy must also be considered in assessing possible masters. Individuals whose time is expensive, or who operate in institutions the services of which are costly, are to be avoided in favor of similarly qualified and unbiased candidates who will involve less expense.

d. Improper Role. Finally, in analyzing a candidate's desirability, counsel should take into account any indications that he would diverge from the appropriate role of the master. Any reason to believe that the master would wish to exercise significant judicial power, or would be disposed to seek to aggrandize the authority of the court, must weigh against the candidate.

Generally, the government will consider first United States Magistrates and semi-active judges, whose qualifications under these criteria will tend to be strong.

3. Implementation by Divisions

In implementing these guidelines, each litigating division of the Department shall decide whether its work involves masters often enough to warrant a review of possible candidates. It is anticipated that the Civil Division, Civil Rights Division, and Land and Natural Resources Division will probably find such a review appropriate; others may also. These divisions shall develop, by [three months after effective date of guidelines], specific criteria of acceptability along the lines outlined here and shall, if the Assistant Attorney General finds it appropriate, prepare lists of possible appointees who would probably be acceptable to the Department in cases of various kinds. Division heads shall establish mechanisms to ensure that government litigators in cases that may involve masters have these criteria and lists available at the earliest possible stage. These mechanisms shall be reported to the Deputy and Associate Attorneys

General and the other litigating divisions by [four months after effective date].

C. Statement of Masters' Functions

These guidelines delineate the functions of masters that the Department of Justice believes to be appropriate. It is important that, whenever a master is appointed, his role in the case be made explicit at the outset. Accordingly, the United States will always propose a clear statement of the work the master is to do, and, if appropriate, a reference to the functions he is not to undertake. Whenever possible, the parties should agree to such a statement and submit their agreement to the judge. When this is not feasible, the government will urge the court to make an explicit statement of function. The United States will press for a mandate for the master consistent with these policies.

It is also important that clear provision be made at the outset for fees and expenses. The parties should agree to, or the court should adopt after comment, an understanding as to the master's billing rate, his authority to employ assistants and their rate of compensation, the expenses that will be allowed, and any other funding matter, including the procedures that are to be used to monitor and verify spending. The United States will always resist any expenditures by the master in the absence of such an understanding. Of course, the government will also insist that the master be allowed only such expenses as are necessary to effective operation. Litigating divisions that employ masters frequently, by [2 months after effective date], should establish more specific guidelines concerning proper categories and levels of expenditures.

D. Monitoring

Throughout any litigation involving a special master, government counsel shall pay close attention to the master's conduct of his office. Any deviation from the role assigned by the court, or the role endorsed for masters in general under these guidelines, should be reviewed with appropriate officers of the Department and should generally be brought to the attention first of the master and then of the court if that proves necessary. If this deviation persists in the face of objection by the government, serious considerations will be given to a motion to remove the particular master or to revoke the order of reference altogether.

Similarly, financial accountability must be maintained during the case. Counsel generally should raise immediately any doubts concerning the level or types of expenditure being made by the master. Frequently, of course, other parties (on both sides)

will have interests similar to the government's, and should be consulted when cost issues arise.

## III. Payments of Masters' Costs by the United States

The United States are sovereign, and are subject to suit only by their own consent. Courts will assess judgments against the sovereign only on a showing of an explicit and unequivocal waiver of this immunity. The fees and expenses of special masters are a cost of court, paid by parties pursuant to judgments; Congress has not enacted legislation generally waiving sovereign immunity with respect to this category of costs. Accordingly, except in cases where there is a specific statutory waiver that covers the costs of special masters, the United States may not be compelled to pay them. These principles are elaborated on in the first attached memorandum from the Office of Legal Counsel.

The government may elect, nevertheless, voluntarily to pay some or all of the costs of a master in a particular case (this point is elaborated on in the second attached memorandum from the Office of Legal Counsel). When the United States proposes a special master, or agrees to one proposed by another party or the court, arrangements will be made for the government to pay its proper share. Counsel may enter into an agreement under which each party will pay some portion of the costs approved by the court, or may provide that the losing party or parties will pay all of the master's expenses.

When a master is appointed over the government's objection, or with the government's acquiescence in a situation where these guidelines would normally call for opposition to appointment, the United States will refuse to pay any fees or expenses, and will notify the court of that refusal and the grounds therefore, when:

(1) government counsel believe the master to be unqualified or seriously biased;

(2) it appears clear that the master will be performing essential judicial functions with respect to issues closely related to the outcome of the case or sensitive from the point of view of policy;

(3) there is strong reason to believe that the use of the master will increase the authority of the court over another branch or level of government in derogation of constitutional principles; or

(4) the master's work will clearly have to be reviewed by the judge to such an extent as to render the master largely redundant.

Subject to procedures and policies established by the heads of litigating divisions, the United States may refuse to pay a master's costs for any other reason comparable in importance to those set out here. The decision not to pay for an officer the court has appointed should be approved by the responsible Assistant Attorney General.

Only in the rarest of cases will litigation strategy lead to a payment in a case where these guidelines dictate otherwise. While litigators usually will be disinclined to offend the judge conducting their proceedings, the United States must be willing to rely on the judiciary's ability to put aside unrelated irritations in making substantive decisions. Refusal to pay for a court-appointed master should always be explained carefully, with stress laid on the gravity of the considerations that have led to the decision, and on the imperative nature of Department policy as set forth here.

IV. Internal Procedures for Payment

Once a special master has been appointed, and the government has determined that the appointment is appropriate or that the government will acquiesce and pay its share of the fees and expenses of the master, the government attorney will submit an obligation of payment form to the administrative office for the division or U.S. Attorney's office. Until the Justice Management Division prescribes a form for special masters, OBD-47, "Request and Authorization for Fees and Expenses of Witnesses," will be used. The attorney should note on the form that it is being used for a special master. The division administrative officer will forward the OBD-47 to Financial Operations Services; administrative officers for U.S. Attorneys' offices, to the U.S. Marshal's office for that district.

Internal procedures for paying the master will follow the same procedures used for payment to experts and consultants. The master will submit an itemized invoice (OBD-84 and 85, "Pay Voucher for Special Services," may be used for this purpose) to the government attorney who, in turn, will submit the invoice to the administrative officer to be forwarded either to Financial Operations Services or the U.S. Marshal's office, as prescribed above. Upon the order of the court, partial or advance payment of fees and expenses will be handled through these same procedures.

Fees and expenses of Land Commissioners will not be paid by the Department. Funds for the payment of Land Commissioners are appropriated to the Administrative Office of the U.S. Courts, and the commissioners should look to that office for their fees and expenses.

V. Review of These Guidelines

The principles set out here must be tested and reviewed in light of the Department's ongoing experience with special masters, and in particular its experience under these guidelines. Accordingly, as of this date, each Assistant Attorney General heading a division that uses masters will institute procedures for the analysis of cases involving masters, with special attention to the effect of these guidelines. Counsel in master cases should report any need for clarification or expanded coverage, and any difficulties with other parties or the courts that appear to result from the application of these policies. The Assistant Attorney General for Legislative and Intergovernmental Affairs will report on any congressional reaction. In order to coordinate review, the Litigation Strategy Working Group will continue to meet periodically to discuss masters issues; Assistant Attorneys General should call any significant court reactions to the guidelines to the Group's attention.