**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DC PRESERVATION LEAGUE, *et al.*,

*Plaintiffs*,

*vs.*

UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,

*Defendants*.

Case No. 1:26-cv-477

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' SECOND MOTION FOR EXPEDITED DISCOVERY**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. The Court should grant targeted extra-record discovery here. ........ 3

II. Expedited discovery is reasonable and necessary to support Plaintiffs' forthcoming preliminary injunction motion ........ 5

a. Plaintiffs' discovery requests are narrow ........ 5

b. Plaintiffs seek discovery in furtherance of a permissible purpose ........ 6

c. Plaintiffs' requests are not burdensome ........ 7

III. Third-party subpoenas are appropriate in this case to reach information outside Defendants' control. ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

**AFL-CIO v. Dep't of Lab.*,
349 F.R.D. 243 (D.D.C. 2025) ........ *passim*

*All. for Retired Ams. v. Bessent*,
No. 25-0313, 2025 WL 1114350 (D.D.C. Mar. 20, 2025) ........ 2

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) ........ 5, 8

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 2, 4, 5

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70 (D.D.C. 2018) ........ 8, 9

**Guttenberg v. Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014) ........ 2, 5, 6

*Landwehr v. FDIC*,
282 F.R.D. 1 (D.D.C. 2010) ........ 7

*Marshall Cnty. Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) ........ 2, 3

*Menkes v. U.S. Dep't of Homeland Sec.*,
637 F.3d 319 (D.C. Cir. 2011) ........ 2

*Strike 3 Holdings, LLC v. Doe*,
331 F.R.D. 14 (E.D.N.Y. 2019) ........ 8

*Theodore Roosevelt Conservation P'ship v. Salazar*,
616 F.3d 497 (D.C. Cir. 2010) ........ 4

*Toshiba Int'l Corp. v. D'Agostino*,
No. 4:19-cv-4274, 2019 WL 13191647 (S.D. Tex. Dec. 13, 2019) ........ 9

## FEDERAL STATUTES

5 U.S.C. § 705 ........ 5

## FEDERAL RULES

Fed. R. Civ. P. 26 ........ 9

Fed. R. Civ. P. 45 .......... 1, 8, 9

## INTRODUCTION

When Plaintiffs moved for a temporary restraining order against Defendants' November 15 closure of East Potomac Park, ECF 139, Defendants disputed that the closure was a step in implementing the Washington National Plan ("WNP"). Instead, Defendants justified the closure by pointing to the absence of a golf course operator (whose absence they had just negotiated) and their claimed need to close the park for safety reasons until they could repair East Potomac Park's seawall (plans for which do not yet exist). ECF 147 at 3.

Plaintiffs intend to move for a preliminary injunction against the closure. To support their motion, though, Plaintiffs need discovery that will allow them to scrutinize Defendants' two justifications. Discovery into Defendants' stated justifications and the "coincidental" timing of the closure can be obtained in part, as in prior hearings, from Defendants—in particular, testimony from Acting Director Bowron and Superintendent Griess. But other crucial information is solely in the possession of a third party: the National Links Trust. This motion concerns the latter.

Regarding the lack of a golf course operator, Plaintiffs seek documents and deposition testimony from the National Links Trust, which held a 50-year lease at East Potomac Golf Course from 2020 until 2025, then remained as East Potomac's operator in a holdover capacity until November 15, 2026. The circumstances concerning the November 2026 abrupt departure are relevant and pertinent to Plaintiffs' argument that Defendants ousted the National Links Trust in November 2026 as a step in implementing the WNP and to engineer grounds for closing the golf course and the Park by leaving East Potomac Golf Course without an operator. Plaintiffs accordingly seek leave to issue a subpoena pursuant to Federal Rule of Civil Procedure 45 as described below and attached to produce evidence and provide deposition testimony concerning Defendants' communications with NLT in furtherance of its decision to close East Potomac Park.

## LEGAL STANDARD

District courts have broad discretion over discovery issues arising before them. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (emphasizing the court's "broad discretion in handling discovery"). Typically, judicial review in APA cases is "limited to evaluating . . . the existing administrative record." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). Nevertheless, extra-record discovery is appropriate "when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 339 (D.C. Cir. 2011) (citation omitted). Discovery in such cases "is not so much 'fact-finding' as it is 'filling in gaps . . . to determine what the agency actually did.'" *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)).

When extra-record "discovery is otherwise permissible, courts in this District evaluate requests for *expedited* discovery under a multi-factor 'reasonableness' or 'good-cause' test." *All. for Retired Ams. v. Bessent*, No. 25-0313, 2025 WL 1114350, at *2 (D.D.C. Mar. 20, 2025) (emphasis in original). Reasonableness is a discretionary inquiry, to be considered "in light of all of the surrounding circumstances." *Guttenberg*, 26 F. Supp. 3d at 98 (internal citations and quotations omitted). Five such circumstances are: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden . . . to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal citations and quotations omitted).

## ARGUMENT

Plaintiffs' proposed discovery requests narrowly seek to provide a sufficient record for this Court's review of Plaintiffs' forthcoming preliminary injunction motion.[1] Given the absence of any administrative record concerning Defendants' decision to close East Potomac Park on November 15, and given the serious gaps, contradictions, and red flags in Defendants' declarations and the representations of Defendants' counsel, numerous facts going to the heart of Defendants' decision to close the park remain unknown. *See, e.g.*, ECF 159 at 3 ("The Court, based on the current record, readily finds that these explanations are pretextual."). This necessitates extra-record discovery to "fill[] in gaps . . . to determine what the agency actually did." *AFL-CIO*, 349 F.R.D. at 249 (quoting *Marshall Cnty. Health Care Auth.*, 988 F.2d at 1227). Extra-record discovery is therefore necessary to resolve Plaintiffs' forthcoming motion for preliminary injunction, and Plaintiffs' discovery requests are reasonable, appropriately tailored, and will impose minimal burden on Defendants and NLT.

### I. The Court should grant targeted extra-record discovery here.

Third-party discovery requests and a corresponding subpoena *ad testificandum* to the National Links Trust are warranted for two reasons.

First, the existing record is so bare as to prevent effective judicial review of Defendants' asserted grounds for closing East Potomac Park and Golf Course. In fact, aside from Defendants' self-serving declaration that ties the closure decision to NLT's departure, *see* ECF 111-2 (Third Decl. of Jessica Bowron) ¶¶ 6 (NLT "will no longer operate in a holdover status"), 18 ("Based on these facts . . ."), and a belated Record of Determination issued weeks after Defendants decided to close the Park, *see* ECF 155—neither of which even acknowledges Defendants' conceded purpose

[1] For the avoidance of doubt, Plaintiffs reserve the right to take broader discovery in due course in summary judgment proceedings.

in closing the Park to "implement [the President's] direction," ECF 107 at 4—Defendants have produced no evidence at all (much less in a true administrative record) that would allow Plaintiffs to test Defendants' conflicting rationales for announcing the closure of East Potomac Park on November 15. *See also* ECF 159 at 2 ("[T]he Government concedes this is not the full story."). That is precisely the situation in which courts have held that extra-record discovery is appropriate in APA cases. *AFL-CIO*, 349 F.R.D. at 249 (observing that "the relevant parts of an administrative record are typically the facts before the agency and reasons the agency gave ex ante") (emphasis in original). This information is essential to ensure that the Court can resolve the forthcoming motion for preliminary injunction on a complete and accurate record. Furthermore, extra-record discovery is appropriate "when there has been a strong showing of bad faith." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (quoted by Court's opinion granting preliminary injunction, ECF 103 at 23). The Court has made such a finding. ECF 103 at 23; *see also Dep't of Com.*, 588 U.S. at 781. That finding offers an additional basis for allowing extra-record discovery.

Second, the void of evidence should be addressed through third-party subpoenas *duces tecum* and *ad testificandum* to NLT. The Court should authorize such discovery from NLT because it alone possesses crucial information regarding Defendants' communicated reasons for terminating NLT's lease and holdover status, NLT's ability to continue operating the golf course, as well as information that could provide insight as to whether Defendants' asserted justifications for closing the park are pretextual. As set forth above, the administrative record Defendants produced does not shed any light on the closure decision, is contradicted by evidence before this Court, and shines no light into Defendants' true motivations for negotiating the end of NLT's

holdover lease at East Potomac Golf Course in October 2026. *See* ECF 159 at 2 (finding that "DOI terminated NLT's work, in part, to follow the President's directive to close the Park.").

On this record and given the appropriateness of extra-record discovery as a general matter, third-party discovery (and corresponding testimony) is particularly appropriate because Plaintiffs "provide good reason to believe that [such] discovery will uncover evidence relevant to the Court's decision to look beyond the record." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). Specifically, the evidence of Defendants' justifications for terminating NLT's holdover status and NLT's ability to continue operating the golf course makes clear that targeted, additional records in NLT's possession will be "indicative of [Defendants'] bad faith or an incomplete record." *Id.*; *see also Dep't of Com.*, 588 U.S. at 782 (discovery authorized where documents show that stated reason for policy "played an insignificant role in the decisionmaking process").

## II. Expedited discovery is reasonable and necessary to support Plaintiffs' forthcoming preliminary injunction motion

The expedited discovery factors strongly favor granting the limited expedited discovery that Plaintiffs seek. Plaintiffs have already filed a successful motion for a temporary restraining order, *see* ECF 139, 159, and a motion for preliminary injunction (or 5 U.S.C. § 705 stay) is forthcoming, *see* ECF 163, which resolves the first expedited discovery factor in Plaintiffs' favor. The remaining factors likewise weigh in favor of granting Plaintiffs' requested discovery.

### a. Plaintiffs' discovery requests are narrow

Plaintiffs' proposed discovery requests are "narrowly tailored to reveal information related to the [forthcoming] preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98. Defendants' principal opposition to Plaintiffs' requests for preliminary relief has been their assertion that the decision to close East Potomac Park on November 15 was wholly

unrelated to the WNP but instead caused by the lack of a golf course operator. The evidence sought from NLT will strike squarely at the heart of that defense.

First, Plaintiffs' proposed discovery will allow the Court to resolve questions that will be at issue in Plaintiffs' motion: namely, whether Defendants terminated NLT's holdover status effective November 15 in order to manufacture a reason to close the park in accordance with President Trump's directive. If the evidence indicates that Defendants engineered the absence of an operator at the Golf Course, this information would aid in the Court's resolution of the motion for preliminary relief and any appellate review of that decision.

Plaintiffs' proposed discovery into this issue goes no further than necessary for the Court to ascertain whether Defendants' discussions with NLT indicate a connection between the decision to close East Potomac Park and the WNP (as Plaintiffs' motion for a preliminary injunction will argue) and to determine the contours of that decision. *See* ECF 98 ¶ 97.

More specifically, Plaintiffs' proposed request seeks evidence relating to the arrangement between Defendants and NLT at East Potomac Golf Course and the termination of that arrangement. That evidence could show whether Defendants' renegotiation of NLT's operator role was an effort to implement the WNP. All this information is probative as to whether Defendants' reliance on the absence of an operator is a pretextual justification for Defendants' decision to close East Potomac Park.

**b. Plaintiffs seek discovery in furtherance of a permissible purpose**

The purpose of Plaintiffs' request for expedited discovery is to support their impending preliminary injunction motion, and Plaintiffs seek to "reveal information related to the preliminary injunction as opposed to the case as a whole." *AFL-CIO*, 349 F.R.D. at 250 (quoting *Guttenberg*, 26 F. Supp. 3d at 98). At issue in the preliminary injunction motion—as was the case in Plaintiffs'

motion for a TRO—is Defendants' decision to close East Potomac Park on November 15. In addition to providing the affirmative evidence necessary to resolve that question, the information Plaintiffs seek will allow the Court to assess the reliability of the declarations on which Defendants' opposition relies. *See* ECF 159 at 5 ("In her declaration, Bowron stated that she also decided to close the Park because of NLT's termination. *See* ECF 111-2 at 2–3. She did not explain, however, why NPS decided to terminate NLT's holdover lease, why NPS does not have or cannot obtain a replacement operator, or why NPS cannot operate the Course itself."). "Plaintiffs seek discovery on these issues in part because defendants already put into the record some facts relevant to the issues." *AFL-CIO*, 349 F.R.D. at 250. And Defendants' purported justification for the closure also relies heavily on the lack of an operator for the golf course—a circumstance of Defendants' own making. ECF 155. "It would be strange to permit defendants to submit evidence that addresses critical factual issues and proceed to rule on a preliminary injunction motion without permitting plaintiffs to explore those factual issues through very limited discovery." *AFL-CIO*, 349 F.R.D. at 250.

**c. Plaintiffs' requests are not burdensome**

Courts have found expedited discovery requests to be overly burdensome when requests were not "narrowly tailored," or when the allegations at issue were "extraordinar[ily] vague[]." *Landwehr v. FDIC*, 282 F.R.D. 1, 4 (D.D.C. 2010). Expedited discovery has also been found too burdensome where movants sought "depositions of former high-level executives (with, presumably, very busy schedules) living in different parts of the country." *Id.* None of those circumstances applies here.

Plaintiffs have narrowly tailored their third-party requests for production of documents to require of NLT not much more than a search of its staff's e-mails.[2] Testimony will be no more burdensome on NLT than it has been for Defendants' witnesses—at most, likely no more than a few hours.[3]

**III. Third-party subpoenas are appropriate in this case to reach information outside Defendants' control.**

The unusual posture of this case requires that this discovery come not from a Defendant agency but from a third party that has been intimately involved in the management and operation of East Potomac Golf Course. Because Defendants have staked their opposition to interim relief on factual assertions concerning the termination of NLT's role as operator, evidence relevant to those assertions must come from NLT. Third-party discovery is particularly appropriate because Plaintiffs "provide good reason to believe that [such] discovery will uncover evidence relevant to the Court's decision to look beyond the record." *Amfac Resorts*, 143 F. Supp. 2d at 12. Plaintiffs therefore respectfully request that the Court authorize Plaintiffs to issue and serve upon NLT, under Fed. R. Civ. P. 45, the subpoenas attached hereto as Exhibits 1 and 2.

Even in the expedited discovery context, a court would ordinarily apply the familiar "undue burden" standard under Rule 45 when determining whether to grant leave to serve a subpoena. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018); *see also Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 16 (E.D.N.Y. 2019) ("If the court

[2] Plaintiffs reserve the right to seek depositions or further in-court testimony of relevant employees, including the existing declarants in this case, if warranted by responses to the proposed discovery requests in this motion. However, any such depositions would be the subject of a separate motion and are not relevant to evaluating the burdens of this motion.

[3] The fifth expedited discovery factor is at worst neutral for Plaintiffs, and more fairly can be said to favor discovery. No motion to dismiss is pending. To the contrary, this case's briefing and arguments have not only "revealed the parties' legal arguments," *AFL-CIO*, 349 F.R.D. at 253, but "[D]efendants have thus far not relied solely on legal arguments, but also on facts they put in the record . . . [that go] to the very issues on which [P]laintiffs seek discovery." *Id.* at 253 n.6.

grants leave to conduct expedited discovery on a showing of good cause, . . . a party may then serve a subpoena requiring a non-party to disclose records or provide testimony.”).

The burden imposed on NLT by the proposed subpoena is no greater than is necessary to elucidate whether Defendants “terminated NLT’s work, in part, to follow the President’s directive to close the park,” ECF 159 at 2, and whether NLT was willing or able to continue operation of the golf course beyond November 15. Plaintiffs have carefully crafted the proposed Requests to avoid unduly burdening NLT. *See* Ex. A. They are just two requests for documents and communications concerning the East Potomac Park closure and NLT’s communications with Defendants on that subject, as well as a deposition. *Id.* Because extra-record discovery from Defendants would be appropriate here, *see supra* Section I, so too is extra-record discovery from NLT, which is an appropriate third party. *See Dunlap*, 319 F. Supp. 3d at 102 (explaining that “upon a finding that expedited discovery is warranted would the Court turn to assess under Rule 45 (and Rule 26) the burden that such discovery would impose on [the third party]”); *see also Toshiba Int’l Corp. v. D’Agostino*, No. 4:19-cv-4274, 2019 WL 13191647, at *3 (S.D. Tex. Dec. 13, 2019) (permitting plaintiffs to “serve up to eight subpoenas under Federal Rule of Civil Procedure 45 on persons and entities with information relevant to TIC’s burden to establish the elements of a preliminary injunction”). Indeed, seeking this discovery from NLT creates even less burden for Defendants, because Defendants will not have to search for and produce records. On the other hand, NLT likely possesses documents and communications that would reveal the nature, scope, and timing of communications that this Court can review under the APA, but that appear nowhere in the administrative record. Barring Plaintiffs from obtaining this information would effectively insulate Defendants’ motivations for evicting NLT from judicial review. The

government cannot evade judicial review of its decision to close the Park by telling only its version of events and prohibiting Plaintiffs from exploring whether that version is complete and accurate.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs leave to serve the attached proposed third-party subpoenas on the National Links Trust.

Dated: November 18, 2026

Respectfully Submitted,

Abbe David Lowell (Bar No. 358651)
Caleb Hayes-Deats (Bar No. 1643213)
Jack Bolen*
Angela Reilly*
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
adlowell@lowellandassociates.com
chayes-deats@lowellandassociates.com
jbolen@lowellandassociates.com
areilly@lowellandassociates.com

Norman L. Eisen (Bar No. 435051)
Lindsay Zimliki (Bar No. 475890)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 601-8678
norman@democracydefenders.org
lindsay@democracydefenders.org

*Application for admission pending, or admitted *pro hac vice*

*/s/Anna Deffebach*
Anna Deffebach (Bar No. 241346)
Will Bardwell (Bar No. 90006120)
Mark B. Samburg (Bar No. 1018533)
Catherine M.A. Carroll (Bar No. 497890)
Robin F. Thurston (Bar No. 7268942)
Kevin Friedl (Bar No. 90033814)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
wbardwell@democracyforward.org
msamburg@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org
kfriedl@democracyforward.org
adeffebach@democracyforward.org

*Counsel for Plaintiffs*