**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DC PRESERVATION LEAGUE, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-477-ACR |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs are not entitled to discovery. This case was brought under the Administrative Procedure Act ("APA"), challenging a purported decision to redesign East Potomac Golf Course. Plaintiffs seek discovery into negotiations for a lease of the Rock Creek and Langston Golf Courses; an agency action not challenged in Plaintiffs' complaint and for which the NPS has not compiled an administrative record. Putting aside Defendants' continuing objections to the justiciability of this case, at most, Plaintiffs would be entitled to the evidence considered directly or indirectly by the agency in reaching the purported decision to redesign the East Potomac Golf Course.

But that is not what Plaintiffs are attempting to do here. Instead, they seek to tear out well-established guardrails of administrative law and, through discovery, supplement an administrative record that does not exist for a decision that they have not challenged with materials that were not before the relevant decisionmaker. Plus, the information sought by Plaintiffs is unnecessary and

has no bearing on their forthcoming motion to preliminarily enjoin Defendants' decision to close a portion of East Potomac Park. The documents necessary for the Court to consider that motion are already in the record. This is particularly true because Plaintiffs have already secured a Temporary Restraining Order, and Defendants consented to converting that Motion into one for a preliminary injunction.

## FACTUAL BACKGROUND

As a general matter, the National Park Service ("NPS") may lease its property for at least fair market value for any lawful purpose. *See* 36 C.F.R. §§ 18.4-6. Acting pursuant to such authority, on September 30, 2020, the NPS executed a lease for the East Potomac Golf Course, Rock Creek Golf Course, and Langston Golf Course with National Links Trust ("NLT"). Dkt. No. 26-5, ECF p. 2-47. In other words, the NPS did not pay NLT to operate the golf courses; rather, NLT was required to pay rent to the NPS for the privilege of using NPS's golf courses to run its business.

On December 30, 2025, the NPS terminated NLT's lease. Dkt. No. 26-5, ECF p. 51-53. The NPS permitted NLT, however, to operate all three courses on a temporary "holdover" basis. *E.g.*, Suppl. Decl. of Jessica Bowron, ¶ 5, Dkt. No. 38-2. Thus, while the NPS could require NLT to vacate the East Potomac Golf Course at any time after the 2020 lease's termination, the NPS nonetheless allowed NLT to remain on site and continue operations, *see* Dkt. No. 49-1. The NPS had no obligation to continue to allow NLT to run its business on NPS lands, and was not precluded from entering into a new lease with NLT for any or all of the golf courses.

The NPS negotiated a new lease with NLT that was signed on October 28, 2026. Under the new lease, the NPS and NLT agreed that the NPS would lease the Rock Creek and Langston Golf Courses to NLT and that these two golf courses would be rehabilitated within a set

timeframe. Decl. of Jessica Bowron ¶ 6, Dkt. No. 111-2. The lease did not authorize operations at East Potomac Golf Course beyond November 15, 2026, and provided that NLT would end operations at that course. *See id.*

## LEGAL STANDARD

Judicial review under the APA "is generally limited to the administrative record," and discovery is "normally unavailable in an APA case." *Friends of the Earth v. U.S. Dep't of the Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (citing *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985)). The administrative record includes "all documents and materials that the agency directly or indirectly considered" when it made the decision under review. *Pac. Shores Subdiv. v. U.S. Army Corps of Engr's*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (citation modified). A reviewing "court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997)).

There are typically two ways to augment the administrative record. First, a party may move to "complete" the record where an agency directly or indirectly considered materials in making its decision, but the agency failed to include those materials in the administrative record. *See Open Soc'y Inst. v. U.S. Citizenship & Immigr. Serv.*, 573 F. Supp. 3d 294, 307 (D.D.C. 2021). Second, a party may move to "supplement" the administrative record with extra-record evidence—information that the agency did not consider. *See Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018). Supplementation is warranted in the following extraordinary cases: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information [is] needed to determine whether the agency considered all the relevant factors, (3) if the agency failed to explain administrative review so as to frustrate judicial

review." *Id.* at 77-78 (quoting *City of Dania Beach v. Fed. Aviation Admin.*, 628 F.3d 581, 590 (D.C. Cir. 2010)) (internal quotation marks omitted). "These 'narrow' exceptions may 'at most . . . be invoked to challenge gross procedural deficiencies.'" *Brook v. Rogers*, 656 F. Supp. 3d 78, 93 (D.D.C. 2023) (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)). "[I]t is an *extraordinary* case when a court considers extra-record evidence in reviewing agency action." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (emphasis added).

Seeking *discovery* in an APA case comes with its own hurdles. The D.C. Circuit has recognized just two narrow exceptions when discovery may be available in APA cases: "'when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Friends of the Earth*, 236 F.R.D. at 42 (quoting *Comm. Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)). But discovery "is the exception, not the rule." *Loma Linda Univ. v. Kidney Ctr. v. Burwell*, 185 F. Supp. 3d 196, 199 (D.D.C. 2016) (internal quotation marks and citation omitted).

## ARGUMENT

Plaintiffs' Motion is not seeking jurisdictional discovery, discovery on the issue of finality, or even discovery to determine whether a challenged agency policy exists. Instead, Plaintiffs' Motion seeks discovery to supplement an administrative record that has not been compiled, for a decision that is not before the Court, and with materials that could not have been before the Defendants. Plaintiffs provide no basis for the Court to stray from foundational APA principles and permit such discovery here.

As a threshold matter, the requested discovery from NLT is not relevant to the matters before the Court. Second, even if it had some bearing on the actual decision before the Court, the sought-after discovery is not necessary for the Court to provide effective judicial review. Third,

Plaintiffs do not seriously put forth any basis for discovery on bad faith grounds, and none exists. Fourth, even assuming Plaintiffs could overcome these obstacles and the test used by certain courts in this Circuit were applicable here, Plaintiffs' Motion fails. Finally, Plaintiffs' Motion is overbroad and seeks materials irrelevant to this case.

**1. The Requested Discovery is Irrelevant to the Court's Review Under the APA.**

Here, the requested discovery—documents and deposition testimony from third party NLT—has no bearing on any agency decision under review. Plaintiffs have challenged a purported agency decision to redesign East Potomac Golf Course. *See* Am. & Suppl. Compl., Dkt. No. 98. From the beginning, Defendants have consistently maintained that the initial "decision" to pursue a potential redesign of East Potomac Golf Course and subsequent agency deliberations and planning, are not final agency action—they do not "mark the 'consummation' of the agency's decisionmaking process," nor create legal "rights or obligations," with "direct and appreciable legal consequences." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted). Rather, any final agency action would occur (if at all), only at the conclusion of the necessary statutory and regulatory processes—including NEPA analysis, NHPA Section 106 consultation, and review before the National Capital Planning Commission and the Commission on Fine Arts. *See, e.g.*, Decl. of Jessica Bowron, ¶ 16, Dkt. No. 26-4; Suppl. Decl. of Jessica Bowron, ¶¶ 11-12, Dkt. No. 38-2; Second Suppl. Decl. of Jessica Bowron, ¶¶ 6-7, Dkt. No. 75-3. And indeed, recent events confirm that no final agency action has occurred here and any conceptual redesign remains under consideration and subject to changes, including the development of alternative designs.[1]

[1] *See* Rick Maese, *Arts panel asks Trump administration to rethink East Potomac golf course's scope*, The Washington Post, Nov. 19, 2026 (reporting on CFA hearing and the future presentation of alternatives to the conceptual rendering earlier presented to the CFA, *see* Dkt. No. 147-1), *available at* https://www.washingtonpost.com/sports/2026/11/19/arts-panel-asks-trump-administration-rethink-east-potomac-golf-courses-scope/. The recording of the CFA's November

Notwithstanding Defendants' continued objections, the Court has concluded such decision became final agency action "at some point well before October 15, 2026." Mem. Op. 35, Dkt. No. 103. Plaintiffs have not supplemented their complaint with any other claims.

Instead, they continue to challenge a purported decision to redesign East Potomac Golf Course and now seek to enjoin *other decisions* (the removal of trees and the closure of East Potomac Park), on the theory that those decisions constitute implementation of the purported decision they do challenge. *See* Mot. for Prelim. Injunction, Dkt. No. 80; Mot. for Temp. Restraining Order, Dkt. No. 139. But Plaintiffs have brought no claim challenging Defendants' termination of NLT's 2020 lease or Defendants' decision to enter into a new lease with NLT that does not include the East Potomac Golf Course. Nor could they. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted) (A plaintiff generally "must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties").

By requesting discovery from NLT here as to its contractual negotiations with Defendants, Plaintiffs are effectively attempting to circumvent the APA's limitations and challenge the NPS's decision to enter into a lease with NLT that does not include the East Potomac Golf Course and end NLT's holdover status at East Potomac Golf Course. In other words, they are seeking information that was *not* before the agency and that relates to an agency decision *not* before the Court. *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 29 (D.D.C. 2017) (recognizing that "courts do not, and cannot, police agency deliberations").

---

19, 2026, meeting is publicly available online and can be accessed at the bottom of the following webpage under "Meeting Recording" with the listed passcode: https://www.cfa.gov/records-research/record-cfa-actions/2026/11/cfa-meeting.

### 2. The Requested Discovery is Not Necessary for Effective Judicial Review of the Actual Decision before the Court.

Plaintiffs have sought to preliminarily enjoin closure of East Potomac Park. *See* Mot. for Temp. Restraining Order 34, Dkt. No. 139-1. Plaintiffs invoke the second exception to the prohibition on discovery in APA cases to claim that they require discovery. This argument fails for two reasons. First, the exception and relevant case law are inapplicable to the present circumstances. Second, even if the exception were applicable, it is unnecessary because the Court can conduct effective judicial review based on the current record.

In rare instances, discovery may be obtained in APA cases "'when the record is so bare that it prevents effective judicial review.'" *Friends of the Earth*, 236 F.R.D. at 42 (quoting *Comm. Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)). But courts in this Circuit have invoked this exception to address a much more preliminary inquiry than the one presented here: whether a challenged policy even *exists*, and if so, to define the contours of that policy. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 832 F. Supp. 3d 22, 52 (D.D.C. 2026) (citing, among other cases, *AFL-CIO v. Dep't of Labor*, 349 F.R.D. 243, 248 (D.D.C. 2025)). The "gaps" these cases seek to fill through discovery are whether the agency policy being challenged under the APA does in fact exist, and if so, what is its actual scope—not *why* an agency may have made some other decision that is not even before the Court. *See, e.g. AFL-CIO v. Dep't of Labor*, 349 F.R.D. at 249 (authorizing discovery to determine whether alleged agency policy granting Department of Government Efficiency employees access to agency information systems existed). For this exception to even apply, the administrative record generally "must have already been produced and thus the need for further discovery apparent." *Urb. Sustainability Directors Network v. U.S. Dep't of Agric.*, No. 25-1775, 2025 WL 2374528, at *41 (D.D.C. Aug. 14, 2025).

Here, there are no such "gaps" to fill. There is no dispute that Defendants issued a decision to close East Potomac Park South of Buckeye Drive SW, effective November 15, 2026, and issued a Record of Determination explaining that decision. *See* Notice of Record of Determination, Dkt. No. 155. Moreover, there is no independent claim challenging Defendants' closure decision. Thus, no administrative record has been compiled for that decision, and no showing has been made, or could be made, that the administrative record is insufficient to permit judicial review or that extra-record discovery is warranted.

Even if the second exception to the APA's prohibition on discovery were applicable in the absence of an administrative record, it is unnecessary because the record before the Court is not "so bare" so as to prevent the Court from conducting effective judicial review. Indeed, it already has, notwithstanding Defendants' disagreement with the merits of that decision.

Plaintiffs intend to move the Court to preliminarily enjoin Defendants' decision to close East Potomac Park South of Buckeye Drive, SW. Mem. in Supp. of Pls' Second Mot. for Expedited Disc. 1, Dkt. No. 166-1 ("Mem."). The Court's review will therefore require consideration of the familiar *Winter* factors: whether Plaintiffs are likely to succeed on the merits of a challenge to the closure decision, suffer irreparable injury from the closure, and whether the balance of the equities and the public interest favor enjoining the closure. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The Court has all of the information it needs to effectively review *that* decision—closure of East Potomac Park—at the preliminary injunction stage. The Court has available the Record of Decision, *see* Dkt. No. 155; the NEPA and NHPA Section 106 compliance documentation for the closure, Dkt. No. 158; and the initial declaration from Defendants announcing the decision, Dkt. No. 111-2. The Court can determine whether Plaintiffs are likely to succeed in showing that Defendants' Record of Determination to close East Potomac Park was based on a decision to

redesign East Potomac Park on the face of the Record of Determination. The Court has already conducted that exercise at the motion for temporary restraining order stage and Defendants even consented to Plaintiffs' motion for a temporary restraining order to be converted to one for a preliminary injunction.

Even if the Court credited Plaintiffs' pretextual allegation and found that the 2026 NLT lease was pretextual and went to a portion of Plaintiffs' segmentation theory, discovery is still not warranted. The long chain of what-if's connecting the pretext of this lease decision to the NEPA analysis of a redesign of East Potomac Golf Course is too weak to support extra-record discovery, but moreover, as noted above, it is a red herring irrelevant to the motion before the court

Presumably, if Plaintiffs were to supplement their complaint and bring an independent claim challenging the closure of East Potomac Park, Defendants would compile and submit an administrative record in support of that decision. But Plaintiffs' motion to effectively supplement through discovery an administrative record that does not exist, for a claim that has not been brought, regarding a separate agency decision, is improper under the APA.

**3. There is No Bad Faith Justification for the Sought After Discovery.**

Plaintiffs make no serious effort to justify their discovery request based on a bad faith determination and the Court need not entertain one here. Plaintiffs do little more than acknowledge in conclusory fashion the first exception to the APA's prohibition on discovery. *See* Mem. 4-5.

Here, the Court has made a finding of bad faith based on the fact that Defendants have, on the one hand, pursued a potential redesign of East Potomac Golf Course at the President's direction while, on the other hand, also implementing restoration recommendations in the form of tree removal. *See* Oct. 19, 2026 Tr. 10:24-12:9. Respectfully, Defendants continue to maintain that

these circumstances do not indicate bad faith.[2] Agencies are free to pursue multiple goals simultaneously. *See Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 231 (1991) ("[A]n agency need not solve every problem before it in the same proceeding[,] . . . even where the initial solution to one problem has adverse consequences for another area that the agency was addressing."); *see also Mobley v. C.I.A*, 806 F.3d 568, 586 (D.C. Cir. 2015) ("Agencies may well—and surely often do—seek to advance a variety of objectives through a single act.").

But accepting the Court's bad-faith determination at face value does not grant Plaintiffs carte blanche to seek discovery however they choose any time the NPS makes a decision touching on East Potomac Park. Rather, any discovery supplementing an administrative record justified on a bad faith basis must be tethered to the decision and administrative record supposedly rendered in bad faith—here, Defendants' decision to implement tree removal.[3] Without properly confining the effects of the bad faith determination, *any* future decision made by Defendants concerning East Potomac Park while this case is pending could potentially be subject to discovery. This Circuit's narrow exceptions to the APA's general prohibition on discovery do not support such a conclusion.

**4. Expedited Discovery is Otherwise Unwarranted.**

No discovery is warranted here for the reasons outlined above. But even if Plaintiffs could overcome the hurdles necessary to prematurely supplement a nonexistent administrative record through discovery in this APA case, expedited discovery is likewise not warranted.

---

[2] Respectfully, Plaintiffs' pretextual argument and the Court's bad faith finding is undermined by the fact that the conceptual rendering submitted to the NCPC and CFA called for trees in areas where trees were removed or identified for removal in accordance with the Tree Management Plan and 2019 CLR. *See* Nov. 13, 2026, Tr. 56:12-19; *Compare* CFA Concept Proposal 7, Dkt. No. 147-1 *with* Decl. of Dr. Kevin Griess ¶ 32, Dkt. No. 84-1

[3] Defendants reserve the argument that here too, this decision, if it can be challenged at all, must be done through an administrative record.

Plaintiffs rely on this Court's reasonableness test for granting expedited discovery in *Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014). But Plaintiffs point to no Circuit authority establishing that the reasonableness test is appropriate or that it even applies to APA cases in the first instance. Assuming it is even applicable in the APA context, under this test, a court considers the reasonableness of an expedited discovery request in light of surrounding circumstances including "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98. These guidelines are not satisfied here.

Fatal to Plaintiffs' Motion is the fact that their requested discovery serves no purpose related to their forthcoming preliminary injunction motion concerning Defendants' decision to close East Potomac Park. The stated purpose of the discovery does not concern that decision at all, but rather Defendants' separate decision to enter into a new lease with NLT that does not include East Potomac Golf Course. Plaintiffs argue discovery is warranted because it "could provide insight as to whether Defendants' asserted justifications for closing the park are pretextual." Mem. 4. Not so. Defendants' stated reasons for closing East Potomac Park were the absence of a daily golf course operator and the deteriorated and hazardous condition of the surrounding seawall. *See* Record of Determination.[4] There is no dispute that the NPS terminated NLT2020 's lease for all three DC golf courses, including East Potomac, kept NLT in a holdover status, and then negotiated and entered into a new lease in 2026 for the other two DC golf courses that does not include East Potomac and provided a date certain by which NLT agreed to cease its

[4] *Available at* https://www.nps.gov/nama/learn/management/temporary-closure-of-east-potomac-park-south-of-buckeye-drive.htm.

operations at that course. And there is no dispute that the seawall is in a state of disrepair. Plaintiffs' requested discovery, however, would not address these rationales at all, but rather, would address NPS's reasons for entering into the 2026 lease with NLT—a decision not properly before the Court.

**5. The Requested Discovery is Overbroad.**

Even if Plaintiffs could show that they are entitled to some extra-record discovery into lease negotiations (they cannot), the discovery they request is facially overbroad. In Request No. 2 of their proposed subpoena duces tecum and their proposed subpoena for deposition testimony, Plaintiffs request "All Documents and Communications created or occurring on or since October 1, 2026, relating to the negotiation, execution, or implementation of the lease agreement entered into between NLT and DOI or NPS on October 28, 2026." ECF 166-2 at 7. 166-3 at 7. It is undisputed that this lease does not authorize NLT operations at the East Potomac Golf Course or otherwise lease the East Potomac Golf Course to NLT. Plaintiffs are seeking documents and communications relating to the 2026 lease for the Rock Creek and Langston Golf Courses, which necessarily will include, and be composed primarily of, documents and communications pertaining to the negotiation of the terms and conditions for the lease of those two golf courses. Plaintiffs have not shown that the terms and conditions under which NPS leased the Rock Creek and Langston Golf Courses to NLT are of any relevance to the actions challenged in this case.

***

To conclude, Justice Thomas's partial concurrence in *Department of Commerce v. New York*, 588 U.S. 752 (2019) has proven prescient. "It is not difficult for political opponents of executive actions to generate controversy with accusations of pretext, deceit, and illicit motives." *Id.* at 786. "Crediting these accusations on evidence as thin as the evidence here could lead judicial

review of administrative proceedings to devolve into an endless morass of discovery and policy disputes not contemplated by the Administrative Procedure Act[.]" *Id.* at 786-87. The Court should resist Plaintiffs' urging that it wade into this discovery "morass," and instead stick to foundational record review principles and rule on Plaintiffs' forthcoming preliminary injunction based on the adequate record before it.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiffs' Motion for Expedited Discovery.

Respectfully submitted this 20th of November 2026.

**STANLEY E. WOODWARD, JR.**
Associate Attorney General

**ANDREW J. BLOCK**
Senior Counsel
**ROBERT CROSSIN**
Counsel
Office of the Associate Attorney General
950 Pennsylvania Avenue
Washington, DC 20530
(202) 514-9500
stanley.woodward@usdoj.gov

**ADAM R.F. GUSTAFSON**
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Energy & Natural Resources Division

**BENJAMIN HAYES**
Deputy Assistant Attorney General

**MARISSA A. PIROPATO**
Deputy Chief (MA Bar No. 651630)

*/s/ Michael K. Robertson*
**MICHAEL K. ROBERTSON**
Trial Attorney (DC Bar No. 1017183)
U.S. Department of Justice
Energy & Natural Resources Division
Natural Resources Section
4 Constitution Square
150 M Street NE
Washington, DC 20002
Tel: (202) 598-3835
Email: michael.robertson@usdoj.gov

*Attorneys for Defendants*